**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE**

|  |  |
|---|---|
| KINGTOM ALUMINIO S.R.L., | |
|        Plaintiff, | |
|    v. | |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PETE R. FLORES, Acting Commissioner, U.S. Customs and Border Protection, | **NON-CONFIDENTIAL** Proprietary Information Removed from Pages 4-7, 10-12, and 19-30 |
|        Defendants | Court No. 24-00264 |
|    and | |
| ALUMINUM EXTRUDERS COUNCIL; UNITED STEEL, PAPER AND FORESTRY, RUBBER, AND MANUFACTURING AND SERVICE WORKERS INTERNATIONAL UNION, | |
|        Defendant-Intervenors. | |

**PLAINTIFF KINGTOM'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.1 of the Rules of this Court, Plaintiff Kingtom Aluminio S.R.L.

("Kingtom") hereby moves for judgment on the agency record in this action.  Kingtom

challenges U.S. Customs and Border Protection's ("Customs" or "CBP") *Notice of Finding That*

*Aluminum Extrusions and Profile Products and Derivatives Produced or Manufactured Wholly*

*or in Part by Kingtom Aluminio S.R.L. With the Use of Convict, Forced or Indentured Labor Are*

*Being, or Are Likely To Be, Imported Into the United States*, 89 Fed. Reg. 96,265 (Dec. 4, 2024)

1

("*Finding*") in the following respects: (1) Customs' use of extra-statutory indicators as a substitute for the statutory definition of forced labor in 19 U.S.C. § 1307 is arbitrary, capricious, otherwise not in accordance with law, or in excess of statutory authority or limitation pursuant to 5 U.S.C. § 706; and (2) Customs' determination that merchandise produced by Kingtom is manufactured in whole or in part with "forced labor" is arbitrary, capricious, or otherwise not in accordance with law pursuant to 5 U.S.C. § 706 because the evidence relied upon by Customs does not demonstrate forced labor as defined by 19 U.S.C. § 1307.

WHEREFORE, Plaintiff respectfully requests that this Court grant this motion and (1) hold that the *Finding* is in excess of Customs' statutory authority and limitation; (2) hold that Customs' *Finding* is arbitrary, capricious, or otherwise not in accordance with law; (3) hold the *Finding* unlawful and set it aside; (4) hold that the *Finding* shall have no force or effect; (5) enter judgment for Plaintiff; and (6) grant Plaintiff such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed

**MORRIS, MANNING & MARTIN, LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Plaintiff Kingtom Aluminio S.R.L.*

May 5, 2025

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE**

| |
|---|
| KINGTOM ALUMINIO S.R.L., |
| |
|         Plaintiff, |
| |
|    v. |
| |
| UNITED STATES OF AMERICA; |
| DEPARTMENT OF HOMELAND SECURITY; |
| U.S. CUSTOMS AND BORDER |
| PROTECTION; |
| KRISTI NOEM, Secretary, |
| U.S. Department of Homeland Security; |
| PETE R. FLORES, Acting Commissioner, U.S. |
| Customs and Border Protection, |
| |
|         Defendants |
| |
|    and |
| |
| ALUMINUM EXTRUDERS COUNCIL; |
| UNITED STEEL, PAPER AND FORESTRY, |
| RUBBER, AND MANUFACTURING AND |
| SERVICE WORKERS INTERNATIONAL |
| UNION, |
| |
|         Defendant-Intervenors. |

Court No. 24-00264

## ORDER

Upon consideration of Plaintiff Kingtom's Rule 56.1 Motion for Judgment on the Agency

Record, and all other pertinent papers, it is hereby:

**ORDERED** that Plaintiff's motion is granted; and it is further

**ORDERED** that the *Finding* issued by U.S. Customs and Border Protection ("Customs")

in *Notice of Finding That Aluminum Extrusions and Profile Products and Derivatives Produced*

*or Manufactured Wholly or in Part by Kingtom Aluminio S.R.L. With the Use of Convict, Forced*

*or Indentured Labor Are Being, or Are Likely To Be, Imported Into the United States*, 89 Fed. Reg. 96,265 (Dec. 4, 2024) ("*Finding*") is in excess of Customs' statutory authority and limitation; and it is further

**ORDERED** that the *Finding* is arbitrary, capricious, or otherwise not in accordance with law; and it is further

**ORDERED** that the *Finding* is unlawful and hereby set aside; and it is further

**ORDERED** that the *Finding* shall have no force or effect; and it is further

**ORDERED** that judgment shall be entered for Plaintiff.

**SO ORDERED.**


                                                                _____

                                                               Timothy M. Reif, Judge

Dated: _____, 2025
         New York, NY

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L., | |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; KRISTI NOEM, *in her official capacity as Secretary of the Department of Homeland Security;* CALEB VITELLO, *in his official capacity as the Acting Commissioner for U.S. Customs and Border Protection*, | **NON-CONFIDENTIAL** Proprietary Information Removed from Pages 4-7, 10-12, and 19-30 |
| Defendants, | Court No. 24-00264 |
| and | |
| ALUMINUM EXTRUDERS COUNCIL; AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, AND MANUFACTURING AND SERVICE WORKERS INTERNATIONAL UNION, | |
| Defendant-Intervenors. | |

**PLAINTIFF KINGTOM ALUMINIO S.R.L.'S BRIEF IN SUPPORT OF**
**ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed

**MORRIS, MANNING & MARTIN, LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Plaintiff Kingtom Aluminio S.R.L.*

May 5, 2025

## TABLE OF CONTENTS

I.     STATEMENT PURSUANT TO RULE 56.1 ................................................................ 1

II.    ISSUES OF LAW PRESENTED AND REASONS FOR CONTESTING THE
       DETERMINATION .................................................................................................... 2

III.   STATEMENT OF FACTS ........................................................................................... 2

IV.    SUMMARY OF ARGUMENT .................................................................................. 11

V.     STANDARD OF REVIEW ........................................................................................ 12

VI.    ARGUMENT ............................................................................................................. 13

       A.     Customs' Substitution Of The ILO Indicators For The Definition of Forced Labor
              Is an Impermissible Interpretation of the Statutory Definition and Is Arbitrary,
              Capricious, and Not In Accordance With Law, and Exceeds the Agency's
              Statutory Authority Or Limitation .................................................................... 13

              i.    19 U.S.C. § 1307 Limits The Definition Of Forced Labor To Situations
                    Where Workers Did Not Offer Themselves Voluntarily. ...................... 14

              ii.   Customs' Reliance on the ILO Indicators as a Substitute for the Statutory
                    Definition Of "Forced Labor" Renders the Finding Arbitrary, Capricious,
                    Not in Accordance with Law, and in Excess of Statutory Authority or
                    Limitation ............................................................................................ 18

       B.     Customs' Finding Is Arbitrary, Capricious And Not In Accordance With Law .. 22

              i.    There Is No Evidence That The Labor Was Involuntary ......................... 22

              ii.   The Finding Relies On Stale, Uncorroborated, And Contradicted
                    Information ............................................................................................ 26

VII.   CONCLUSION AND RELIEF REQUESTED ............................................................ 31

CERTIFICATE OF COMPLIANCE ............................................................................. 32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arellano v. Marshalls of MA, Inc.*,
  2018 WL 1120870 (N.D. Ind. Feb. 2, 2018)...........................................................20

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of the Fed. Rsrv.
  Sys.*, 745 F.2d 677 (D.C. Cir. 1984) (Scalia, J.).................................................13

