**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA;<br>DEPARTMENT OF HOMELAND SECURITY;<br>UNITED STATES CUSTOMS AND BORDER<br>PROTECTION; KRISTI NOEM, *in her official*<br>*capacity as Secretary of the Department of*<br>*Homeland Security;* CALEB VITELLO, *in his*<br>*official capacity as the Acting Commissioner for*<br>*U.S. Customs and Border Protection,*<br><br>　　　　Defendants,<br><br>　　and<br><br>ALUMINUM EXTRUDERS COUNCIL; AND<br>UNITED STEEL, PAPER AND FORESTRY,<br>RUBBER, AND MANUFACTURING AND<br>SERVICE WORKERS INTERNATIONAL<br>UNION,<br><br>　　　　Defendant-Intervenors. | **NON-CONFIDENTIAL VERSION**<br>Proprietary Information Removed<br>from Pages 9 to 11, 13 to 16, and 18 to<br>21<br><br><br><br><br>Court No. 24-00264 |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF**
**ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Jordan L. Fleischer
Edward J. Thomas III
Nicholas C. Duffey

**MORRIS, MANNING & MARTIN, LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Plaintiff Kingtom Aluminio S.R.L.*

June 30, 2025

## TABLE OF CONTENTS

I.     ARGUMENT ....................................................................................................... 2

    A.    Customs' Substitution of the ILO Indicators for the Statutory Definition of Forced Labor Is Arbitrary, Capricious, and Not in Accordance with Law, and Exceeds the Agency's Statutory Authority or Limitation ........................................................... 2

    B.    The *Finding* is Arbitrary, Capricious and Not in Accordance with Law ............. 11

        i.     There Is No Evidence That The Labor Was Involuntary ......................... 11

        ii.    The *Finding* Relies on Stale, Uncorroborated, and Contradicted Information ............................................................................................... 18

II.    CONCLUSION AND RELIEF REQUESTED ............................................. 23

CERTIFICATE OF COMPLIANCE ..................................................... 24

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adhikari v. Daoud & Partners*,
   697 F. Supp. 2d 674 (S.D. Tex. 2009) ....................................................................5

*Alum. Extruder Fair Trade Committee v. United States*,
   714 F. Supp. 3d 1332 (Ct. Int'l Trade 2024) ......................................................16

*Aragon v. Che Ku*,
   277 F. Supp. 3d 1055 (D. Minn. 2017) ..............................................................4, 5

*Burlington Truck Lines, Inc. v. United States*,
   371 U.S. 156, 83 S. Ct. 239 (1962) ...................................................................15, 22

*Consol. Fibers v. United States*,
   535 F. Supp. 2d 1345, 23 C.I.T. 24 (2008) ..........................................................20

*Corus Staal B.V. v. Dep't of Commerce*,
   395 F.3d 1343 (Fed. Cir. 2005)................................................................................6

*Deutch v. Turner Corp.*,
   324 F.3d 692 (9th Cir. 2003) ...................................................................................4

*Diamond Sawblades Mfrs. Coal. v. United States*,
   986 F.3d 1351 (2021)................................................................................................20

*Does v. The Gap, Inc.*,
   2002 WL 1000068 (D.N. Mar. I. May 10, 2002)............................................12, 14

*Dorbest Ltd. v. United States*,
   604 F.3d 1363 (Fed. Cir. 2010)................................................................................6

*Itochu Building Prods. Co., Inc. v. United States*,
   163 F. Supp. 3d 1330 (Ct. Int'l Trade 2016) ............................................14, 15, 22

*John Roe I v. Bridgestone Corp.*,
   492 F. Supp. 2d 988 (S.D. Ind. 2007) ...................................................... *passim*

*Killeen v. Office of Pers. Mgmt.*,
   382 F.3d 1316 (Fed. Cir. 2004)................................................................................6

*Lackey v. Stinnie*,
   145 S.Ct. 659 (2025)................................................................................................3

*Licea v. Curaco Drydock Co.*,
  584 F. Supp. 2d 1355 (S.D. Fla. 2008) ........................................................5

*Linyi Chengen Import and Export Co. v. United States*,
  391 F. Supp. 3d 1283 (Ct. Int'l Trade 2019) ...............................................20

*Micron Technologies, Inc. v. United States*,
  893 F. Supp. 21, 19 C.I.T. 829 (1995) ........................................................20

*Pollock v. Williams*,
  322 U.S. 4, 64 S. Ct. 792 (1944) .................................................................12

*SeAH Steel Corp. v. United States*,
  35 C.I.T. 326, 764 F. Supp. 2d 1322 (2011) .................................................3

*SEC v. Chenery Corp.*,
  318 U.S. 80, 63 S. Ct. 454 (1943) ..........................................................15, 22

*Tri Union Frozen Products, Inc. v. Untied States*,
  227 F. Supp. 3d 1387 (Ct. Int'l Trade 2017) ................................................8

*United States v. Kozminski*,
  487 U.S. 931, 108 S. Ct. 2751 (1988) .........................................................14

*Universal Camera Corp. v. NLRB*, 3
  40 U.S. 474, 71 St. Ct. 456 (1951)) ............................................................20

*Velez v. Sanchez*,
  693 F.3d 308 (2d Cir. 2012) ...........................................................4, 5, 7, 10

