Slip Op. 25-125

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **KINGTOM ALUMINIO S.R.L.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; U.S. DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO N. MAYORKAS** *in his official capacity as Secretary of the U.S. Department of Homeland Security* **AND TROY A. MILLER** *in his official capacity as the Acting Commissioner of U.S. Customs and Border Protection*, | Before: Timothy M. Reif, Judge |
| Defendants, | Court No. 24-00264 |
| and | |
| **ALUMINUM EXTRUDERS COUNCIL AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION,** | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Vacating and remanding the forced labor finding of U.S. Customs and Border Protection.]

Dated: September 23, 2025

Brady W. Mills, Donald B. Cameron, Jr., Julie C. Mendoza, R. Will Planert, Mary S. Hodgins, Jordan L. Fleischer, Edward J. Thomas III and Nicholas C. Duffey, Morris, Manning & Martin LLP, of Washington, D.C., for plaintiff Kingtom Aluminio S.R.L.

Christopher A. Berridge, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendants United States, U.S. Customs and Border Protection, U.S. Department of Homeland Security, Secretary Alejandro N. Mayorkas and Acting Commissioner Troy A. Miller. With him on the brief were Yaakov M. Roth, Acting Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney-in-Charge, International Trade Field Office and Aimee Lee, Assistant Director. Of counsel were Sabahat Chaudhary and Tamari J. Lagvilava, Office of the Chief Counsel, U.S. Customs and Border Protection, of Washington, D.C.

Robert E. DeFrancesco III, Alan H. Price, Laura El-Sabaawi, Elizabeth S. Lee, Enbar Toledano, Kimberly A. Reynolds and Paul A. Devamithran, Wiley Rein LLP, of Washington, D.C., for defendant-intervenors Aluminum Extruders Council and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union.

*  *  *

Reif, Judge: This action concerns the finding of U.S. Customs and Border Protection ("Customs") that Kingtom Aluminio S.R.L. ("plaintiff" or "Kingtom") engaged in forced labor practices pursuant to section 307 of the Tariff Act of 1930, as amended, 19 U.S.C § 1307.[1] Compl. ¶ 1, ECF No. 5; *Notice of Finding that Aluminum Extrusions and Profile Products and Derivatives Produced or Manufactured Wholly or in Part by Kingtom Aluminio S.R.L. With the Use of Convict, Forced or Indentured Labor Are Being, or Are Likely To Be, Imported Into the United States* (the "*Finding*"), 89 Fed. Reg. 96,265 (Dec. 4, 2024).

Plaintiff challenges the *Finding* in a motion for judgment on the agency record pursuant to U.S. Court of International Trade Rule 56.1. Specifically, plaintiff argues that the determination of Customs in the *Finding* is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Compl. ¶¶ 26-29; Pl. Mot. for J. on

---

[1] References to the U.S. Code are to the 2018 edition. Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code.

the Agency R. ("Pl. Br."), ECF No. 46; *see also* Pl.'s Reply Br. in Supp. of Mot. for J. on the Agency R., ECF No. 52.

The United States, the U.S. Department of Homeland Security and Customs (collectively, "defendants") as well as the Aluminum Extruders Council and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (collectively, "defendant-intervenors") oppose plaintiff's motion. Defs.' Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R. ("Defs. Br."), ECF No. 48; Def.-Intervenors' Resp. to Pl.'s Mot. for J. on the Agency R., ECF No. 50.

For the reasons discussed below, the court vacates the *Finding* and remands to Customs for further explanation or reconsideration consistent with this opinion.

## BACKGROUND

Plaintiff is a manufacturer and exporter of aluminum extrusions in the Dominican Republic. Compl. ¶ 3.

From August 30 to September 2, 2021, Customs conducted an on-site verification of plaintiff's facilities in the Dominican Republic as part of an investigation initiated pursuant to the Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517. Defs. Br. at 7; Pl. Br. at 3. Following the on-site verification, Customs initiated a forced labor investigation with respect to plaintiff's operations.[2] Defs. Br. at 9-10; Pl. Br. at 3-4.

Upon completion of its investigation, the Forced Labor Division ("FLD") of the Trade Remedy Law Enforcement Directorate ("TRLED") within Customs recommended

---

[2] In March 2022, defendant-intervenors filed with Customs a forced labor allegation against plaintiff. Pl. Br. at 3; Def. Br. at 9-10. However, plaintiff and defendants agree that that allegation "did not serve as the basis for the forced labor investigation that resulted in the *Finding*." Pl. Br. at 3; *see* Def. Br. at 8-10.

that Customs issue the *Finding* against plaintiff. Defs. Br. at 12; Pl. Br. at 4-5. FLD alleged that "there was sufficient evidence that forced labor was being used to manufacture Kingtom's aluminum extrusions and related products bound for the United States." Defs. Br. at 12.

