# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L.,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA;<br>DEPARTMENT OF HOMELAND SECURITY;<br>U.S. CUSTOMS AND BORDER<br>PROTECTION;<br>KRISTI NOEM, Secretary,<br>U.S. Department of Homeland Security;<br>RODNEY S. SCOTT, Commissioner, U.S.<br>Customs and Border Protection,<br><br>    Defendants<br><br>  and<br><br>ALUMINUM EXTRUDERS COUNCIL;<br>UNITED STEEL, PAPER AND FORESTRY,<br>RUBBER, AND MANUFACTURING AND<br>SERVICE WORKERS INTERNATIONAL<br>UNION,<br><br>    Defendant-Intervenors. | Court No. 24-00264 |

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION FOR A STAY

    Pursuant to the Court's October 3, 2025, Order, ECF No. 64, Plaintiff Kingtom Aluminio

S.R.L. ("Kingtom" or "Plaintiff") hereby responds to the Defendant's Motion for a Stay in Light

of Lapse in Appropriations, ECF No. 63 ("Motion"). For the foregoing reasons, Kingtom

opposes the Motion and respectfully requests that the Court deny it.

I. **BACKGROUND**

On September 23, 2025, the Court vacated U.S. Customs and Border Protection's ("CBP") *Finding* that Kingtom's imports are made with forced labor and remanded for further consideration. *See* Opinion and Order at 13, *Kingtom Aluminio S.R.L. v. United States*, No. 24-cv-00264, Slip Op. No. 25-125 (Ct. Int'l Trade Sept. 23, 2025), ECF No. 61 (vacating and remanding *Notice of Finding that Aluminum Extrusion and Profile Products and Derivatives Produced or Manufactured Wholly or in Part by Kingtom Aluminio S.R.L. With the Use of Convict, Forced or Indentured Labor Are Being or Are Likely To Be, Imported Into the United States*, 89 Fed. Reg. 96,265 (Dec. 4, 2024) (the "*Finding*")). The Court ordered Defendant to file its remand redetermination within ninety days of the Court's Opinion and Order, which would be by Monday, December 22, 2025. *Id.*

On September 23, 2025, the day of the Court's Opinion, counsel for Kingtom contacted Defendant via email seeking to confirm that Defendant was intending to implement the Court's vacatur of the *Finding* and communicate this to the various ports so that Kingtom could resume shipments to the United States without fear of having its shipments seized. Rather than scheduling a call to discuss, counsel for Defendant instead e-mailed counsel for Kingtom on October 1, 2025, asking for consent to stay the litigation during the lapse in government appropriations. Counsel did not state Defendant was also seeking a stay so that it could move to stay the Court's vacatur of the *Finding*. In response, counsel for Kingtom indicated that it could only consent to the stay if counsel would provide assurances that Defendant intended to implement the vacatur and discontinue the embargo of Kingtom's imports unless and until any remand redetermination or new relief was affirmed by the Court. Counsel for Kingtom also again offered to discuss by telephone. Defendant did not respond and instead filed its Motion whereby it simply noted that Plaintiff Kingtom did not consent.

2

In the Motion, Defendant avers that a stay is necessary so it can file a motion to stay the vacatur of the *Finding* "once appropriations are restored." Motion at 1-2. As support, Defendant alleges that "{a}bsent an appropriation, Department of Justice attorneys and employees of the defendant are prohibited from working, even on a voluntary basis, except in very limited circumstances, including "emergencies involving the safety of human life or the protection of property." 31 U.S.C. § 1342." *Id.* at 2. Although not stated expressly in the motion, Defendant appears to be asking the Court for an indefinite stay of the Court's vacatur of the *Finding* until government funding is restored and Defendant can file a separate motion to stay the vacatur. This understanding is based on Defendant's statements in the Motion about maintaining the status quo[1] and its claim that vacating the *Finding* may result in entry of goods produced with forced labor. *See* Motion at 2. Based on this understanding of Defendant's position, Kingtom did not consent to the Motion and now formally opposes it.

## II.  THE MOTION SHOULD BE DENIED

Whether to grant a stay rests with the sound discretion of the Court as "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants." *See Fedmet Res. Corp. v. United States*, No. 14-cv-00297-TCS, 2014 WL 6879126 at *6 (Ct. Int'l Trade Dec. 8, 2014) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163 (1936)). "Where a stay might damage another party, the moving party 'must make out a clear case of hardship or inequity in being required to go forward.'" *Id.* at 6-7 (citing the same); *Nexteel Co. v. United States*, 556 F. Supp. 3d 1376 (Ct. Int'l Trade 2022) (same). Additionally, the Court

---

[1] Contrary to Defendant's claim, the status quo is that the *Finding* has been found unlawful and vacated by this Court. Defendant's motion requesting that the Court indefinitely stay the Court's order of vacatur would *alter* the status quo.

3

should consider that "{r}emand with vacatur is the default remedy for unlawful agency action under the APA, which states that courts should 'hold unlawful and <u>set aside</u> agency actions, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *See Ninestar Corp. v. United States*, 687 F. Supp.3d 1308, 1336-37 n.25 (citing 5 U.S.C. § 706(2) (emphasis added by court)).  As discussed, Kingtom understands that granting the Motion would, at least temporarily, deprive Kingtom of the hard-fought default remedy it has obtained from the Court's vacatur of the *Finding*.  If that understanding is correct, then the Motion should be denied.