*B.F. Goodrich Co. v. United States*,
  794 F. Supp. 1148 (Ct. Int'l Trade 1992) .......................................................18, 19

*Bufkin v. Collins*,
  145 S.Ct. 728 (2025).........................................................................................14, 15

*Burlington Truck Lines v. United States*,
  371 U.S. 156 (1962)..........................................................................................12, 22

*Consol. Edison Co. v. N.L.R.B.*,
  305 U.S. 197 (1938)................................................................................................26

*Consol. Fibers, Inc. v. United States*,
  535 F. Supp. 2d 1345, 23 C.I.T. 24 (2008) ..........................................................26

*Escondido Mut. Water Co. v. La Jolla Band of Mission Indians*,
  466 U.S. 765 (1984)................................................................................................15

*H&E Home, Inc. v. United States*,
  714 F. Supp. 3d 1353 (Ct. Int'l Trade 2024) .......................................................29

*John Roe I v. Bridgestone Corp.*,
  492 F. Supp. 2d 988 (S.D. Ind. 2007) .....................................................17, 20, 23

*Joint Anti-Fascist Refugee Committee v. McGrath*,
  341 U.S. 123 (1951) (Burton) ...............................................................................21

*Lackey v. Stinnie*,
  145 S.Ct. 659 (2025)...............................................................................................14

*Laerdal Med. Corp. v. Int'l Trade Comm'n*,
  910 F.3d 1207 (Fed. Cir. 2018)........................................................................14, 15

*Linyi Chengen Import and Export Co. v. United States*,
  391 F. Supp. 3d 1283 (Ct. Int'l Trade 2019) .....................................12, 22, 24, 30

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024).............................................................................................13

*M.M. & P. Maritime Advancement, Training, Education and Safety Program v.*
    *Dept. Commerce*, 729 F.2d 748 (Fed. Cir. 1984) .....................................15, 18, 19

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)...........................................................................12, 18, 22, 30

*N.R.L.B. Union v. Fed. Lab. Rels. Auth.*,
    834 F.2d 191 (D.C. Cir. 1987) ...........................................................................13

*Raleigh & Gaston R.R. Co. v. Reid*,
    80 U.S. 269 (1871).............................................................................................15

*South African Marine Corp. v. United States*,
    640 F. Supp. 247 (Ct. Int'l Trade 1986) ...........................................................15

*United States v. Sumitomo Shoji*,
    534 F.2d 320 (Cust. & Pat. App. 1976) ............................................................15

*USX Corp. v. United States*,
    655 F. Supp. 487 (Ct. Int'l Trade 1987) ...........................................................28

*Velez v. Sanchez*,
    693 F.3d 308 (2d Cir. 2012)..........................................................................20, 21

*Wieman v. Updegraff*,
    344 U.S. 183 (1952)...........................................................................................21

*Wisconsin v. Constantineau*,
    400 U.S. 433 (1971)...........................................................................................21

**Statutes**

5 U.S.C. § 706..........................................................................................................2, 12

19 U.S.C. § 1307 ................................................................................................ *passim*

28 U.S.C. § 1350......................................................................................................16

**Regulations**

19 C.F.R. § 12.42 ..................................................................................................8, 10

19 C.F.R. § 12.43 ..................................................................................................8, 10

19 C.F.R. § 12.44 .....................................................................................................10

**Other Authorities**

*Notice of Finding That Aluminum Extrusions and Profile Products and*
*Derivatives Produced or Manufactured Wholly or in Part by Kingtom*
*Aluminio S.R.L. With the Use of Convict, Forced or Indentured Labor Are*
*Being, or Are Likely To Be, Imported Into the United States*,
89 Fed. Reg. 96,265 (Dec. 4, 2024) ............................................................... *passim*

*Proclamation 9994 of March 13, 2020: Declaring a National Emergency*
*Concerning the Novel Coronavirus Disease (Covid-19) Outbreak*,
85 Fed. Reg. 15,337 (Mar. 18, 2020) ......................................................................24

71 CONG. REC. 4,488 (1929)..........................................................................................16

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L., | |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; KRISTI NOEM, *in her official capacity as Secretary of the Department of Homeland Security;* CALEB VITELLO, *in his official capacity as the Acting Commissioner for U.S. Customs and Border Protection*, | **NON-CONFIDENTIAL** Proprietary Information Removed from Pages 4-7, 10-12, and 19-30 |
| Defendants, | Court No. 24-00264 |
| and | |
| ALUMINUM EXTRUDERS COUNCIL; AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, AND MANUFACTURING AND SERVICE WORKERS INTERNATIONAL UNION, | |
| Defendant-Intervenors. | |

**PLAINTIFF KINGTOM ALUMINIO S.R.L.'S BRIEF IN SUPPORT OF**
**ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD**

In accordance with U.S. Court of International Trade ("USCIT") Rule 56.1, and the April 14, 2025, scheduling order, Plaintiff Kingtom Aluminio S.R.L. ("Kingtom" or "Plaintiff") files this brief in support of its Rule 56.1 motion for judgment upon the agency record. Scheduling Order, ECF No. 40.

## I.    STATEMENT PURSUANT TO RULE 56.1

The administrative determination under review is U.S. Customs and Border Protection's ("Customs" or "CBP") *Notice of Finding That Aluminum Extrusions and Profile Products and*

*Derivatives Produced or Manufactured Wholly or in Part by Kingtom Aluminio S.R.L. With the Use of Convict, Forced or Indentured Labor Are Being, or Are Likely To Be, Imported Into the United States. See* 89 Fed. Reg. 96,265 (Dec. 4, 2024) ("*Finding*").

## II.    ISSUES OF LAW PRESENTED AND REASONS FOR CONTESTING THE DETERMINATION

1.    Whether Customs' use of extra-statutory indicators as a substitute for the statutory definition of forced labor in 19 U.S.C. § 1307 is arbitrary, capricious, otherwise not in accordance with law, or in excess of statutory authority or limitation pursuant to 5 U.S.C. § 706.

2.    Whether Customs' determination that merchandise produced by Kingtom is manufactured with the use of forced labor is arbitrary, capricious, or otherwise not in accordance with law pursuant to 5 U.S.C. § 706 because the evidence relied upon by Customs does not demonstrate forced labor as defined by 19 U.S.C. § 1307.

## III.    STATEMENT OF FACTS

Kingtom is a manufacturer of aluminum extrusions that was established in 2016 in a free trade zone in the Dominican Republic. From 2017 onward, Kingtom progressively ramped up its operations, producing more aluminum extrusions as more machines, personnel, and raw materials became available. Kingtom grew into one of the largest aluminum extrusion producers in the Gulf region and exports most of its products to the United States. In 2019, the first of three Enforce and Protect Act ("EAPA") cases were filed against importers of Kingtom's aluminum extrusions by some of Kingtom's U.S. competitors. The first case, EAPA Case No. 7348, was filed by Ta Chen International, Inc. ("Ta Chen"), the U.S. subsidiary of a Taiwanese aluminum distributor that competes with Kingtom. The second and third cases, EAPA Case Nos. 7423 and 7550, were brought by the Aluminum Extrusions Fair Trade Committee

("AEFTC"), also known as the Aluminum Extrusions Council ("AEC"), an ad hoc group of Kingtom's U.S. competitors.