**Statutes**

5 U.S.C. § 706 .....................................................................................................20

19 U.S.C. § 1307 ........................................................................................ *passim*

**Regulations**

19 C.F.R. § 12.42 .................................................................................................6

**Other Authorities**

*Notice of Finding That Aluminum Extrusions and Profile Products and
  Derivatives Produced or Manufactured Wholly or in Part by Kingtom
  Aluminio S.R.L. With the Use of Convict, Forced or Indentured Labor Are
  Being, or Are Likely To Be, Imported Into the United States*,
  89 Fed. Reg. 96,265 (Dec. 4, 2024) .................................................... *passim*

71 Cong. Rec. 4,478 (1929) .................................................................... *passim*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; KRISTI NOEM, *in her official capacity as Secretary of the Department of Homeland Security;* CALEB VITELLO, *in his official capacity as the Acting Commissioner for U.S. Customs and Border Protection,* <br><br> Defendants, <br><br> and <br><br> ALUMINUM EXTRUDERS COUNCIL; AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, AND MANUFACTURING AND SERVICE WORKERS INTERNATIONAL UNION, <br><br> Defendant-Intervenors. | **NON-CONFIDENTIAL VERSION** <br> Proprietary Information Removed from Pages 9 to 11, 13 to 16, and 18 to 21 <br><br><br> Court No. 24-00264 |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to U.S. Court of International Trade ("USCIT") Rule 56.1, Plaintiff Kingtom

Aluminio S.R.L. ("Kingtom" or "Plaintiff") hereby replies to the response briefs filed by

Defendant, the Unites States *et al.*, and Defendant-Intervenors, the Aluminum Extruders Council

and the United Steel, Paper and Forestry, Rubber, and Manufacturing and Service Workers

International Union ("Intervenors"). Def.'s Response Brief, *Kingtom v. United States et al.*, No.

24-00264 (Ct. Int'l Trade June 9, 2025), ECF 48 ("Def. Br."); Def.-Intervenor's Response Brief,

*Kingtom v. United States et al.*, No. 24-00264 (Ct. Int'l Trade June 16, 2025), ECF 50

("Intervenor Br."). For the following reasons, Defendant and Defendant-Intervenor's arguments should be rejected.

I.    <u>**ARGUMENT**</u>

      A.    **Customs' Substitution of the ILO Indicators for the Statutory Definition of Forced Labor Is Arbitrary, Capricious, and Not in Accordance with Law, and Exceeds the Agency's Statutory Authority or Limitation**

Kingtom made the straightforward argument in its opening brief that U.S. Customs and Border Protection ("Customs" or "CBP") had unlawfully substituted the International Labor Organization ("ILO") indicators for the statutory definition of "forced labor." Kingtom Br. at 13-22. That argument was supported by the fact that the *Finding* did not contain any discussion of how the statutory definition of forced labor was met, or how the evidence related to the ILO indicators supported a forced labor finding as statutorily defined. Kingtom Br. at 8-9. Such a discussion or linkage was required because the ILO indicators are merely *indicators* that *could* suggest the existence of forced labor; they do not directly address the statutory requirements. Nor are the ILO indicators part of U.S. law. The statutory definition requires that work or service provided be exacted (1) under the menace of any penalty for its nonperformance, and (2) for which the worker does not offer himself voluntarily. 19 U.S.C. § 1307.

Instead of addressing this straightforward legal argument, Defendant first argues that the statute delegated authority to Customs to promulgate regulations and that neither the statute nor the regulations "prohibit CBP's use of the ILO indicators as a guide to conducting its investigation." Def. Br. at 18; Intervenor Br. at 3. Defendant either misses the point or is seeking to avoid it. First, although the statute does not prohibit Customs from using the ILO indicators as a guide to forced labor, that does not give Customs a license to replace the statutory definition of forced labor with the ILO indicators. The statute is the primary authority and must be followed. *See Lackey v. Stinnie*, 145, S. Ct. 659 (2025) ("The court begins with the statute's

text.").  Any guides or tools used by Customs to determine if the statutory definition of forced labor is met must be in service to that statutory definition.  The tools must be fit for the purpose.  *See SeAH Steel Corp. v. United States*, 35 C.I.T. 326, 338, 764 F. Supp. 2d 1322, 1332 (2011) ("The statute comes first, and any methodology employed by the Department must come after, with implementation of the statute as its goal.").  As discussed in Kingtom's opening brief, the ILO indicators do not directly address whether the labor is involuntary as required by the statute.  Instead, the ILO indicators are merely "indicators" that forced labor may be present and none of the ILO indicators directly deal with the issue of whether the labor is being provided involuntarily, *i.e.,* forced upon the worker.  *See, e.g.*, Kingtom Br. at Attachment 1 ("The indicators represent the most common signs or 'clues' that point to the *possible* existence of a forced labour case.") (emphasis added).

The plain language of the statute, the legislative history, and caselaw consistently indicate that the work must be "involuntary" to constitute "forced" labor.  The Senate debate on the amendment to the Tariff Act of 1930 that would become Section 307 highlights this truism.  In some places forced labor is discussed as being synonymous with conscript labor.  *See* 71 CONG. REC. 4,478, 4,488 (1929) ("Forced labor is, *in effect*, *conscript labor*…") (Sen. Blaine).  In other places it is treated as a form of slavery.  *See id.* at 4491 ("I can readily say for myself that the definition of forced labor and the prohibition of forced labor products as thus defined ought to be acceptable to anyone, because it is really convict labor or slave labor, inasmuch as the worker does not offer himself voluntarily.") (Sen. Blaine); *id.* at 4496 ("The form of labor inhibited by this proposed amendment is slavery, nothing short of slavery.") (Sen. Blaine).  Forced labor is contrasted throughout the Senate debate with "indentured labor" for which the worker binds himself *voluntarily*.  *Id.* at 4488, 4490-91, 4496-97.