On December 4, 2024, Customs published in the Federal Register a notification of Customs' forced labor findings with respect to plaintiff. *See Finding*, 89 Fed. Reg. 96,265. On December 23, 2024, plaintiff filed its complaint in the instant action. *See* Compl. On May 5, 2025, plaintiff filed a motion for judgment on the agency record. *See* Pl. Br.

## JURISDICTION AND LEGAL FRAMEWORK

This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(i) because 19 U.S.C § 1307 is a "law of the United States providing for . . . embargoes." 28 U.S.C. § 1581(i)(1)(C).

Actions falling within the Court's "residual" jurisdiction as provided under § 1581(i) are subject to the standard of review set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See Ninestar Corp. v. United States*, 48 CIT __, __, 687 F. Supp. 3d 1308, 1322 (2024). Pursuant to the APA, courts are required to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

It is well-established that:

> An agency acted in an arbitrary and capricious manner if it "entirely failed to consider an important aspect of the problem, offered an explanation for

its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Linyi Chengen Imp. and Exp. Co. v. United States*, 43 CIT __, __, 391 F. Supp. 3d 1283, 1292 (2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *Bio-Lab, Inc. v. United States*, 49 CIT __, __, 776 F. Supp. 3d 1315, 1323 (2025).

An agency will prevail if the court concludes that it "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). In reviewing that explanation, the court is required to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)). That said, "a court is not to substitute its judgment for that of the agency." *Id.*

It is well-established that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also Walls v. United States*, 582 F.3d 1358, 1367-68 (Fed. Cir. 2009). "The whole administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Invenergy Renewables LLC v. United States*, 44 CIT __, __, 476 F. Supp. 3d 1323, 1355 (2020) (quoting *Thompson v. U.S. Dep't of Lab.*, 855 F.2d 551, 555 (9th Cir. 1989)).

19 U.S.C. § 1307 provides that:

> All goods, wares, articles, and merchandise mined, produced, or manufactured wholly or in part in any foreign country by convict labor or/and forced labor or/and indentured labor under penal sanctions shall not be entitled to entry at any of the ports of the United States, and the importation thereof is hereby prohibited, and the Secretary of the Treasury is authorized and directed to prescribe such regulations as may be necessary for the enforcement of this provision.

The statute specifies that the term "forced labor" shall mean "all work or service which is exacted from any person under the menace of any penalty for its nonperformance and for which the worker does not offer himself voluntarily." *Id.*

The Secretary of the Treasury and Customs have promulgated regulations for the administration of the statute.[3] *See* 19 C.F.R. §§ 12.42-12.45. The regulations provide that:

> If any port director or other principal Customs officer has reason to believe that any class of merchandise that is being, or is likely to be, imported into the United States is being produced, whether by mining, manufacture, or other means, in any foreign locality with the use of convict labor, forced labor, or indentured labor under penal sanctions, . . . so as to come within the purview of [19 U.S.C. § 1307], he shall communicate his belief to the Commissioner of [Customs].

19 C.F.R. § 12.42(a).

Further, if the Commissioner of Customs

> finds at any time that information available reasonably but not conclusively indicates that merchandise within the purview of [§ 1307] is being, or is likely to be, imported, he will promptly advise all port directors accordingly and the port directors shall thereupon withhold release of any such merchandise

---

[3] The Homeland Security Act of 2002 transferred these and other functions from the Secretary of the Treasury to the Secretary of Homeland Security. *See* 6 U.S.C. § 203(1).

  pending instructions from the Commissioner as to whether the merchandise
  may be released otherwise than for exportation.

*Id.* § 12.42(e).

  If Customs determines later "that the merchandise is subject to" § 1307, then the Commissioner of Customs "will publish a finding to that effect in a weekly issue of the Customs Bulletin and in the Federal Register." *Id.* § 12.42(f). At that point, the relevant merchandise "shall not be entitled to entry at any of the ports of the United States, and the importation thereof is [t]hereby prohibited," 19 U.S.C. § 1307, "unless the importer establishes by satisfactory evidence that the merchandise was not mined, produced, or manufactured in any part with the use of a class of labor specified in the finding," 19 C.F.R. § 12.42(g). If the importer is unable to establish the lack of forced labor in the supply chain, then "the port director shall seize the merchandise for violation of 19 U.S.C. 1307 and commence forfeiture proceedings." *Id.* § 12.44(b).