### A. The Stay Would Damage Kingtom

A stay would damage Kingtom by delaying the vacatur of the *Finding* and final resolution of this appeal.  From the time the *Finding* was published on December 4, 2024, Kingtom has endured extraordinary hardship, including the loss of business opportunity, goodwill, and reputation with existing and prospective customers in the United States.  CBP's sudden embargo of Kingtom's imports, without prior notice to Kingtom, has prevented Kingtom from performing on its sales to U.S. customers for almost a year.  Because virtually all of Kingtom's customers are in the United States, the embargo has resulted in Kingtom shuttering its operations, significantly downsizing its workforce, and incurring idle costs during the pendency of this action.  Revenue is the life blood of a business, and the embargo has prevented Kingtom from earning sufficient revenue to offset its costs.

Because its very existence is in jeopardy, Kingtom has done everything in its control to resolve this matter as quickly as possible.  This includes filing a motion to expedite, participating in court ordered mediation to try and resolve the dispute as expeditiously as possible, filing its briefs on an accelerated schedule, and even waiving oral argument.  *See* Mot. to Expedite, ECF No. 22; Order of Referral to Mediation, ECF No. 30, Proposed Briefing Schedule, ECF No. 39;

Joint Resp. to Court Order, ECF No. 58. A stay of this proceeding when Defendant has now made plain that it seeks to have the vacatur stayed, would stall Kingtom's and the Court's efforts to expedite this proceeding. It would also effectively deny Kingtom the relief it is entitled to at this point in the litigation.

### B. Defendant Has Made No Showing of Clear Hardship if the Stay is Denied

Given the continuing damage a stay would cause Kingtom, Defendant must "make out a clear case of hardship or inequity in being required to go forward." *See Fedmet Res. Corp.,* 2014 WL 6879126 at *6-7. Defendant has failed to do so. The only justification that Defendant provides for the stay is that appropriations have lapsed and that the attorneys and employees of Defendant are prohibited from working except in limited circumstances. However, the lapse of appropriations does not preclude Defendant from litigating matters on which the court denies a stay; the lapse in appropriations thus is not, by itself, justification for the requested stay. In this regard, the U.S. Department of Justice has explained in its Fiscal Year 2026 Contingency Plan that it will continue litigating ongoing matters if the court determines that it is necessary despite the lapse in appropriations. The Contingency Plan states that "during a lapse in appropriations, the Department will only continue the following categories of activities:… those for which there is an express authority to continue during an appropriations lapse." U.S. Department of Justice, FY 2026 Contingency Plan at 1 (Sept. 29, 2025) (available at https://www.justice.gov/jmd/media/ 1377216/dl) (last visited Oct. 3, 2025).

The Contingency Plan explains that the denial of its request for a stay constitutes express authority to continue operations in this matter:

> With respect to litigation, the Department's plan assumes that the Judicial Branch will continue to operate, though possibly at a reduced level, through the lapse. Therefore:…
>
> Civil litigation will be curtailed or postponed to the extent that this can be done without compromising to a significant degree the safety of human life or the

>   protection of property. Litigators will approach the courts and request that active cases, except for those in which a delay would compromise to a significant degree the safety of human life or the protection of property, be postponed until funding is available. *If a court denies such a request and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue.* The Department will limit its civil litigation staffing to the minimum level needed to comply with the court's order and to protect life and property.

*Id.* at 3.  Accordingly, Defendant has not made a "clear case of hardship or inequity" through its reliance on the appropriations lapse or inability of its attorneys and employees to work.  The Court can, within its discretion, provide legal authorization for Defendant's attorneys to be excepted for the limited purpose of filing their motion to stay the vacatur in this matter.

Although Defendant had no control over the lapse in appropriations, Defendant did have the ability to press this issue previously and failed to do so.  The relief Kingtom sought in its Rule 56.1 brief was to have the finding set aside as per the APA default remedy for unlawful agency action.  In its response brief Defendant never opposed that remedy or otherwise requested that if the Court ruled in Kingtom's favor any remand be made without vacatur.  Additionally, the Court's opinion was released on September 23, 2025, and Defendant waited almost two weeks to file its Motion where it indicated, for the first time, that it was seeking to have the default remedy of vacatur stayed during the remand proceeding.  Defendant's failure to press this issue previously further undercuts any clear hardship on Defendant if the stay is denied.  Moreover, the Motion offers no grounds in support of staying the vacatur other than the lapse in appropriations.  Although nearly two weeks passed between the *Finding* and the lapse in appropriations, Defendant fails to offer any substantive arguments why a stay is appropriate in this case, nor does it make any showing why it requires additional time to identify such grounds.

In sum, based on Kingtom's understanding that Defendant is effectively asking the Court to stay the case and the vacatur of the *Finding*, Kingtom asks the Court to deny the Motion.  The remand redetermination is not due until December 22, 2025, and thus Defendant has ample time

to file any motion to stay the vacatur as well as its remand redetermination once the appropriations are reauthorized. If the lapse in appropriations drags on for an extended period, Kingtom would be willing to consent to an extension of time for Defendant to file its remand redetermination <u>so long as it has no impact on the legal effect of the Court's vacatur of the Finding</u>. But at this juncture Defendant has not shown any clear case of hardship if the stay is denied and the status quo that flows from the Court's opinion and vacatur of the *Finding* is maintained.

### III. CONCLUSION

Based on the foregoing, Kingtom respectfully requests that the Court deny the Motion and grant any other relief that the Court deems just and proper.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Jordan L. Fleischer
Nicholas C. Duffey

**MORRIS, MANNING & MARTIN, LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Plaintiff Kingtom Aluminio S.R.L.*

October 6, 2025