Although the Trade Remedy Law Enforcement Directorate ("TRLED") at Customs had initially found in all three EAPA investigations that Kingtom had evaded the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China, Kingtom ultimately had those evasion determinations reversed. This history of repeated EAPA investigations is relevant background as it demonstrates Customs' aggressive pursuit of Kingtom in initially making evasion determinations against Kingtom. Additionally, in the third EAPA investigation, Case No. 7550, Customs conducted an on-site verification at Kingtom's facilities in the Dominican Republic. A.R. 8.6.[1] The verification report from that investigation has been placed on the record of this case by Customs and served as one of the foundations for Customs' forced labor investigation of Kingtom. *Id.* Finally, the AEC, which had filed the second and third EAPA cases against Kingtom, also later filed with Customs a forced labor allegation against Kingtom in March 2022. A.R. 8.10. However, the AEC allegation did not serve as the basis for the forced labor investigation that resulted in the *Finding*.

In late September 2021, shortly after the conclusion of the EAPA 7550 verification, the Customs personnel that conducted the verification made a referral to Customs' Forced Labor Division, expressing the belief that Kingtom was producing aluminum extrusions in the Dominican Republic using forced labor. *See* A.R. 8.2. This started the investigation of Kingtom that led to the *Finding* in this case.

---

[1] The administrative record is contained in a confidential record, ECF No. 34, and a public record, ECF No. 33. All references to the administrative record herein ("A.R.," with use of Bates number in top right-hand corner) are to the confidential record except where noted.

Following the initial referral, on May 6, 2022, the Dominican Republic Ministry of Labor ("DRMOL" or "Ministry of Labor") closed Kingtom's manufacturing facility due to concerns related to violations of the Dominican Republic's overtime and minimum wage laws, the lack of a worker safety and health committee at the company, weekly rest, non-payment of vacation wages, non-enjoyment of vacations, and excessive working hours. *See* A.R. 8.20 (public record). A team of health and safety inspectors from the Ministry of Labor inspected Kingtom four times. *Id.* The closure did *not* relate to any forced labor investigation of Kingtom and the Ministry did not make any findings that Kingtom was engaged in forced labor. However, while Kingtom was closed, from May 16-19, 2022, Customs interviewed 16 individuals in the Dominican Republic that Customs claims were previously or currently employed at Kingtom. *See* A.R. 8 ("Allegation Assessment") at 000039-41. During the interviews, the workers made claims about their experiences and the experiences of other workers at Kingtom. These interviews served as the primary evidentiary foundation for Customs' forced labor determination. *See* A.R. 8.

Almost one year after this closure, Customs made inquiries about it as part of its investigation. On April 2, 2023, Customs confirmed with [                    ] that Kingtom was permitted to [                ] after the Dominican Ministry of Labor determined that the issues related to the closure were [        ]. A.R. 8 at 3 & n.20.[2] On April 9, 2024, Customs again checked with [                    ], which did not have further information about the status of Kingtom and its operations. A.R. 8.111.

On July 12, 2024, based primarily on the 16 worker interviews that catalogued the workers' responses to questions about working conditions at Kingtom prior to May 2022, the Forced Labor Division ("FLD") of TRLED recommended in its Allegation Assessment that

---

[2] Defendant claims privilege for each of the [                    ].

4

Customs find that Kingtom produces its products using forced labor in the Dominican Republic. A.R. 8 at 000058.  In making its recommendation that Customs issue a Finding of forced labor, FLD noted that it relied on the indicators developed by the International Labour Organization ("ILO") for determining the existence of forced labor.  A.R. 8 at 000039.[3]  FLD concluded that [     ] of the 11 indicators were present in this case based "[            ]" on the 16 worker interviews it conducted in May 2022.  *Id.* at 000047.[4]

Specifically, Customs found that the indicator "abuse of vulnerability" was present because Kingtom [

].  *Id.*  According to Customs, workers reported [


].

*Id.*  Customs found that these workers were [

].  *Id.* at 000048.  Customs also alleged that Kingtom met the indicator of "deception" by using [


].  *Id.* at 000048-49.  According to worker interviews, workers alleged that Kingtom [

].  *Id.* at 000049.

Customs also found that workers [                        ] the indicator "restriction of movement" because, while [

---

[3] *See ILO Indicators of Forced Labour*, INT'L LABOUR ORG. (Oct. 1, 2012), available at https://www.ilo.org/publications/ilo-indicators-forced-labour (attached as **Attachment 1**).

[4] Kingtom does not concede that any of the interviews by Customs or the statements therein by workers are true or accurate.

].  *Id*. at 000050.  Workers reported [

].  *Id*.

Customs also found, based on the 16 worker interviews, that workers experienced the indicator of "physical and sexual violence," including [

].  *Id*. at 000050.  These accounts were "[                    ],"
according to Customs, but Customs did not provide corroboration aside from these 16 interviews.  *Id*.

Workers also reported the indicator of "intimidation and threats" from Kingtom management.  According to the Allegation Assessment, [

].  *Id*. at 000051.  Based on its interviews, Customs found that workers [

] the withholding of wages, which is a separate ILO indicator.  *Id*. at 000052.
According to Customs, wage withholding included [

], *see id.* at 000050-51, [

].  *Id*. at 000052.  [

].  *Id*. at 0000532.

Customs found that worker complaints met the indicator of [

].  Such conditions included [

], in which [

].  *Id*. at 000053.  Workers' reports of general

[                                        ] included the [                                        ].  *Id.* at
000054.

Customs also found that Kingtom did not give workers [


                                                ].  *Id.* at 000054.  Under the indicator "excessive
overtime," Customs concluded that Kingtom [


                        ].  *Id.* at 000055.  Kingtom's [

                                                                ].  *Id.*

Customs also considered whether Kingtom had [                                        ] since the 2022
interviews to address the ILO indicators in the Allegation Assessment, but that discussion was
cursory.  *See id.* at 000056.  Customs noted that the Ministry of Labor closed Kingtom's factory
following inspections and [

                        ].  *Id.*  However, Customs dismissed the inspections and subsequent
[                        ] conducted under the Ministry of Labor's review.  *Id.* at 000056.  In April 2024,
FLD also [

                                                        ].  *Id.* at 000057.
No attempt was made by Customs to contact Kingtom to discuss [                                        ], or to
visit Kingtom's facilities to investigate [                        ].

The recommendation in the Allegation Assessment to issue a finding of forced labor
against Kingtom was unusual.  Customs typically enforces the prohibition against forced labor
*first* through the issuance of Withhold Release Orders ("WROs"), on the basis that Customs has

received information that "reasonably but not conclusively indicates that merchandise within the purview of section 307 is being or is likely to be imported." *Finding*, 89 Fed. Reg. at 96,265 (citing 19 C.F.R. § 12.42(e)); *see also* U.S. Customs and Border Protection, *Forced Labor Frequently Asked Questions: Withhold Release Orders (WROs) and Findings*, https://www.cbp.gov/ trade/forced-labor/frequently-asked-questions (last accessed Dec. 20, 2024) (attached to Complaint at Attachment 1, *Kingtom v. United States et al.*, No. 24-00264, ECF No. 5 (Dec. 23, 2024) ("Compl.")).  Pursuant to a WRO, Customs detains the imported articles allegedly produced using forced labor while permitting the importer the opportunity to (a) certify that the imported articles were not manufactured in whole or in part with forced labor and (b) provide a statement asserting evidentiary grounds for the importer's certification that the articles were not produced in whole or in part with forced labor.  *See* 19 C.F.R. §§ 12.43(a)-(c); *Finding*, 89 Fed. Reg. at 96,265.  However, in this case, Customs did not issue a WRO prior to its *Finding* and provided Kingtom neither the opportunity to certify nor assert evidentiary grounds that the imported articles were not manufactured with forced labor.