Court decisions addressing forced labor claims under Alien Tort Statute ("ATS") are in accord.[1]  In *Aragon v. Che Ku*, 277 F. Supp. 3d 1055 (D. Minn. 2017), the court catalogued cases dealing with what constitutes forced labor.  The court stated that "{w}hen 'applying the ATS to forced labor claims, courts in the United States have tended to require more than evidence of terrible working conditions and inadequate wages to state a cognizable violation of customary international law.'"  *Id.* at 1068 (quoting *Velez v. Sanchez*, 693 F.3d 308, 321 (2d Cir. 2012)).  Cases in which forced labor allegations were accepted "have involved egregious violations of human dignity."  *Aragon*, 277 F. Supp. 3d at 1068.  These cases include situations where workers were "subjected to starvation, beatings, physical and mental torture, transport by ship in unventilated cargo holds, forced marches through the tropical sun without water, and threats of execution or death from disease" (*Deutch v. Turner Corp.*, 324 F.3d 692, 705 (9th Cir. 2003)); "international trafficking of individuals, through deceit and coercion, to work against their will" (*Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 687 (S.D. Tex. 2009)); and cases "involving plaintiffs held in captivity who suffered severe injuries as a result of their work, were denied medical treatment, and risked imprisonment, death, and the persecution of their families by the Cuban government if they escaped" (*Licea v. Curaco Drydock Co.*, 584 F. Supp. 2d 1355, 1358 (S.D. Fla. 2008)).  By contrast, cases where forced labor claims were dismissed involved "poor working conditions but {did} not include physical violence, force, confinement, or constraints."  *Aragon*, 277 F. Supp. 3d at 1068 (citing *Velez*, 693 F.3d at 321-23 (evidence of

---

[1] Although the cases did not involve the embargo of imports based on a forced labor determination under 19 U.S.C. § 1307, the definition applied in these cases is from the ILO Convention No. 29, which is the definition that is used in 19 U.S.C. § 1307.  *See, e.g., John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1012 (S.D. Ind. 2007) (discussing definition of forced labor under ILO Convention No. 29) and 71 CONG. REC. 4488 (stating that language in proposed Section 307 comes from the ILO Convention).

poor working conditions, disparaging remarks, and social isolation); *Bridgestone*, 492 F. Supp. 2d at 1015-19 (allegations of poor working conditions, low wages, and threats to terminate employment)).

Although a forced labor determination is fact specific, one factor that is present in these cases where a colorable allegation of forced labor was found is that the labor was involuntary in the sense that the workers could not just quit and leave employment. *See, e.g., Aragon*, 277 F. Supp.3d at 1068 ("In addition to poor working conditions and inadequate compensation, the allegations included physical violence, *periodic physical restraint and confinement*, and threats including but not limited to threats of deportation," and Plaintiffs were "*prevented from leaving employment* for many years") (emphasis added). This is consistent with the plain language of the statute that defines forced labor to be only work "for which the worker does not offer himself voluntarily." 19 U.S.C. § 1307. The ILO indicators do not directly address this involuntary element by examining whether the worker is working against their will such that they are unable to just quit and leave the job.[2] In relying exclusively on the ILO indicators as the basis for its forced labor finding, Customs has unlawfully substituted them for the statutory definition that requires a finding that the labor be provided involuntarily.

Contrary to Defendant's argument, Congress' grant to Customs of authority to promulgate regulations does not give Customs *carte blanche* to substitute the ILO indicators for the statutory definition of forced labor. *See* Def. Br. at 18. The regulations promulgated by Customs focus on procedural aspects, and do not even venture into the realm of providing a

---

[2] Defendant-Intervenor points to the introduction to the ILO indicators where it is indicated that the ILO indicators are based upon the definition of forced labor. *See* Int. Br. at 3-4. But this introductory language is not borne out in the eleven ILO indicators, none of which directly address whether the work is involuntary in the sense of the worker not having the option to quit the job.

framework for how to determine the existence of forced labor.  *See* 19 C.F.R. § 12.42.

Additionally, the regulations would ultimately need to be consistent with the statute.  *Dorbest*

*Ltd. v. United States*, 604 F.3d 1363, 1370-73 (Fed. Cir. 2010) (invalidating regulation that did

"not comply with the statutory requirements"); *Killeen v. Office of Pers. Mgmt.*, 382 F.3d 1316,

1321-24 (Fed. Cir. 2004) (holding that a regulation "is inconsistent with the clearly expressed

intent of Congress and therefore fails under any level of judicial deference").  Thus, even if

Customs included in its regulations the ILO indicators as the framework for analyzing

allegations of forced labor, that would not permit Customs to use them as a substitute for the

statutory definition because the ILO indicators *per se* do not directly address the involuntariness

requirement from the statute.

Defendant next argues that "{i}t is particularly reasonable for CBP to consider the ILO

indicators because both Congress and the ILO define forced labor using the same language."  *See*

Def. Br. at 18.  This argument is not persuasive.  The definition of forced labor, and the

analytical framework used by Customs to determine if that statutory definition is met, are two

different things.  Congress' use of the ILO's definition of forced labor in the statute has no

bearing on whether Customs can permissibly apply the ILO indicators without regard to the

statutory definition.  *See Corus Staal B.V. v. Dep't of Commerce*, 395 F.3d 1343, 1349 (Fed. Cir.