## DISCUSSION

### I. Legal framework

  This Court has stated that an agency's "conclusory recitation of the statute without further explanation plainly fails the APA's arbitrary and capricious standard." *Ninestar*, 48 CIT at __, 687 F. Supp. 3d at 1328; *see also Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995) ("When an agency merely parrots the language of a statute without providing an account of how it reached its results, it has not adequately explained the basis for its decision.").

  Moreover, "[i]t is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the

action.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.* ("*Regents*"), 591 U.S. 1, 20 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)).  If the grounds are inadequate, "a court may remand for the agency to do one of two things."  *Id.*

"First, the agency can offer 'a fuller explanation of the agency's reasoning *at the time of the agency action*.'" *Id.* (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990)).  However, this first option has "important limitations."  *Id.* at 21.  The agency on remand is limited to its "original reasons" and the "explanation 'must be viewed critically' to ensure that the [original action] is not upheld on the basis of impermissible '*post hoc* rationalization.'"  *Id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).  "When an agency's initial explanation 'indicate[s] the determinative reason for the final action taken,' the agency may elaborate later on that reason (or reasons) but may not provide new ones."  *Id.* (alteration in original) (quoting *Camp*, 411 U.S. at 143)).

Second, "the agency can 'deal with the problem afresh' by taking *new* agency action."  *Id.* (quoting *SEC v. Chenery Corp.*, 322 U.S. 194, 201 (1947)).  "An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action."  *Id.*  The court may allow the agency to choose between the two options.  *See id.* at 20-21.

## II.　　Analysis

The court concludes that Customs did not explain adequately its determination in the *Finding*.

Plaintiff argues that the *Finding* "does not provide any evidentiary support, rationale, or factual basis for its conclusion that Kingtom's imports were produced in

whole or in part with the use of forced labor." Pl. Br. at 8. Plaintiff explains that "the Allegation Assessment is the only decisional document that expounds on the basis for the *Finding*" but notes that "Customs has completely redacted the other decisional documents . . . that may have explained the basis for the *Finding*[] from the public record." *Id.* at 9, n.5.

In response, defendants argue that "[w]hen taken as a whole, the record more than demonstrates that the *Finding* was supported by substantial evidence and was in accordance with [Customs'] statutory mandate to prevent goods made with forced labor from being imported into the United States." Defs. Br. at 15.

The *Finding* states that:

> Pursuant to 19 U.S.C. 1307 and 19 CFR 12.42(f), it is hereby determined that certain articles . . . that are produced or manufactured in whole or in part with the use of convict, forced, or indentured labor by Kingtom Aluminio S.R.L., are being, or are likely to be, imported into the United States. Based upon this determination, the port director may seize the covered merchandise for violation of 19 U.S.C. 1307 . . . unless the importer establishes by satisfactory evidence that the merchandise was not produced or manufactured in any part with the use of prohibited labor specified in this Finding.

*Finding*, 89 Fed. Reg. at 96,265.

The only support for the determination in the *Finding* is the statement that:

> Through its investigation, [Customs] has determined that there is sufficient information to support a Finding that Kingtom Aluminio S.R.L. is using convict, forced, or indentured labor in a factory in the Dominican Republic to produce or manufacture in whole or in part aluminum extrusions and profile products and derivatives, and that such products are being, or are likely to be, imported into the United States.

*Id.*

The *Finding* does not cite to documents in the administrative record, nor does it describe the circumstances of the investigation in any detail.  *See id.*  Instead, the *Finding* consists largely of a barebones recitation of the statute and Customs' regulations thereunder.  *See id.*

This Court's decision in *Ninestar* provides a helpful analogy to the instant case. Plaintiffs in *Ninestar* challenged the decision of the Forced Labor Enforcement Task Force ("FLETF") to place plaintiffs on a list (the "Entity List") that subjected them to embargo under the Uyghur Forced Labor Prevention Act ("UFLPA").  *See Ninestar*, 48 CIT __, 687 F. Supp. 3d 1308.  The decision of the FLETF to add an entity to the Entity List is published in the Federal Register and may be challenged under the APA.  *Id.* at __, __, 687 F. Supp. 3d at 1315, 1319.