Instead, nearly five months after the Allegation Assessment, on November 27, 2024, TRLED formalized this recommendation in a memorandum to the Executive Assistant Commissioner in Customs' Office of Trade, A.R. 16, and on December 4, 2024, the *Finding* was published in the Federal Register.  *Finding*, 89 Fed. Reg. 96,265.  Customs "determined that there is sufficient information to support a Finding that Kingtom Aluminio S.R.L. is using convict, forced, or indentured labor in a factory in the Dominican Republic to produce or manufacture in whole or in part aluminum extrusions and profile products and derivatives."  *Id.*  Customs accordingly found that articles "produced or manufactured in whole or in part with the

use of convict, forced, or indentured labor by Kingtom Aluminio S.R.L., are being, or are likely to be, imported into the United States." *Id.*

The *Finding* does not provide any evidentiary support, rationale, or factual basis for its conclusion that Kingtom's imports were produced in whole or in part with the use of forced labor. Nor does the *Finding* provide any grounds to suspect or conclude that there is "work or service which {has been} exacted from any person under the menace of any penalty for its nonperformance and for which the worker {has} not offer{ed} himself voluntarily" as required by 19 U.S.C. § 1307. Instead, the Allegation Assessment is the only decisional document that expounds on the basis for the *Finding*.[5]

On the same day that Customs published the *Finding*, it also published a press release that stated: "CBP identified the following International Labour Organization forced labor indicators during its investigation of Kingtom Aluminio S.R.L.: abuse of vulnerability, intimidation and threats, deception, withholding of wages, physical and sexual violence, restriction of movement, and excessive overtime." *See* U.S. Customs and Border Protection, *CBP will seize aluminum products manufactured using forced labor by Chinese-owned, Dominican based company*, https://www.cbp.gov/newsroom/national-media-release/cbp-will-seize-aluminum-products-manufactured-using-forced-labor (last accessed Dec. 4, 2024) (attached to Compl. as Attachment 2) ("Press Release"); *see also* U.S. Customs and Border Protection, "CSMS # 63273746 - Finding on Kingtom Aluminio S.R.L.'s Aluminum Extrusion and Profile Products from Dominican Republic" (Dec. 4, 2024) (attached to Compl. as

---

[5] Customs has completely redacted the other decisional documents (revised "Impact Assessments") that may have explained the basis for the *Finding*, from the public record. *See, e.g.*, A.R. 13, 17.

Attachment 3).[6]  The ILO indicators are not part of or referenced by 19 U.S.C. § 1307 or Customs' relevant regulations at 19 C.F.R. §§ 12.42-12.44.

As a result of the *Finding* that Kingtom produces merchandise with forced labor, all entries of Kingtom's merchandise are considered and treated as prohibited merchandise that is not entitled to entry into the United States pursuant to 19 U.S.C. § 1307.  In the *Finding*, Customs notes that its port directors will "seize the covered merchandise for violation of 19 U.S.C § 1307."  *Finding*, 89 Fed. Reg. 96,265.  The *Finding* applies to merchandise "imported on or after December 4, 2024" and any merchandise "that has already been imported and has not been released from CBP custody before December 4, 2024."  *Id.*

In its Press Release, Customs stated: "Effective immediately, CBP personnel at all U.S. ports of entry will seize aluminum extrusion and profile products manufactured by Kingtom Aluminio S.R.L."  *See* Press Release (attached to Compl. as Attachment 2); CSMS Message (attached to Compl. as Attachment 3).  As of the date of this filing, Customs has seized merchandise produced and imported by Kingtom pursuant to the *Finding*.  In light of this embargo of its imports, Kingtom cannot perform its contractual obligations on its sales to customers because its merchandise is prohibited merchandise that is not entitled to entry into the United States pursuant to 19 U.S.C. § 1307.  Nor can Kingtom continue to export its merchandise to the United States because that merchandise will also be detained and/or seized pursuant to the *Finding*.

---

[6] Customs' public press release, which states that Customs identified *seven* ILO indicators, is inconsistent with the Allegation Assessment, which identifies the presence of [      ] indicators. [                                                                                    ].

IV.    **SUMMARY OF ARGUMENT**

This is a case that challenges Customs' interpretation and application of the forced labor law.  19 U.S.C. § 1307.  Plaintiff Kingtom contends that Customs has exceeded statutory authority and limitation by ignoring the definition of "forced labor" and its plain requirement that the labor be involuntary.  Instead, Customs has unlawfully substituted the statutory definition of forced labor with the 11 ILO indicators of forced labor.  These ILO indicators merely set out indicia of forced labor conditions, but do not address whether the labor is involuntary and thus "forced" as required by the statutory definition.  The ILO indicators are also not part of U.S. law but are taken from a human rights organization's publication.  Customs' reliance on this extra-statutory source, instead of the statutory definition of forced labor, renders its determination that Plaintiff Kingtom's merchandise was produced with forced labor arbitrary, capricious, not in accordance with law, and in excess of statutory authority or limitation.

Additionally, because Customs relied on these extra-statutory ILO indicators as the foundation for its forced labor determination, the *Finding* is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  By focusing on the ILO indicators, and not the statutory definition of forced labor, the record lacks evidence that demonstrates that Kingtom's workers were forced to labor involuntarily.  Instead, the evidence gathered by Customs through worker interviews primarily relates to [

].  Even if credible, this evidence of worker grievances should not be mistaken for forced labor, which requires that the labor be involuntary.  Moreover, the evidence is stale and predates the forced labor determination by two and a half years.  Whatever that stale evidence could have demonstrated in 2022, its probative value to show that the merchandise imported by Kingtom in late 2024 was produced with forced labor is virtually nil.

11

Kingtom applauds Customs' mission to prevent merchandise produced with forced labor from being sold in the United States. However, the forced labor law is limited to preventing the importation of merchandise produced by workers who are doing so involuntarily, *i.e.,* workers who do not have the option to just quit and leave the job. The forced labor law is not a license for Customs to police the world's labor practices and to impose embargoes to prevent the importation of merchandise produced by workers who are [

]. Nor is it a license for Customs to act with impunity by conducting a secret investigation and then branding Kingtom as a perpetrator of forced labor without providing Kingtom with an opportunity to defend itself and its good name.

Kingtom therefore asks this Court to reverse Customs' unlawful forced labor determination.

## V.    STANDARD OF REVIEW

The Court shall hold unlawful and set aside any agency action, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706. To survive arbitrary and capricious review, the agency must articulate a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*") (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). An agency action, finding, or conclusion is arbitrary and capricious where the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Linyi Chengen Import and Export Co. v. United States*, 391 F. Supp. 3d 1283, 1292 (Ct. Int'l Trade 2019) (citing *State Farm*, 463 U.S. at 43). An agency

12

action is arbitrary and capricious when it is not supported by substantial evidence. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 745 F.2d 677, 683-84 (D.C. Cir. 1984) (Scalia, J.).

When assessing whether an agency's actions, findings, or legal conclusions are in excess of statutory authority or limitation, "the question before this court is solely one of statutory construction." *N.R.L.B. Union v. Fed. Lab. Rels. Auth.*, 834 F.2d 191, 197-98 (D.C. Cir. 1987). The Supreme Court has made clear that the "best reading" of a statute is "'the reading the court would have reached' if no agency were involved." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 372 (2024) (citation omitted).