2005) (refusing "to overturn Commerce's zeroing practice based on any ruling by the WTO or

other international body unless and until such ruling has been adopted pursuant to the specified

statutory scheme").  As noted, the ILO indicators are just that—"indicators" of forced labor—

and do not purport to mandate a forced labor finding if one or several of the indicators are

present.  *See* Kingtom Br. at Attachment 1.  Additionally, Kingtom is not arguing that Customs is

not permitted to use the ILO indicators as part of its framework for determining if forced labor

exists.  Rather, Kingtom argues that Customs cannot read into the statute the ILO indicators and

substitute them for the statutory definition that requires labor be provided involuntarily.  *See*

Kingtom Br. at 18-19.

      Contrary to Defendant's claim, the fact that federal courts have mentioned or discussed

the ILO indicators when analyzing allegations of forced labor does not lead to the conclusion

that they can serve as a substitute for the statutory definition.  *See* Def. Br. at 19 (citing *Velez*,

693 F.3d at 320 and *Bridgestone*, 492 F. Supp. 2d at 1013-14).  At best, these cases support the

proposition that the ILO indicators can be used as a tool to identify circumstances where forced

labor may be present.  However, to the extent the ILO indicators are used as a tool, they need to

be linked to the statutory definition to show that the labor is being provided involuntarily as the

statute requires.  The *Velez* and *Bridgestone* courts were not presented with any arguments about

the relationship between the ILO indicators and the definition of forced labor.  Nor are the ILO

indicators discussed in those cases the same as the ones that were applied in the *Finding*.

*Compare Bridgestone*, 492 F. Supp. 2d at 1013-14, with Kingtom Br. at Attachment 1.  Indeed,

this evolving and changing nature of the ILO indicators makes their substitution for the statutory

definition of forced labor unreasonable.  Forced labor is defined in the text of Section 1307.

Nothing suggests that Congress adopted some changing or evolving definition.

      Defendant's reliance on *Tri Union Frozen Products, Inc.* is unpersuasive.  Def. Br. at 19

(citing *Tri Union Frozen Products, Inc. v. Untied* States, 227 F. Supp. 3d 1387, 1398 (Ct. Int'l

Trade 2017)).  That case involved an antidumping duty investigation where one of the parties

argued that labor rates used as part of Commerce's non-market economy surrogate value method

for normal value could not be used for Bangladesh because of alleged forced labor practices.  *Tri

Union Frozen Products, Inc.*, 227 F. Supp. 3d at 1390-91.  As support for its argument that the

labor rates from Bangladesh were aberrational and should not be used, the plaintiff cited to a research paper on indicators of forced labor that the court mentioned as supportive of plaintiffs' claim, but there is no specific discussion that the research paper is based on the ILO indicators. *See id.* at 1398.  But even assuming, *arguendo*, that this paper did discuss the ILO indicators, it was just used as support for the allegation that the labor rates were not reliable in Commerce's antidumping duty analysis and calculation because the labor rates paid could be low due to the existence of unfair or forced labor practices.  The case does not deal with whether evidence demonstrates forced labor as defined in 19 U.S.C. § 1307, and instead just stands for the proposition that the plaintiff had raised an inference that the labor rates were aberrational and should not be used.  It is thus not relevant here.

In response to Kingtom's argument that Customs' reliance on the ILO indicators instead of the statutory definition was tantamount to adding criteria not included in the statute, Defendant argues that Kingtom "fundamentally misunderstands the purpose of the ILO indicators."  Def. Br. at 19.  This is not true.  As discussed, Kingtom's argument is not that Customs is prohibited from using the ILO indicators as a tool for analyzing forced labor.  Rather, Kingtom argues that Customs cannot substitute the ILO indicators for the statutory definition of forced labor.  Customs' analysis of the ILO indicators did not show that workers were laboring involuntarily as statutorily required.  Instead, Customs just analyzed the ILO indicators to support its determination of forced labor and did not discuss or link the ILO indicators to the statutory definition.  Customs thus effectively substituted the ILO indicators for the statutory definition of forced labor.  This is the point of Kingtom's argument.  Whether Customs used the indicators to organize its analysis does not directly respond to Kingtom's argument.  *See* Def. Br.

8

at 19-20.  Defendant points to nothing in the *Finding* where Customs applies the statutory definition of forced labor to the evidence to demonstrate the existence of forced labor.

Defendant responds to Kingtom's argument that Customs failed to consider the statutory requirement of involuntariness by claiming that Customs considered involuntariness "when [                                                    ]."  Def. Br. at 20 (citing CBP000039-40); Intervenor Br. at 3 ("{B}ecause the ILO's definition of forced labor… requires a finding of involuntariness, {Customs'} consideration of the ILO indicators necessarily means that the agency considered evidence of involuntariness.").  A review of these cites shows that Defendant is referring to the first two pages of the Allegation Assessment.  The only reference to "involuntary" appears to be the statement that workers [                                        ] CBP000039 (citing the worker interviews from 2022); Intervenor Br. at 5-6 (agreeing with Customs regarding the [                    ] issues).  As discussed in Kingtom's opening brief at 24, the company policy requiring employees to [                                                    ] does not indicate forced labor but is instead merely a reasonable health and safety measure used during [                            ].  Even the ILO's discussion of the indicator "Restriction of Movement" states that this factor does not exist if the restrictions are reasonable or legitimate under the circumstances.  *See* Kingtom Br. at Attachment 1.  Imposing restrictions to avoid the [                              ] amongst its workforce would certainly seem to constitute reasonable or legitimate restriction.  Moreover, workers could have left the company if they wanted, despite the ongoing [            ].  CBP001729 (during the [            ], [                                                    ]).  At any rate, this lone reference to

involuntariness in the Allegation Assessment is a thin reed for Defendant to hang its argument upon.