The *Ninestar* Court noted that "[b]eyond reciting the statutory text, the FLETF does not include any further explanation for adding Ninestar to the Entity List."  *Id.* at __, 687 F. Supp. 3d at 1328.  The Court acknowledged that, in general, an agency's "conclusory recitation of the statute without further explanation plainly fails the APA's arbitrary and capricious standard."  *Id.*

The Court determined that if the reasons "easily discerned" from the listing decision "were the only basis . . . that was ever provided to Ninestar, a remand for the FLETF to 'elaborate later on that reason' but to 'not provide new ones' may have been appropriate."  *Id.* at __, 687 F. Supp. 3d at 1329. (quoting *Regents*, 591 U.S. at 21). However, "[a]s part of its litigation before the CIT, the FLETF docketed a Public Administrative Record," the first two pages of which contained "a memorandum from DHS explaining that the Listing Decision [was] based on an allegation from an

informant" as well as documents from the Chinese government, Ninestar and various media reports. *Id.* Reading the listing decision alongside the internal memorandum, the Court concluded that the FLETF explained its decision adequately because "[t]he connection between the facts found and each element [of the UFLPA listing] is either expressly discussed in, or reasonably discerned from, the Public Administrative Record." *Id.* at __, 687 F. Supp. 3d at 1330.

In the instant case, defendants filed a heavily redacted Public Administrative Record ("PAR"). *See* ECF No. 33. The Confidential Administrative Record that defendants filed under seal contains the totality of the evidence on which Customs relied in making its forced labor determination. *See* ECF No. 34. The PAR contains several internal memoranda that discuss the *Finding*, but none of them comes close to matching the level of detail of the internal memorandum that passed muster in *Ninestar*.

The most detailed memorandum in the PAR, an internal communication between the executive director of TRLED to the Executive Assistant Commissioner of the Office of Trade, provides only a summary of TRLED's *process* — with no substantive information — coupled with a conclusory sentence:

> The FLD gathered information, conducted analysis, and reviewed documents and reports from partner government agencies, civil society organizations, and news organizations. Based on its review, TRLED determined there is probable cause indicating that Kingtom Aluminio S.R.L. uses forced labor within the purview of 19 U.S.C § 1307 to produce aluminum extrusions and profile products in the Dominican Republic.

PAR, Doc. No. 12; *see also id.*, Doc. No. 16.

That memorandum and the others submitted by TRLED are readily distinguishable from the substantive statements in the *Ninestar* memorandum. That

memorandum alleged that "Ninestar has worked with the government of the Xinjiang Uyghur Autonomous Region through a third-party agency to recruit, transport, transfer, and receive Uyghur laborers out of the [region] to work in its manufacturing facilities" and that Ninestar's participation in "poverty alleviation programs transferring laborers from remote and underdeveloped areas to its facilities . . . reasonably indicates that these workers . . . were coerced to enter state-sponsored labor transfer programs and are unable to leave voluntarily." See Administrative Record at AR000001, Ninestar, 1:23-00182 (CIT 2024), ECF No. 24-1 (internal quotation marks omitted). By providing a brief description of the specific facts on which the forced labor allegations were based, the Ninestar memorandum avoided the kinds of conclusory, unsupported allegations that characterize the PAR memoranda here. See PAR, Doc. No. 12; see also id., Doc. No. 16.

The aforementioned allegation assessment is insufficient as well. The assessment describes the labor conditions at plaintiff's facility during the EAPA on-site verification. See PAR, Doc. No. 8.6 at 15-16. However, because the allegation assessment predates the forced labor investigation itself and does not allege specifically the existence of forced labor, the court is unable to "reasonably discern[]" the connection between the factual allegations in the allegation assessment and the determination in the Finding. See id.; Ninestar, 48 CIT at __, 687 F. Supp. 3d at 1330.

For these reasons, the court concludes that the Finding is arbitrary and capricious. Customs in the PAR and the Finding failed to "articulate a satisfactory explanation for its action" based on a "rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43.

The court vacates the *Finding* and remands for Customs to explain further or reconsider its determination that Kingtom's imports "are produced or manufactured in whole or in part with the use of convict, forced, or indentured labor" and "are being, or are likely to be, imported into the United States." *Finding*, 89 Fed. Reg. at 96,265. The court reserves examination of plaintiff's other objections to the *Finding* pending the results of the remand.

## CONCLUSION

In conclusion, the court vacates and remands Customs' *Finding*. For the reasons provided above, it is hereby

**ORDERED** that plaintiff's Rule 56.1 Motion for Judgment on the Agency Record, ECF No. 46, is granted in part; it is further

**ORDERED** that the *Finding* is vacated and remanded for further explanation or reconsideration consistent with this opinion; it is further

**ORDERED** that Customs shall file with the court its remand redetermination within 90 days following the date of this Opinion and Order; it is further

**ORDERED** that plaintiff shall have 30 days from the filing of the remand redetermination to submit comments to the court; and it is further

**ORDERED** that should the plaintiff submit comments, defendants and defendant-intervenors shall have 30 days from the date of filing of the last comment to submit their responses.

**SO ORDERED.**

/s/      Timothy M. Reif
Timothy M. Reif, Judge

Dated: September 23, 2025
New York, New York