## VI.    ARGUMENT

### A.    Customs' Substitution Of The ILO Indicators For The Definition of Forced Labor Is an Impermissible Interpretation of the Statutory Definition and Is Arbitrary, Capricious, and Not In Accordance With Law, and Exceeds the Agency's Statutory Authority Or Limitation

Pursuant to 19 U.S.C. § 1307, "{a}ll goods, wares, articles, and merchandise mined, produced, or manufactured wholly or in part in any foreign country by convict labor or/and forced labor or/and indentured labor under penal sanctions shall not be entitled to entry at any of the ports of the United States, and the importation thereof is hereby prohibited."  In turn, the statute defines "forced labor" as "all work or service which is exacted from any person under the menace of any penalty for its nonperformance and for which the worker does not offer himself voluntarily."  19 U.S.C. § 1307.  In its *Finding*, Customs simply pronounces that "it is hereby determined that certain articles . . . that are produced or manufactured in whole or in part with the use of convict, forced, or indentured labor by Kingtom Aluminio S.R.L., are being, or are likely to be, imported into the United States."  *See Finding*, 89 Fed. Reg. at 96,265.

Customs does not explain *how* Kingtom's conduct meets the definition of forced labor in the statute. It is only in the Allegation Assessment that Customs provides any analysis of its reliance on the ILO's 11 indicators of forced labor to make its determination in this case. A.R. 8 at 000039. However, nowhere in the Allegation Assessment or the *Finding* does Customs explain how the evidence demonstrates the existence of forced labor as statutorily defined, or how the ILO indicators meet the statutory definition of forced labor such that they can serve as a substitute for the statutory definition. Customs' interpretation of the statutory term "forced labor" as applied to Kingtom in the *Finding* is therefore arbitrary, capricious, not in accordance with law, and in excess of statutory authority or limitation.

### i. 19 U.S.C. § 1307 Limits The Definition Of Forced Labor To Situations Where Workers Did Not Offer Themselves Voluntarily.

Customs' reliance on the extra-statutory ILO indicators as a substitute for the statutory definition of forced labor is inconsistent with rules of statutory interpretation, the legislative history of Section 307, and case law interpreting the meaning of forced labor. The task of statutory interpretation "begin{s} with the text" and the definition of forced labor must therefore be interpreted with regard to the voluntariness of the labor. *See Lackey v. Stinnie*, 145 S.Ct. 659, 666 (2025). The plain language of Section 307 sets out two conditions under which "forced labor" may be found:

> "Forced labor," as herein used, *shall* mean all work or service which is exacted from any person {(1)} under the menace of any penalty for its nonperformance and {(2)} *for which the worker does not offer himself voluntarily*.

19 U.S.C. § 1307 (emphasis added). The word "shall" "generally imposes a nondiscretionary duty." *Laerdal Med. Corp. v. Int'l Trade Comm'n*, 910 F.3d 1207, 1212 (Fed. Cir. 2018) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.") (citations omitted); *see also Bufkin v. Collins*, 145 S.Ct. 728, 737 (2025) ("'Shall'

means 'must.'"). The plain language of the statute thus requires that the work or service at issue must be under menace of penalty *and involuntary*.

The language chosen by Congress did not grant Customs discretion to expand or substitute the definition of "forced labor" to include the 11 ILO indicators. The mandatory nature of the word "shall" in the term's definition indicates that Congress did not leave discretion over that definition to Customs. *See Laerdal Med. Corp.*, 910 F.3d at 1212; *Bufkin*, 145 S.Ct. at 737. It has long been the practice of federal courts to follow the canon of *expressio unius est exclusio alterius*, which holds that items included in the statutory language necessarily exclude alternatives not in the statutory language. *See Raleigh & Gaston R.R. Co. v. Reid*, 80 U.S. 269, 270 (1871) ("When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode."); *South African Marine Corp. v. United States*, 640 F.Supp. 247, 252 (Ct. Int'l Trade 1986) (finding *expressio unius* principle applied to limit claimants where statute listed specific parties as eligible to bring suit). As the Supreme Court has explained, "Congress' apparent desire" that certain conditions "'shall' be included" in a definition "must therefore be given effect unless there are clear expressions of legislative intent to the contrary." *Escondido Mut. Water Co. v. La Jolla Band of Mission Indians*, 466 U.S. 765, 772 (1984); *see also M.M. & P. Maritime Advancement, Training, Education and Safety Program v. Dept. Commerce*, 729 F.2d 748, 754 (Fed. Cir. 1984) ("*MATES*") ("This court is not bound by an administrative agency interpretation which does not comport with Congressional intent.") (citing *United States v. Sumitomo Shoji*, 534 F.2d 320 (Cust. & Pat. App. 1976)). Accordingly, pursuant to the plain text, the term "forced labor" may only include work "for which the worker does not offer himself voluntarily."

The lengthy Senate debate on the amendment to the Tariff Act of 1930 that would become Section 307 offers strong evidence of legislative intent with respect to the statutory definition of "forced labor."  Senator John J. Blaine introduced the forced labor provision of the Tariff Act as an amendment to the text.  *See* 71 Cong. Rec. 4,488 (1929).  Senator Blaine explained that forced labor "has a definite and specific meaning," that it "does not include a contract where the person, the employee, the laborer, offers himself voluntarily."  71 Cong. Rec. at 4490.  Forced labor was to be distinguished from an apprenticeship even though, at the time of enactment, an apprentice could forfeit accumulated wages for breaking contract with his master in some countries (an apparent "penalty" for "nonperformance").  *Id.* at 4494.  Forced labor, as understood by Congress at the time it adopted Section 307, is equivalent to "free labor," that is, a "form of labor" that is "slavery, nothing short of slavery."  *Id.* at 4495-96.[7]

Federal courts interpreting the term "forced labor"[8] have concluded that it does not have the broad application—and wide-ranging implications—that Customs has grafted onto it.  In

---

[7] When asked where he obtained the language he provided for the definition of "forced labor" in 19 U.S.C. § 1307, Senator Blaine answered that he "copied the phrase word for word from the definition" contained in paragraph three of the Draft Questionnaire included in a report presented to the International Labor Conference, the highest decision-making body of the ILO.  *Id.* at 4,491; *see also* Int'l Lab. Conf., *Forced Labor, Report and Draft Questionnaire, Item III on the Agenda*, 12th Sess., 1st discussion (1929), available at https://ilo.primo.exlibrisgroup.com/discovery/delivery/ 41ILO_INST:41ILO_V2/1246629760002676 (attached as **Attachment 2**).  This same definition would also be adopted in Article 2 of the ILO's Forced Labor Convention, which entered into force in 1932.  *See* ILO Forced Labour Convention (No. 29) art. 2, June 28, 1930, 39 U.N.T.S. 55, available at https://normlex.ilo.org/dyn/nrmlx_en/f?p=NORML EXPUB:12100:0::NO::P12100_ILO_CODE:C029 ("Convention No. 29") (attached as **Attachment 3**).  Although Convention No. 29 was amended pursuant to a 2014 Protocol, the definition of forced labor in Article 2 of Convention No. 29 remains the same and matches word-for-word the definition of forced labor provided in Section 307.