Defendant claims that the Allegation Assessment "is replete with evidence of [

].″ Def. Br. at 20-21 (and citations therein). But other than broad, conclusory references to select pages from the Allegation Assessment, Defendant does not explain what evidence it is referring to or how that evidence demonstrates that the workers were laboring involuntarily and could not just leave the job. Some of the page references also appear to relate to the [                              ] restrictions (*e.g.*, CBP000039, CBP000049, CBP000053) that, as previously discussed, were reasonable restrictions under the extraordinary circumstances. The others exclusively relate to socioeconomic circumstances or wage grievances that are limited to [

], which are not evidence of labor being forced involuntarily, as discussed below. CBP000047, CBP000055 (citing CBP000222-26 and CBP000285-89); *see Velez*, 693 F.3d 319-25 (finding claims of 16-year-old Ecuadorian national, who moved to New York City to work as live-in nanny and was not paid promised weekly salary, could survive summary judgment under the Fair Labor Standards Act but could not be considered forced labor); *Bridgestone*, 492 F. Supp. 2d at 995, 1016-18 (finding overworked plantation workers that are charged fees deducted from their paychecks and that must purchase food from the employer company failed to establish that they were physically coerced to work). Not to mention the fact that this "evidence" stems from worker interviews conducted in 2022 and is thus stale with respect to the December 2024 *Finding*. *See* Kingtom Br. at 26-29.

In sum, this is not a case of Kingtom demanding that Customs use "magic words" to show that Customs considered the statutory requirement that the labor be involuntary. *See* Def.

Br. at 20.  Instead, Kingtom is simply arguing that Customs must follow the statutory definition of forced labor and cannot substitute the ILO indicators for that statutory definition.  That argument remains unrebutted.

**B.    The *Finding* is Arbitrary, Capricious and Not in Accordance with Law**

**i.    There Is No Evidence That The Labor Was Involuntary**

Kingtom argued that Customs failed to provide evidence that prohibited merchandise was produced by any worker "who did not offer himself voluntarily" pursuant to the statutory standard that defines "forced labor."  Kingtom Brief at 22.  Kingtom explained how Customs' analysis of the ILO indicators in the Allegation Assessment failed to demonstrate that any worker was involuntarily forced to work.  Kingtom Br. at 23-26.  Defendant fails to address any of the arguments Kingtom raised regarding the Allegation Assessment's discussion of the ILO indicators.  Instead, Defendant focuses on Kingtom's arguments regarding the statutory definition and offers general examples from the record that it claims allegedly show involuntariness.  Def. Br. at 21-23.  In doing so, Defendant fails to identify any evidence that Kingtom's workers did "not offer {themselves} voluntarily" pursuant to 19 U.S.C. § 1307.

Defendant opens its response with a strawman, arguing that Kingtom used the incorrect standard.  Def. Br. at 21-22 ("Under Kingtom's logic, if a worker was told he would receive pay, worked the required hours or more, and yet did not receive his pay, he would have still worked voluntarily because he initially went to work of his own accord.").  The situation that Defendant describes is not forced labor as statutorily defined and does not accurately describe the facts of this case.

The statute's plain language provides that forced labor is "work or service which is exacted from any person under the menace of any penalty for its nonperformance and for which the worker does not *offer himself voluntarily*," not whether workers "[          ]" or whether

11

an employer breaches an employment contract as Defendant insinuates.  19 U.S.C. § 1307 (emphasis added).  During the Senate debate, the clause "indentured labor with penal sanctions" was added to 19 U.S.C. § 1307 because, pursuant to the definition of "forced labor," "a worker may join in a contract with penal sanctions and if he signs the contract *then he offers himself voluntarily, of course, and it is not forced labor*."  71 CONG. REC. at 4490-91 (emphasis added). As noted, caselaw interpreting identical statutory text has explained that forced labor is confined to situations where workers could not just quit and leave employment.  *See*, *e.g.*, *Bridgestone*, 492 F. Supp. 2d at 1016-17 (noting that "the remedy for truly forced labor" is "the termination of the employment and freedom to go elsewhere," not better wages or working conditions) (citing *Pollock v. Williams*, 322 U.S. 4, 18, 64 S. Ct. 792 (1944) ("In general the defense against oppressive hours, pay, working conditions or treatment is the right to change employers."); *Does v. The Gap, Inc.*, 2002 WL 1000068 at *15 (D.N. Mar. I. May 10, 2002) (dismissing claims for *involuntary* servitude because plaintiffs made the choice to work)).  The ILO indicators even describe withheld wages as indicators of forced labor *only if* the wages are withheld to deprive the worker of the choice of whether to work, which Customs did not determine is the case here:

> The fact of irregular or delayed payment of wages does not automatically imply a forced labour situation. But where wages are systematically and deliberately withheld as a *means to compel the worker to remain and deny him or her of the opportunity to change employer*, this points to forced labor.

Kingtom Br. at Attachment 1 (emphasis added).

Defendant argues that 19 U.S.C. § 1307 "does not prohibit goods made only with slave labor, nor does the statute require that workers are perpetually in a state of involuntary work." Def. Br. at 22; Intervenor Br. at 4.  Kingtom, however, does not argue that the statute prohibits only "slave labor" or that the statute requires workers to be perpetually in a state of involuntary work.  Rather, Kingtom argues that Customs' *Finding* that Kingtom produced merchandise with

forced labor is arbitrary, capricious and not in accordance with law because the evidence upon which Customs relied does not demonstrate forced labor as the term is statutorily defined. Kingtom Br. at 2. Kingtom cited the legislative history explaining that forced labor is "nothing short of slavery" to demonstrate the meaning of the statutory term. Kingtom Br. at 16 (citing 71 CONG. REC. at 4495-96). The record here shows that Kingtom's workers offer themselves voluntarily to work and may resign, quit, or leave Kingtom freely. *See* CBP000383; CBP001040; CBP001729; CBP001735.