[8] The cases cited herein involved interpretation of the term "forced labor" as a violation of international law for the purpose of evaluating claims brought under the Alien Tort Statute, 28 U.S.C. § 1350.  As such, these cases interpreted the identical definition of forced labor contained in Convention No. 29. These cases, and the courts' conclusions, are relevant to this discussion because, as the legislative history and text of Convention No. 29 demonstrate, the definition of

*John Roe I v. Bridgestone Corp.*, the U.S. District Court for the Southern District of Indiana found that the definition of forced labor contained in Convention No. 29 (identical to the definition in Section 307) recognizes a "basic distinction between harsh conditions for which an employer is or is not responsible."  492 F. Supp. 2d 988, 1018 (S.D. Ind. 2007) ("*Bridgestone*"). Even taking into account the ILO indicators that existed at the time of its opinion, the *Bridgestone* court found that claims by indigenous Liberians and their children that they were "conscripted" into cultivating rubber for a multinational tire company—an arduous task for which they earned a daily wage equivalent to $3.19, rarely if ever left the plantation on which they worked and lived, and did not have any days off including paid holidays or sick days—did not meet the definition of forced labor.  *Bridgestone*, 492 F. Supp. 2d at 994, 1013-18.  As the court instructed, "The phrase 'menace of any penalty' does not refer to the harm a person would suffer if he leaves a job and is unable to earn a living elsewhere."  *Id*. at 1018.  The remedy for forced labor is *not* "better wages and working conditions."  *Id.* at 1016.  Rather, "{t}he remedy for truly forced labor should be termination of the employment and the freedom to go elsewhere."  *Id.*

Accordingly, the text of the statute, its legislative history, and case law interpreting an identical definition of forced labor demonstrate that Section 307 prohibits import of merchandise produced by workers who did not offer themselves to work *voluntarily*.

---

forced labor in that convention is identical to the definition adopted by Congress in 19 U.S.C. § 1307.

  **ii.** **Customs' Reliance on the ILO Indicators as a Substitute for the Statutory Definition Of "Forced Labor" Renders the Finding Arbitrary, Capricious, Not in Accordance with Law, and in Excess of Statutory Authority or Limitation**

As discussed, Customs relied on the ILO indicators as the basis for its *Finding* that Kingtom's aluminum extrusions were manufactured with forced labor.  Customs did not discuss or apply the statutory definition of forced labor that requires a showing that labor be involuntary.  Customs' substitution of the ILO indicators for the statutory definition of forced labor renders the *Finding* arbitrary, capricious, not in accordance with law, and in excess of statutory authority or limitation.

Customs may not rely "on factors which Congress has not intended it to consider."  *See State Farm*, 463 U.S. at 43, 56 (1983) (finding that, in failing to articulate a rational connection between facts found and decision to rescind regulatory rule, agency improperly considered "adverse public reaction" to modification, rather than rescission, of rule); *see also MATES*, 729 F.2d at 752 (holding that Customs' denial of duty-free treatment for import of ship-handling simulator, based on its interpretation of statute that simulator was to be used for "vocational training" rather than for "formal science-oriented education" had "no basis in the law").  For example, in *MATES*, the Federal Circuit concluded that Customs had created an "additional requirement," not found in the applicable statute, that "{an} educational purpose must be a formal science-oriented one (undefined)" and not a "vocational" one.  *Id.*  Similarly, in *B.F. Goodrich Co. v. United States*, Customs denied a claim for duty drawback based on its regulation that required the claimant to have "possession" of the imported products while those goods were in the United States in order to claim duty drawback upon the later export of fungible goods made by the company in the United States.  794 F. Supp. 1148, 1149-50 (Ct. Int'l Trade 1992).  The court held that the statutory provisions on drawback only required possession with respect to

18

the *exported* goods, not the imported ones, and therefore "clearly" did not include the possession requirement "that Customs attempt{ed} to graft onto" the statute. *Id.* at 1152.

As in *MATES* and *Goodrich* where the Federal Circuit and this court found that Customs had read into a statute a criterion that did not exist, Customs' substitution of the 11 ILO indicators to define "forced labor" is arbitrary, capricious, not in accordance with law, and in excess of statutory authority or limitation. As a result, much of the evidence Customs relied upon in its *Finding* bears no relation whatsoever to the statutory definition of forced labor as service exacted "involuntarily" and "under the menace of penalty." *See* 19 U.S.C. § 1307. For instance, Customs' allegation that Kingtom did not [

], which Customs included as evidence of the ILO indicator [                                    ] may (if true) state a colorable claim under Dominican Republic domestic law but does not state a claim of forced labor under Section 307. *See* A.R. 8 at 000053-54. The involuntariness requirement is lacking.

Customs' Allegation Assessment contains examples of [                        ], which it [              ] as violations of the ILO indicators, but such examples have been dismissed in cases with similar facts for failing to meet the standard of "forced labor" as articulated by the definition that appears word-for-word in Section 307. For instance, the Allegation Assessment includes under the indicator "Abuse of Vulnerability" that [

]." A.R. 8 at 000047-48. Under the indicator "Intimidation and Threats," the Allegation Assessment states that [

19

].  A.R. 8 at 000051-52.

Rather than evidence of forced labor, "the expressed fear of losing one's current employment is a clear indicator that the current employment is not forced labor."  *Bridgestone*, 492 F. Supp. 2d at 1014; *cf. Arellano v. Marshalls of MA, Inc.*, 2018 WL 1120870 at *4 (N.D. Ind. Feb. 2, 2018) (finding employer did not "obtain" labor of plaintiff "by means of force, threats of force, physical restraint, or threats of physical restraint" where worker "always had an exit option—to quit her employment").  As in *Bridgestone*, workers' dire socioeconomic circumstances "are not the creation" of Kingtom and the fact that workers "face worse prospects elsewhere . . . cannot be equated with an employer's use of force or coercion to keep workers on the job."  492 F. Supp. 2d at 1016-17, 1018.

Similarly, workers complained that Kingtom was not [                         ].  *See* A.R. 8 at 000052 ([

]); *see also* A.R. 8 at 000055 ([

]).  But evidence of an [                                        ] is not evidence that the labor for which the workers are being paid was "forced labor."  *See Velez v. Sanchez*, 693 F.3d 308, 321 (2d Cir. 2012) (finding that ILO's definition of forced labor in Convention No. 29 "does not cover 'low wages or poor working conditions'").  Where domestic legislation provides remedies for an employer's mistreatment of employees, the proper avenue for relief is domestic labor law.  *Compare id.* at 319-322 *with id.* at 325 (finding claims of 16-year-old Ecuadorian national, who moved to New York City to work as live-in nanny and was not paid promised weekly salary, could survive summary judgment under the Fair Labor Standards Act but could not be considered forced labor).  As Customs readily admits in the Allegation Assessment, Dominican Republic law clearly provides such remedies.  A.R. 8 at

20

000055 (noting [                                                    ]); *id.* at 000056

(noting [

                                                    ]).  Forced labor, by

contrast, "must involve a 'severe violation of human rights and restriction of human freedom,'"

which is not the case here.  *Velez*, 693 F.3d at 321.

The ILO indicators do *not* address the *sine qua non* for a finding of forced labor—that the

labor is such that "the worker does not offer himself voluntarily."  19 U.S.C. § 1307.  The ILO

indicators relied upon by Customs do not, by themselves, focus on the question of whether the

worker has offered himself voluntarily pursuant to Section 307.  *See* A.R. 8 at 000047.  They are

merely "indicators" that forced labor *may* be present.