Defendant claims that "[

]," but points to no worker who was not [                    ]. Def. Br. at 22 (and citations therein); Intervenor Br. at 4-5 (noting the same issues). Moreover, the evidence cited by Defendant is limited to wage disputes regarding the [

]; but does not demonstrate that "[                    ]" like Defendant claims. *See* CBP000047, CBP000049, CBP000053, and CBP000055 (citing CBP000222-26, CBP000285-89). The specifics of the alleged [

] do not lead to the conclusion that Kingtom's employees involuntarily maintain their employment.

Kingtom's workers [                                        ], and thus have the option not to return to work. CBP000049-50; *see The Gap, Inc.*, 2002 WL 1000068 at *15 (noting the plaintiffs worked for the employer "for more than a year" as evidence of their choice to work) (citing *United States v. Kozminski*, 487 U.S. 931, 950, 108 S. Ct. 2751, 2763 (1988)). Customs was informed that workers could voluntarily leave or resign and Customs failed to give

13

this evidence weight or explanation.  CBP000383 ([


]); CBP001729 (during [          ], [

]); CBP001735 ([

]); CBP000598-99 ("[

]); CBP001040 (noting that workers [          ]); CBP000761

([          ]); CBP001346 ("[          ]");

CBP000850 ([


]); CBP001219 (during [          ], [

]) (emphasis added); CBP001504 ([

]).

Defendant next presents three examples that allegedly demonstrate Kingtom's workers

labor involuntarily, but none of the examples demonstrate that Kingtom's workers were deprived

of their free will or consent.  Def. Br. at 22.  Kingtom addresses these examples but also notes

that Customs did not rely upon, or even discuss, any of these examples with regard to

involuntariness in the Allegation Assessment.  The only express reference to involuntariness in

the Allegation Assessment is that Kingtom's workers were [

], which is inaccurate as workers were allowed to quit despite

the [          ].  CBP000039; CBP001729.  Accordingly, Defendant's argument amounts to a

*post hoc* rationalization that that Court should not entertain.  *Itochu Building Prods. Co., Inc. v.*

*United States*, 163 F. Supp. 3d 1330, 1337-38 (Ct. Int'l Trade 2016) (explaining that the court

"may only sustain the agency's decision 'on the same basis articulated in the order by the agency

itself'"); *SEC v. Chenery Corp.*, 318 U.S. 80, 89-92, 63 S. Ct. 454, 460-61 (1943) (remanding

because "the considerations urged here in support of the Commission's order were not those upon which its action was based"); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-169, 83 S. Ct. 239, 246 (1962) ("*Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated by the agency itself{.}").

In its first example, Defendant claims workers were [

]. Def. Br. at 22 (citing CBP000286); Intervenor Br. at 6 ([


]). But, as noted, the cited evidence is limited to grievances about the amount of [

] and whether the [

] were warranted, which are not situations where Kingtom is coercing workers to remain employed by Kingtom or return to work daily [                        ]. CBP000286. Customs fails to demonstrate that the workers were [        ] or that the [      ] deprived workers of the freedom to choose whether to remain in Kingtom's employ.

Defendant's second example claims that work could not have been voluntary if a worker was [

]. Def. Br. at 22 (citing CBP000273). Kingtom acknowledged the [              ] in its opening brief and noted that workers' freedom of movement was not absolutely restricted by the [

]. Kingtom Br. at 24; CBP001737 ([

]); CBP001086 ([

]). Kingtom explained it must have a [

] because Kingtom is located in a free trade zone that is regulated by the Dominican Customs authority. Kingtom

15

Br. at 24; CBP001029.  Strict enforcement of traffic into and out of the free trade zone *helps*

ensure that Kingtom complies with U.S. Customs laws.  *See Alum. Extruder Fair Trade*

*Committee v. United States*, 714 F. Supp. 3d 1332, 1351-52 (Ct. Int'l Trade 2024) (citing

Kingtom's imports and exports to and from the free trade zone as evidence that it was not

evading antidumping or countervailing duty orders).  Defendant's argument regarding the

[                    ] fails for the same reasons raised in Kingtom's opening brief.  Kingtom Br. at 23-

24.  Defendant does not confront Kingtom's opening argument regarding the [                    ]

and it thus remains unrebutted.

     Defendant's third example rhetorically asks whether [                    

] constitutes forced labor, especially where it targets a "vulnerable" worker.  Def. Br. at

22 (citing CBP000343, CBP000283).  But, again, Defendant's argument does not respond to the

issue of voluntariness.  [                                        ] does not render work provided by

the worker involuntary, even if the worker is vulnerable.  *See* 71 CONG. REC. at 4490-91

(acknowledging that "labor, *of course*, *is voluntarily rendered under the definition* of the

covenant" where an illiterate worker, who is "not capable of protecting his labor" due to his

circumstances, nonetheless signs an employment contract) (emphasis added).  The portion of the

interview cited by Defendant does not suggest that the [                    ] to induce or force

the worker to work or prevent him from leaving.  *See* CBP000343.  Nor does the interview

indicate that the [          ] worker had [                                        ], contrary to

Defendant's claims (even though he was [          ]).  *Id.*  Ultimately, the worker could choose to

resign or to not return to work the next day.  *See* CBP000049-50; CBP000383; CBP001735.