The way in which Customs' wielded its broad interpretation of the statute in this case is

troubling:  Customs expanded the scope of a statutory term to impose its enforcement powers

over a broad swath of behavior that was not derived from the text of the statute.  Using this extra-

statutory ILO framework, the agency then conducted a black-box investigation of a company

without providing notice that it was being investigated.  At the end of that investigation, the

agency deployed its broad definition to slap a "badge of infamy" on a private company, banning

it from the U.S. market.  *See Wieman v. Updegraff*, 344 U.S. 183, 190-91 (1952); *see also*

*Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name,

reputation, honor, or integrity is at stake because of what the government is doing to him, notice

and an opportunity to be heard are essential."); *Joint Anti-Fascist Refugee Committee v.*

*McGrath*, 341 U.S. 123, 139 (1951) (Burton) (plurality) (finding Attorney General did not have

sufficient factual basis to label organizations "Communist," the effect of which was to "cripple

the functioning and damage the reputation of those organizations").

NON-CONFIDENTIAL

For all these reasons, Customs' substitution of the ILO indicators for the statutory definition of "forced labor" as applied to Kingtom in the *Finding* is arbitrary, capricious, not in accordance with law, and in excess of statutory authority or limitation.

**B.    Customs' *Finding* Is Arbitrary, Capricious And Not In Accordance With Law**

**i.    There Is No Evidence That The Labor Was Involuntary**

In the Allegation Assessment, Customs concludes that Kingtom [

] and [

].  A.R. 8 at 000040, 000058; *see also Finding*, 89 Fed. Reg. 96,265.  "Forced labor," for purposes of the *Finding*, "shall mean all work or service which is exacted from any person under menace of any penalty for its non-performance *and for which the worker does not offer himself voluntarily*."  19 U.S.C. §1307 (emphasis added).  The *Finding* is arbitrary and capricious because Customs failed to provide evidence that prohibited merchandise was produced by any worker who "did not offer himself voluntarily" as required for the labor to be "forced."  In other words, Customs was required to make a "rational connection" between the facts it found and the legal conclusion it drew—the existence of forced labor—but failed to do so in this case.  *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)); *see also Linyi Chengen Import and Export Co. v. United States*, 391 F. Supp. 3d 1283, 1292 (Ct. Int'l Trade 2019) (citing *State Farm*, 463 U.S. at 43) (finding agency action arbitrary and capricious where agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.").  Instead, Customs drew unreasonable conclusions from a cursory and shallow analysis of the evidence related to the ILO indicators.

In the Allegation Assessment, Customs claims that Kingtom subjected its workers to

[      ] ILO forced labor indicators: abuse of vulnerability, intimidation and threats, deception,

withholding of wages, physical and sexual violence, restriction of movement, excessive

overtime, [                                                    ].  A.R. 8 at 000047; Compl. at

Attachment 2, Attachment 3.  Yet, none of the evidence that Customs cites regarding these

indicators demonstrates that workers were forced to work involuntarily.  For example, Customs

alleged that Kingtom took advantage of workers' vulnerabilities, but the vulnerabilities it

identifies—[                                                    ]—do not suggest that workers

were forced to work involuntarily.  A.R. 8 at 000047.  Similarly, Customs claims Kingtom

threatened or intimidated workers by [

     ] and notes that [

                                                    ].  But, as the court noted in

*Bridgestone*, "the phrase 'menace of any penalty' does not refer to the harm a person would

suffer if he leaves a job and is unable to earn a living elsewhere," and the remedy for forced

labor is not "better wages and working conditions" but the "freedom to go elsewhere."

*Bridgestone*, 492 F. Supp. 2d at 1013-18.  The Court should hold that the *Finding* is arbitrary and

capricious as Customs has made no showing that Kingtom's workers labored involuntarily.

Customs claims Kingtom forced employees to work because workers experienced

restriction of movement as evidenced by the fact that [

                                                    ].  A.R. 8 at

000050.  The examples of restricted movement that Customs identifies are limited to [

NON-CONFIDENTIAL

]. A.R. 8

at 000050. None of this evidence suggests that employees work involuntarily. In fact, Customs

admits that [                                                                                      ], which

means that their freedom of movement is not absolutely restricted and workers had the option to

not return to work if they felt the working conditions were unsuitable, even if [

                                                                                      ]. Customs knows that

Kingtom must have a [                                        ] because it is located in a free trade zone, which

requires Dominican Customs to control admittance at the gate and "examine every truck and

container arriving into Kingtom's facility." A.R. 8.6 at 000098, 000106 (public record).

Customs verified this fact. *Id.*

    Customs faults Kingtom for requiring its employees to [

        ] and concludes that, during [                        ], workers experienced [

                ]. A.R. 8 at 000050, 000053. The company policy that required workers to

[                                                        ] does not indicate forced labor, but instead merely reflects a

reasonable health and safety measure employed at that time given the circumstances. *See*

*Proclamation 9994 of March 13, 2020: Declaring a National Emergency Concerning the Novel*

*Coronavirus Disease (Covid-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 18, 2020) (listing

[                                                                                      ]).

Importantly, the workers agreed to work under [                ] and were still able to [

                ]. *See* A.R. 8 at 000050 (noting workers [


        ]). Customs claims that [

                        ], but the cited evidence explains that the [                ] was either

24

NON-CONFIDENTIAL

[              ] or [        ] or both.  *Id.*  Neither constitute exacting labor from workers involuntarily:  Workers chose to [                                                  ].  *See* A.R. 8.34 at 000275 (explaining that workers [          ] because they [

                                ]).

None of the other evidence regarding deception, physical and sexual violence, withholding of wages, or excessive overtime demonstrates that Kingtom's workers were involuntarily employed.  For example, Customs explains that Kingtom deceived workers regarding [                                            ], but none of the cited "deception" deprives workers of the ability to choose whether to continue voluntary employment.

The evidence that Customs cites with regard to withholding of wages and excessive overtime demonstrates only [

                                    ], but fails to evidence that any labor was involuntary.  A.R. 8 at 000052-55.  Instead, much of the evidence represents reasonable employment practices that do not suggest indentured or forced labor.  For example, Customs claims that [

                                                            ].

*See* A.R. 8 at 000053.  Of course, a worker would not [                                        ].

Customs also concludes that Kingtom's workers worked excessive overtime, but the overtime worked does not *ipso facto* demonstrate involuntariness on the part of the workers.

Therefore, Customs has wholly failed to show that Kingtom employed forced labor—that is, that any worker did not voluntarily offer himself or herself to work for Kingtom.  Customs describes certain conditions that may be facially similar to some of the ILO indicators, but any reasonable analysis of the facts here leads to the conclusion that Customs failed to find affirmative evidence of involuntary employment or labor on the part of Kingtom's workers.  This

is not surprising since Customs improperly used the ILO indicators, which do not have an involuntariness requirement, for a finding of forced labor under the statute, which does have such a requirement. The Court should thus hold the *Finding* arbitrary, capricious and otherwise not in accordance with law.

### ii. The *Finding* Relies On Stale, Uncorroborated, And Contradicted Information

The *Finding* is based almost entirely on the attestations of 16 unnamed individuals that purportedly worked for Kingtom and that Customs interviewed May 16-19, 2022 concerning their experiences prior to May 2022. A.R. 8 at 000057. These interviews do not appear to have been conducted under oath or with the penalty of perjury, and Customs provides no corroborating evidence regarding the claims by workers in the interviews. *See generally* A.R. 8 (expressly corroborating only that [

]). Customs must, but did not, account for the lack of credibility that these interviews possess. *See Linyi*, 391 F. Supp. 3d at 1292 (noting agency action is arbitrary where the agency "failed to consider an important aspect of the problem"); *see also Consol. Fibers, Inc. v. United States*, 535 F. Supp. 2d 1345, 1357, 23 C.I.T. 24, 38-39 (2008) ("It is disappointing that the Commission, an investigatory agency with subpoena power performing quasi-adjudicatory functions, thought it wise to rely so heavily on the unrecorded statements of one individual, *not under oath*, made during an *ex parte* telephone conversation. Such a choice does seem to test the rationality of the Commission's decision.") (emphasis added). Indeed, the Supreme Court has questioned the use of unsworn, unverified statements in an agency record. *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 230 (1938) ("Mere uncorroborated hearsay or rumor does not constitute substantial evidence.").