Accordingly, neither Customs in its *Finding*, nor Defendant in its response examples, have

framed their analysis with regard to voluntariness pursuant to the statutory definition.

Defendant attempts to distinguish *Bridgestone* because it does not involve the prohibition of imported merchandise pursuant to 19 U.S.C. § 1307, and claims that the court in that case failed "to recognize low wages and poor working conditions" as forced labor and would have allegedly reached a different conclusion had the plaintiff raised violations of ILO indicators. Def. Br. at 23. The Court does not need to determine *Bridgestone* is "on all fours" in this case. Kingtom argues that Customs' determination pursuant to 19 U.S.C. § 1307 is arbitrary and capricious and otherwise not in accordance with law because the evidence that Customs relied on does not demonstrate forced labor as that term is statutorily defined. Kingtom Br. at 22-30. Given that the vulnerabilities, threats, and intimidation that Kingtom's workers allegedly faced were unrelated to involuntariness pursuant to 19 U.S.C. § 1307, Kingtom cited *Bridgestone* for the proposition that the same definition of forced labor does not protect workers from "the harm a person would suffer if he leaves a job and is unable to earn a living elsewhere," and that the remedy for forced labor is not "better wages and working conditions" but the "freedom to go elsewhere." Kingtom Br. at 23 (citing *Bridgestone*, 492 F. Supp. 2d at 1013-18). The text of the statute and its legislative history express that if a worker "offer{s} himself voluntarily," then the merchandise he produces is not produced with forced labor or prohibited by 19 U.S.C. § 1307. Whether *Bridgestone* involved prohibited merchandise, incorrectly recognized low wages and working conditions as forced labor, or addressed alleged ILO indicators does not obviate the need for Customs to satisfy the express statutory requirement that involuntariness must be present for forced labor to exist under the statute.

That said, *Bridgestone* is analogous and corroborates Kingtom's argument because it dismissed claims that "the underpayment of wages and the fear of losing {the} job" constituted forced labor pursuant to the same definition at issue. Here, Defendant's argument rests on labor

issues similar to those alleged in *Bridgestone*. Def. Br. at 22-23. The court in *Bridgestone* found plaintiffs' claims could not "be equated with an employer's use of force or coercion to keep workers on the job," *Bridgestone*, 492 F. Supp. 2d at 1016-17, even though (a) the mandatory daily work took so long that it was "physically impossible for one adult without the unpaid help from children," (b) workers received only half the daily wage if they did not complete the mandatory daily work, (c) plaintiffs received no days off or holidays, and (d) the employer deducted fees and other charges from the workers' pay so that "they are left with virtually nothing at the end of a month," which are similar to Defendant's claims as to Kingtom. *Bridgestone*, 492 F. Supp. 2d at 994-95. Defendant argues that Kingtom's use of forced labor is evidenced by allegedly withheld wages (due to [

]) and excessive overtime (including [                          ]).

Def. Br. at 15, 23. Like in *Bridgestone*, neither prevents employees from consenting to work for Kingtom such that the work could be "involuntary" pursuant to 19 U.S.C. § 1307. *See* 71 CONG. REC. at 4490-91.

### ii.    The *Finding* Relies on Stale, Uncorroborated, and Contradicted Information

Kingtom argued that Customs relied on uncorroborated statements in worker interviews that lacked credibility and were not under oath or provided under the penalty of perjury. Kingtom Br. at 26. In response, Defendant makes the general claim that the record includes evidence from [

] without the underlying evidence providing any substantive support; and claims that Kingtom allegedly "fails to articulate" why the worker interviews would be unreliable or would not constitute substantial evidence. Def. Br. at 24 (citing CBP000039). Both arguments are unpersuasive.

18

Defendant insinuates that the [

] evidence Kingtom's employees were forced to work based merely on a statement in the Allegation Assessment that [

],

but the cited statement is nothing more than a conclusory summary that fails to demonstrate whether Kingtom's workers were employed involuntarily. Def. Br. at 23-24 (citing CBP00039). In its opening brief, Kingtom argued that the *Finding* is based "almost entirely" on worker interviews and noted that the Allegation Assessment used other evidence, such as the [

], to "expressly corroborate" *only* that the

[                                          ] unrelated to forced labor and irrelevant allegations as to Kingtom's imports. Kingtom Br. 26; CBP000056. As Kingtom explained, the [                                          ] issues, and

[                          ], is irrelevant to the issue presented in this case: whether Kingtom forced workers to labor involuntarily. Defendant has not pointed to any record evidence corroborating the specifics of workers' claims beyond general, conclusory statements.

Defendant nonetheless claims that the worker interviews [          ] constitute substantial evidence. Def. Br. at 24; Intervenor Br. at 6 (claiming that the interviews

[                          ]). However, as Kingtom argued, Customs did not account for the lack of credibility that the interviews possess by virtue of the fact that they were conducted *ex parte* and in secret without the penalty of perjury or corroborating evidence by an investigatory agency that could have sought evidence from Kingtom and chose not to do so without any explanation as to why in its determination. *See* Kingtom Br. at 26 (citing *Consol. Fibers v. United States*, 535 F. Supp. 2d 1345, 23 C.I.T. 24 (2008)). Whether the interview statements were *ex parte* or under