26

Even if credible, those interviews do not have any probative value concerning Kingtom's labor practices two and a half years later, at the time of the December 2024 *Finding* that Kingtom currently employs forced labor in the Dominican Republic.  The only evidence that TRLED gathered subsequent to those interviews concerning Kingtom's labor practices was limited to unsupported and contradicted statements in April 2023 that that [

], which is insufficient to support the *Finding* that Kingtom employed forced labor in 2024 or thereafter.  The reliance on those interviews to the exclusion of and failure to gather other contemporaneous evidence is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

The purpose of Section 307 is to prevent *goods produced* using forced labor from being sold in the United States.  To effect this policy goal, the statute provides that "goods, wares, articles, and merchandise mined, produced or manufactured wholly or in part in any foreign country by convict labor or/and forced labor" are "not entitled to entry" "and their importation thereof is hereby prohibited."  19 U.S.C. § 1307.  In practice, this grants Customs the authority to consider whether *specific goods* in an entry were produced using forced labor, and to either conclude that they were not and allow them to be imported, or to conclude that they were and seize them or allow their re-export.  Customs does not have authority to bar entry of merchandise produced in December 2024 based on evidence of forced labor that may have occurred in May of 2022 or [                              ], well before the merchandise at issue here would have been produced.  That is, because the statute concerns the goods and not the producer, information about labor practices of the producer at times other than the time of production has limited to no probative value to the question of whether the merchandise was produced using forced labor.

27

The length of time between the worker interviews and the publication of the *Finding* deteriorated any certainty that Customs could have had that the labor conditions described in the interviews were the labor conditions at Kingtom at the time of the *Finding*.  The record provided by Defendant does not justify the two-and-a-half-year delay.  A.R. 9 at 004263.  The record contains little to no analysis from June 2022 through March 2023, no record documents from May 2023 through March 30, 2024, and the recommendation was not approved until August 2024 or published until December 2024.  Rather than showing an in-depth analysis of the May 2022 interviews and continued efforts to gather corroborating information, the record shows TRLED [

                                                    ].  Substantial administrative delays in conducting investigations do not excuse the need for timely use of evidence.

In *USX Corp. v. United States*, for example, the Court held that a determination by the International Trade Commission ("ITC") that a U.S. industry was not threatened with material injury by reason of imports from Argentina was not supported by substantial evidence where the ITC based its determination on Argentina's production capacity in 1984 on data from 1983.  655 F. Supp. 487, 488, 498 (Ct. Int'l Trade 1987).  The Court found this older data "stale" where the record evidence showed that the Argentine industry had experienced yearly changes from 1981 to 1983 that could affect the ITC's analysis and that the lack of contemporaneous evidence was due to the ITC's failure to request the 1984 data.  *Id.*

Due to Kingtom's business model, it typically does not maintain finished goods inventory over any long span of time.  Kingtom does not sell broadly useable extrusions: its extrusions are customized and serve its customers' specific needs.  *Cf.* AR 8.6 at 000100 (noting that Kingtom explained in EAPA Case No. 7550 that "customer's orders are 'made to order'" and made using

"custom molds" that are specific to the customer); AR 8.6 at 000117 (showing molds that are customized to customer specifications). Once the extrusions are customized to the customers' precise criteria, they are only sellable to the particular customers. *See id.*; *see also H&E Home, Inc. v. United States*, 714 F. Supp. 3d 1353, 1365-67 (Ct. Int'l Trade 2024) (noting, in appeal of EAPA Case No. 7423, that Customs' Office of Regulations and Rulings concluded that Kingtom produces aluminum extrusions customized to the specifications of each of its customers). Indeed, the only finished goods inventory that Kingtom keeps is already-ordered merchandise that is awaiting the production of the rest of the order. Kingtom does not sell to its customers extrusions that it produced in the distant past. As the statute and regulation each require that there be evidence that particular merchandise was produced using forced labor, the possibility of any Kingtom shipments in 2024, let alone December 2024, being produced with the alleged forced labor during or before May 2022 is not supported by the record.

Furthermore, Customs ignored record evidence that Kingtom had not engaged in forced labor and that any labor issues identified by the Dominican government in May 2022 had been inspected and [                ]. On May 6, 2022, the Dominican government briefly closed Kingtom following inspections that found violations of Dominican law and practices that endangered the lives of workers (*i.e.*, *not* because it found that Kingtom had been engaged in forced labor). AR 8.20. Yet, the Dominican government permitted Kingtom to reopen [

                ] because the labor issues [                ]. A.R. 8 at 000056. The fact that the Dominican government permitted Kingtom to reopen evidences that Kingtom had [          ] the labor issues it identified because companies that are closed by the Ministry of Labor may only reopen once they "comply with the law." A.R. 4 at 000021 (public record). The fact that the Dominican government investigated Kingtom at the same time as Customs'

**NON-CONFIDENTIAL**

interviews from May 16-19, 2022, did not report that it had found any evidence of involuntary labor, and permitted Kingtom to reopen provides evidence that forced labor had not occurred. Customs must consider this evidence that runs counter to the agency's explanation. *See Linyi Chengen*, 391 F. Supp. 3d at 1292 ("An agency acted in an arbitrary and capricious manner if it 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'") (quoting *State Farm*, 463 U.S. at 43).

Despite the reopening of Kingtom by the Dominican government, Customs concluded that Kingtom had not [               ] the forced labor allegedly identified in its 2022 interviews by the time of its *Finding* because [

        ] at Kingtom and [

                                                    ].  A.R. 8 at 000057; A.R. 8.1111 at 004252.  The absence of [

                                                    ] do not lead to the conclusion that no [               ] took place, if it was even necessary at all.

Customs' reliance on stale and uncorroborated evidence from two and half years prior to its *Finding* despite affirmative evidence that no forced labor was discovered in an official inspection by the Dominican government further renders the *Finding* arbitrary, capricious and otherwise not in accordance with law.

## VII.    <u>CONCLUSION AND RELIEF REQUESTED</u>

Based on the foregoing, Kingtom respectfully requests that this Court grant this motion and (1) hold that the *Finding* is in excess of Customs' statutory authority and limitation; (2) hold that Customs' *Finding* is arbitrary, capricious, or otherwise not in accordance with law; (3) hold the *Finding* unlawful and set it aside; (4) hold that the *Finding* shall have no force or effect; (5) enter judgment for Plaintiff; and (6) grant Plaintiff such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed

**MORRIS, MANNING & MARTIN LLP**
1333 New Hampshire Avenue, N.W., Suite 800
Washington, D.C. 20036

*Counsel to Plaintiff Kingtom Aluminio S.R.L.*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the Standard

Chambers Procedures of the U.S. Court of International Trade in that it contains 9,512 words

including text, footnotes, and headings and excluding the table of contents, table of authorities

and counsel's signature block, according to the word count function of Microsoft Word 2016

used to prepare this brief.

/s/ Brady W. Mills
Brady W. Mills

Dated:  May 5, 2025