oath are factors that question "the rationality" of Customs' determination here.  *See Consol. Fibers*, 535 F. Supp. 2d at 1357, 23 C.I.T. at 38-39.  Defendant attempts to distinguish *Consol. Fibers, Inc.* on the immaterial grounds that it addressed one individual's statement whereas this case involves sixteen interviews.  Def. Br. at 24 (citing *Consol. Fibers*, 535 F. Supp. 2d 1345, 23 C.I.T. 24 (2008)).  But the fact that the interviews here were similarly *ex parte* and not under oath highlights the arbitrariness and capriciousness inherent in Customs' secret investigation, especially given that Customs offers no explanation as to whether it considered the apparent bias when weighing the evidence.  *See Linyi Chengen Import and Export Co. v. United States*, 391 F. Supp. 3d 1283, 1292 (Ct. Int'l Trade 2019) (noting agency action is arbitrary where the agency "failed to consider an important aspect of the problem"); *Micron Technologies, Inc. v. United States*, 893 F. Supp. 21, 30, 19 C.I.T. 829, 836 (1995) (finding Commerce's antidumping calculation methodology "was arbitrary" where Commerce did not request the information it needed from the respondent and did not notify the respondent of a methodology change).  Defendant is incorrect that the interviews **[                    ]** constitute substantial evidence as Customs failed to consider factors that detract from its determination.  *See Diamond Sawblades Mfrs. Coal. v. United States*, 986 F.3d 1351, 1362 (2021) (under substantial evidence review, noting the court considers "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence'") (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88, 71 St. Ct. 456 (1951)); 5 U.S.C. § 706 ("{T}he court shall review the whole record{.}").

In its opening brief, Kingtom argued that the simultaneous investigation by the Dominican government noted no evidence of forced labor, despite **[**

**]** unrelated to the voluntariness of worker's labor.  Kingtom Br. at 29-30.

Defendant argues in response that Customs determined the [

]. Def. Br. at 24-25; Intervenor Br. at 6-8 (similarly arguing that

Customs [                                                    ]). Defendant does not point to any

[                                                                          ]. The worker

interviews took place [                        ] and thus provide no evidence of the subsequent

circumstances. CBP000057. Neither the [                            ] nor the alleged [

]

demonstrate that any of the labor issues identified by the Dominican government—issues which

are not related to the involuntariness of the work—would [            ]. Prior to the *Finding*,

Kingtom had not been subject to any finding of forced labor and accordingly it should be

expected that the [                                    ] had not provided any evidence of

[            ] specific to a forced labor finding that did not exist. For the Dominican

government to permit Kingtom to reopen, Kingtom had to "comply with the law" and thus

Kingtom had to have [            ] any concerns that the Dominican government had identified

in its investigation as to payment of wages, overtime, or worker health and safety. CBP000020-

21. Therefore, the reopening by the Dominican government evidences [            ] of ILO

indicators that were identified by the workers before the completion of the investigation by the

Dominican government.

   In an effort to rehabilitate the stale evidence relied upon by Customs, *see* Kingtom Br. at

27-29, Defendant notes the Dominican government temporarily closed Kingtom again in late

July 2024. Def. Br. at 25; Intervenor Br. at 8 (also noting the July 2024 closure). However,

Kingtom was not closed due to any allegation of forced labor by the Dominican government or with any evidence that its workers were employed *involuntarily*, which would be required for forced labor to exist pursuant to 19 U.S.C. § 1307.  The cited articles discuss the closure of Kingtom and ten other companies for violations of health and safety regulations and the labor code due to non-descript issues related to wages and overtime.  CBP004275; CBP004283-84.  The articles do not claim that the 2024 investigation by the Dominican government identified any instances of involuntary work being forced on Kingtom's employees.  Accordingly, the articles evidence that no such involuntary work was forced on Kingtom's workers as the Dominican government identified no concerns in its investigation.  Additionally, the cited articles do not identify which of the labor issues are specific to Kingtom as opposed to the other ten companies that were also closed.  Therefore, it cannot be discerned from the record whether any of the alleged wage and overtime issues described in the 2024 articles occurred at Kingtom.

Moreover, neither the Allegation Assessment, nor Customs' other decision documents cite the closure in July 2024 as support for the *Finding*.  CBP000039-58; CBP004307-08.  Indeed, the closure took place on July 25, 2024, *after* Customs had made its recommendation to issue the *Finding* in the Allegation Assessment dated July 12, 2024.  CBP000039; ECF 33 at pdf page 4 (public record).  The Court should not accept Defendant's argument that the July 2024 closure supports the *Finding* because it is a "post hoc rationalization" not invoked by the agency in its decision.  *Itochu*, 163 F. Supp. 3d at 1337-38; *Chenery*, 318 U.S. at 460-61; *Burlington*, 371 U.S. at 168-169.

In sum, Defendant and Defendant-Intervenor point to no worker who tried to quit and could not do so as a result of the alleged ILO indicators.  Accordingly, Customs provides no evidence of workers who "do not offer themselves voluntarily" pursuant to 19 U.S.C. § 1307.

II.    **CONCLUSION AND RELIEF REQUESTED**

For the foregoing reasons, Kingtom respectfully requests that the Court grant its motion for judgment on the agency record and reject the arguments of Defendant and Defendant-Intervenor.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Jordan L. Fleischer
Edward J. Thomas III
Nicholas C. Duffey

**MORRIS, MANNING & MARTIN LLP**
1333 New Hampshire Avenue, N.W., Suite 800
Washington, D.C. 20036

*Counsel to Plaintiff Kingtom Aluminio S.R.L.*

23

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the Standard

Chambers Procedures of the U.S. Court of International Trade in that it contains 6,985 words

including text, footnotes, and headings and excluding the table of contents, table of authorities

and counsel's signature block, according to the word count function of Microsoft Word 2016

used to prepare this brief.

/s/ Brady W. Mills

Brady W. Mills

Dated:  June 30, 2025