UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; RODNEY SCOTT, Commissioner, U.S. Customs and Border Protection, <br><br> Defendants, <br><br> and <br><br> ALUMINUM EXTRUDERS COUNCIL; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, <br><br> Defendant-Intervenors. | Court No. 24-00264 |

## **ORDER**

On consideration of defendants' motion for reconsideration pursuant to USCIT Rule 54(b); and upon consideration of other papers and proceedings had herein; it is hereby

ORDERED that defendants' motion be, and hereby is, granted, and it is further

ORDERED that the Finding is no longer vacated, and it is further

ORDERED that the Finding remains in effect until a final and conclusive judgment has been

rendered in this case, after the resolution of any appeals.

_____
JUDGE

Dated: New York, New York
      This _____ day of October, 2025

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L., | |
| Plaintiff, | |
| v. | Court No. 24-00264 |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; RODNEY SCOTT, Commissioner, U.S. Customs and Border Protection, | |
| Defendants, | PUBLIC VERSION |
| and | |
| ALUMINUM EXTRUDERS COUNCIL; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, | |
| Defendant-Intervenors. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

MONICA P. TRIANA
Senior Trial Counsel
U.S. Dept. of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(212) 264-9240

Dated: October 23, 2025                    *Attorneys for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 2

BACKGROUND ................................................................................................................ 3

DISCUSSION .................................................................................................................... 8

    I.      The Legal Standard ............................................................................................... 8

    II.     The Court Should Reconsider Its Decision To Vacate The *Finding* Of Forced
           Labor ..................................................................................................................... 9

     A.  The Forced Labor Investigation Culminated In The Allegation Assessment ............. 10

     B.  Application Of The Legal Standard Demonstrates That The *Finding* Should
        Remain In Force During Remand Proceedings And Throughout The Case ................ 11

        1.  There Is Ample And Probative Evidence On The Record To Support The
            *Finding* ........................................................................................................... 12

        2.  The Finding Should Remain In Place To Uphold Forced Labor Priorities And
            Avoid Irreversible Consequences Associated With The Import Of Goods Made
            With Forced Labor ........................................................................................... 14

CONCLUSION ................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.L. Pharma, Inc. v. Shalala*,
  62 F.3d 1484 (D.C. Cir. 1995) ........................................................................... 11

*Cobell v. Norton*,
  355 F.Supp.2d 531 (D.D.C. 2005)
  *aff'd*, 920 F.3d 1356 (Fed. Cir. 2019) ........................................................... 8, 9

*Eregli Demir Ve Celik Fabrikalari T.A.S. v. United States Int'l Trade Comm'n*,
  639 F. Supp. 3d 1245 (Ct. Int'l Trade 2023) ...................................................... 8

*Ford Motor Co. v. United States*,
  30 CIT 1587 (2006) ............................................................................................ 8

*Irwin Indus. Tool Co. v. United States*,
  269 F. Supp. 3d 1294 (Ct. Int'l Trade 2017) ...................................................... 8

*Keystone Auto. Operations, Inc. v. United States*,
  781 F. Supp. 3d 1362 (Ct. Int'l Trade 2025) ...................................................... 8

*Kingtom Aluminio S.R.L. v. United States et al.*,
  Slip. Op. 25-125 (Ct. Int'l Trade Sept. 23, 2025) ...................................... *passim*

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans*,
  *Affs.*, 260 F.3d 1365 (Fed. Cir. 2001) .................................................. 11, 12, 14, 15

*NEXTEEL Co. v. United States*,
  389 F. Supp. 3d 1343 (Ct. Int'l Trade 2019) ...................................................... 8

*Ninestar Corp. v. United States*,
  687 F. Supp. 3d 1308 (Ct. Int'l Trade 2024) ...................................... 11, 12, 13, 14

*North Carolina v. EPA*,
  550 F.3d 1176 (D.C. Cir. 2008) ................................................................... 11, 16

*Perry Chem. Corp. v. United States*,
  415 F. Supp. 3d 1260 (Ct. Int'l Trade 2019) ...................................................... 8

*Singh v. George Washington University*,
  383 F. Supp. 2d 99 (D.D.C. 2005) ................................................................. 8, 9

**Statutes**

19 U.S.C. § 1307 .......................................................................................................*passim*

19 U.S.C. § 1517 ................................................................................................................ 3

Uyghur Forced Labor Protection Act, P.L. 117-78, 135 Stat. 1325 (Dec. 23, 2021) ................. 12

**Rules**

USCIT Rule 54 ............................................................................................................... 1, 8

USCIT Rule 59 ................................................................................................................... 8

USCIT Rule 60 ................................................................................................................... 8

**Regulations**

19 C.F.R. § 12.42 ............................................................................................................... 3

19 C.F.R. § 12.43 ............................................................................................................. 15

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L., | |
| Plaintiff, | |
| v. | Court No. 24-00264 |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; RODNEY SCOTT, Commissioner, U.S. Customs and Border Protection, | PUBLIC VERSION |
| Defendants, | |
| and | |
| ALUMINUM EXTRUDERS COUNCIL; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, | |
| Defendant-Intervenors. | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION

Defendants respectfully move this Court pursuant to Rule 54(b) of the Rules of the

United States Court of International Trade (USCIT), to reconsider its decision in *Kingtom*

*Aluminio S.R.L. v. United States et al.*, Slip Op. 25-125 (Ct. Int'l Trade Sept. 23, 2025), to vacate

the *Finding* issued by U.S. Customs and Border Protection (CBP).[1]  As discussed below, we submit that CBP's forced labor *Finding* should remain in effect during the remand proceedings and the pendency of this case until final resolution.

## INTRODUCTION

Kingtom Aluminio S.R.L. (Kingtom) challenged CBP's finding that it was importing, or likely to import, into the United States aluminum extrusions, profile products and derivatives, that were made, in whole or in part, with forced labor in violation of 19 U.S.C. § 1307.  *See Notice of Finding That Aluminum Extrusions and Profile Products and Derivatives Produced or Manufactured Wholly or in Part by Kingtom Aluminio S.R.L. With the Use of Convict, Forced or Indentured Labor Are Being, or Are Likely To Be, Imported Into the United States*, 89 Fed. Reg. 96,265 (Dec. 4, 2024) (the *Finding*).  In its decision following Kingtom's motion for judgment on the agency record, the Court determined that CBP, in the public administrative record and the *Finding*, did not adequately explain its determination, and ordered, among other things, that the *Finding* is "vacated and remanded for further explanation or reconsideration consistent with this opinion."  Decision at 12-13.

CBP's forced labor *Finding* is currently on remand, and CBP is working to further publicly explain its determination.  We respectfully move for reconsideration of the Court's decision to vacate the *Finding* during the remand and until the final judgment in this litigation. Vacating the *Finding*, particularly where there is ample evidence in the record to support it, will result in the entry of goods produced by forced labor, contrary to Congressional intent and CBP's mandate under 19 U.S.C. § 1307.  Once released into the commerce of the United States, those

---

[1] Although this matter is currently stayed, ECF No. 66, the Court noted, in its order, that "The vacatur ordered by this court (ECF No. 61) is undisturbed by the stay."

forced-labor-made goods will be used and irretrievable. Indeed, there is a strong public policy, codified in section 1307, against the importation of such goods that weighs in favor of keeping the *Finding* in place during the course of this action.

## BACKGROUND

On September 27, 2021, CBP's Forced Labor Division (FLD) received a referral from CBP's Enforcement Operations Division (EOD) pursuant to 19 C.F.R. § 12.42(a) that EOD had reason to believe that Kingtom Aluminio S.R.L. was producing merchandise in the Dominican Republic that is being, or is likely to be, imported into the United States in violation of 19 U.S.C. § 1307. C.R. CBP 000066-70.[2] The referral was found to comply with CBP's regulatory requirements, and on the same day, FLD initiated an investigation pursuant to 19 C.F.R. § 12.42(d).

The referral included some of the observations indicative of forced labor that were later documented in EOD's October 28, 2021 EAPA on-site verification report. C.R. CBP 000066-70; C.R. CBP 000095-132; P.R. CBP 000096-133. In addition, on March 3, 2022, defendant-intervenors, Aluminum Extruders Council (AEC) and the United Steel Workers (USW), submitted an allegation of forced labor against Kingtom highlighting many of the same concerns documented by the EAPA site verification team in its report, which they supplemented on May 20, 2022. P.R. CBP 000154-166; P.R. CBP 002069-2090.

Following receipt of the forced labor referral (and subsequent to the completion of the on-site verification report of the EAPA investigation), FLD conducted an investigation into the

---

[2] The forced labor investigation, which resulted in the *Finding* at issue here, was initiated, first, based on facts which appeared to show forced labor concerns, gathered during an investigation by CBP, conducted under the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517.

allegations of forced labor against Kingtom, which culminated in the Forced Labor Assessment. C.R. CBP 000038-58. As part of that investigation, between May 16-19, 2022, U.S. Government (USG) officials conducted interviews of 16 then-current and former Kingtom workers (including nationals of the Dominican Republic and immigrants from Haiti without status and/or work authorization).[3] In addition, record evidence included photographs relating to and resulting from Kingtom's labor practices,[4] communication between USG officials and Kingtom's workers,[5] statements made by the government of the Dominican Republic about Kingtom's treatment of its workers, including labor law decisions adverse to Kingtom by the Supreme Court of Justice, Dominican Republic,[6] nongovernmental organization data,[7] and public source media reports on the Dominican Republic's labor laws and detailing Kingtom's labor practices, including closures of Kingtom by the Dominican Ministry of Labor (DRMOL).[8]

The interviews of Kingtom workers took place while Kingtom's facilities were temporarily closed by the Dominican government. C.R. CBP 000041-42; C.R. CBP 000047-58; P.R. CBP 000028-30; P.R. CBP 000218-221. As noted in our previous submissions, the

---

[3] Transcripts of Kingtom worker interviews can be found in the confidential record: C.R. CBP 000292-361; C.R. CBP 000364-475; C.R. CBP 000482-609; C.R. CBP 000616-618; C.R. CBP 000619-718; C.R. CBP 000725-822; C.R. CBP 000825-935; C.R. CBP 000940-1007; C.R. CBP 001012-1052; C.R. CBP 001055-1108; C.R. CBP 001140-001251; C.R. CBP 001774-1875; C.R. CBP 001880-1971; C.R. CBP 001980-2065; C.R. CBP 002066-2067.

[4] *See e.g.,* C.R. CBP 001122-27; C.R. CBP 000476-77; C.R. CBP 000171-172; C.R. CBP 000173-174; C.R. CBP 000175-176; C.R. CBP 000177-178; C.R. CBP 001637-1638; P.R. CBP 001638-1639; C.R. CBP 001639-1640; P.R. CBP 001640-1641.

[5] *See e.g.,* C.R. CBP 000071-84.

[6] C.R. CBP 000088-95; C.R. CBP 000134-149.

[7] P.R. CBP 002098.

[8] P.R. CBP 00001-8; P.R. CBP 000009-11; P.R. CBP 000012-15; P.R. CBP 000016-27; P.R. CBP 000028-32; P.R. CBP 000033-36; P.R. CBP 00218-221; P.R. CBP 000150-153; P.R. CBP 002081-2085; P.R. CBP 004274-4281; P.R. CBP 004282-4294.

Dominican government forced a closure of Kingtom's facilities on two separate occasions: for several weeks in 2022, P.R. CBP 000012-14; P.R. CBP 000218-221, and again in 2024, both times due to unsafe working conditions, excessive overtime and wage issues.  P.R. CBP 004274-4281; P.R. CBP 004282-4294.  These closures are indicative of, and provide further support for, ongoing labor concerns.

      The 2022 interviews conducted by USG officials during the forced labor investigation confirmed the presence of seven of the International Labour Organization's (ILO) forced labor indicators (further described below) at Kingtom's factory: abuse of vulnerability, deception, restriction of movement, physical and sexual violence, withholding of wages, intimidation and threats, and excessive overtime.  C.R. CBP 000047-56; C.R. CBP 000221-226 (Abuse of Vulnerability); C.R. CBP 000258-264 (Deception); C.R. CBP 000265-267 (Excessive Overtime); C.R. CBP 000268-271 (Physical and Sexual Violence); C.R. CBP 000272-277 (Restriction of Movement); C.R. CBP 000278-283 (Threats and Intimidation); C.R. CBP 000284-289 (Withholding of Wages).  Indeed, the interviews revealed, among other things, evidence of violence, threats, intimidation, and wage payment issues – all of which are indicative of forced labor.  *Id.*

      During the COVID-19 pandemic, for example, Kingtom required workers to remain at the factory for a period of two to more than seven months, without being allowed to go home. C.R. CBP 000050; C.R. CBP 000274.  Apart from the conditions both during and after the COVID-19 pandemic, the interviews revealed that workers were subject to disparate treatment depending on their nationality, and often had their wages withheld.  C.R. CBP 000047-48. Kingtom took advantage of the worker vulnerabilities, including poverty, immigration status, and language barriers.  *Id.*; C.R. CBP 000221-226.  Haitian workers were reportedly treated

worse than their Dominican colleagues due to their immigration status.  *Id.*  Kingtom used the nationality and legal status of workers as leverage to deter those unlawfully residing in the Dominican Republic from resisting orders or reporting mistreatment.  *Id.*  If Haitian workers tried to leave, they would be threatened; they were told that they could be fired without full payment of wages, fined, and suffered physical or verbal abuse.  *Id.*  Further, Kingtom would target Haitian workers with physical abuse because, according to the interviewed workers, the Haitian workers' lack of knowledge of the law and vulnerable immigration status made it unlikely that Kingtom would face any repercussions.  *Id.*

Deception of the workers was likewise apparent.  For example, based on the 2022 worker interviews, workers were not provided with the salary or the pay raises promised.  And, although promised leave based on company policy, both Dominican and Haitian workers were not allowed to take the leave.  C.R. CBP 000048; C.R. CBP 000258-264.

Wages were also often withheld.  C.R. CBP 000052-53; C.R. CBP 000284-289.  If workers took a day off, their wages for the day were withheld and a fine was applied.  C.R. CBP 000053.  Healthcare expenses were deducted from the workers' wages, but healthcare was not provided.  C.R. CBP 000052; C.R. CBP 000286.  Similarly, there were often unexplained deductions to workers' pay.  C.R. CBP 000052.  Kingtom imposed significant monetary fines on workers for minor infractions as a mechanism to withhold wages from workers' paychecks every pay period.  C.R. CBP 000052-53; C.R. CBP 000285-289.

Additionally, workers were required to work excessive overtime hours, often working 12 hours per day every day of the week.  C.R. CBP 000055-56; C.R. CBP 000266-67.  As a result of the mandatory overtime accompanied by the threatened withholding of wages, workers were forced to work without pay.  C.R. CBP 000055.

Further, workers were subjected to physical abuse in the form of reported beatings by Kingtom leadership in which workers were unable to defend themselves for fear of reprisal. C.R. CBP 000050-51; C.R. CBP 000268-271.  Workers reported being struck both by a person's hands and with ███████████ by Kingtom management.  *Id.*  One worker even reported being abused with a ████████████████  C.R. CBP 000269.

Finally, the workers were restricted from leaving.  C.R. CBP 000049-50; C.R. CBP 000272-277.  The workers reported that there were armed guards stationed at the exits of the Kingtom facilities and that workers were not allowed to leave until the shifts were complete. C.R. CBP 000050; C.R. CBP 000273.  As one worker succinctly put it, ████████████ ████████████  C.R. CBP 000054; C.R. CBP 001813.

Notably, there was no evidence of Kingtom's remediation of the forced labor concerns identified during the 2022 interviews.  As stated above, Kingtom's facilities closed due to labor issues in 2022, and for the second time in 2024, due to unsafe working conditions, excessive overtime and wage issues.  P.R. CBP 004274-4281 (Diario Libre, "Ministry of Labor Paralyzes 11 Companies {of which Kingtom is the first listed company} Due to 'Imminent Danger' For Workers," July 25, 2024); P.R. CBP 004282-4294 (Acento, "A Chinese Company Closed For Dangerous Work and Labor Violations Had Been Closed in 2022," July 26, 2024).  Public media sources documented these closures.  *Id.*  Specifically, public documents cite to inspections from the Dominican Ministry of Labor in July of 2024, which resulted in 102 infractions of the Occupational Health and Safety Violations and 51 violations of the labor code. *Id.*  This strongly suggested ongoing labor concerns at the Kingtom facility.

Based upon the extensive evidence developed during the forced labor investigation, a *Finding* was issued pursuant to 19 U.S.C. § 1307 and the forced labor regulations.

## DISCUSSION

### I.    The Legal Standard

Under Rule 54(b)[9] a court may "revise{.}" or reconsider "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  USCIT R. 54(b).  The court has the discretion to grant a motion to reconsider under Rule 54(b) "as justice requires," meaning when "reconsideration is necessary under the relevant circumstances."  *Irwin Indus. Tool Co. v. United States*, 269 F. Supp. 3d 1294, 1300-01 (Ct. Int'l Trade 2017) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005)), *aff'd*, 920 F.3d 1356 (Fed. Cir. 2019).

The grounds for reconsideration include "an intervening change in the controlling law, the availability of new evidence, the need to correct a clear factual or legal error, or the need to prevent manifest injustice."  *Keystone Auto. Operations, Inc. v. United States*, 781 F. Supp. 3d 1362, 1366 (Ct. Int'l Trade 2025) (quoting *Ford Motor Co. v. United States*, 30 CIT 1587, 1588 (2006)).  The court may also consider whether it "previously 'patently' misunderstood the parties{.}" *Irwin Indus. Tool Co.*, 269 F. Supp. 3d at 1301; *see also Singh v. George Washington University*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) ("Errors of apprehension {also a

---

[9] We move under Rule 54(b), as it applies in situations where there is a non-final judgment or an interlocutory order.  We recognize that Rules 59 and 60 allow for reconsideration of final judgments or orders and have similar standards analogous to Rule 54(b).  *Eregli Demir Ve Celik Fabrikalari T.A.S. v. United States Int'l Trade Comm'n*, 639 F. Supp. 3d 1245, 1251–52 (Ct. Int'l Trade 2023) (Rule 54(b) applies in reconsideration of interlocutory judgments); *Perry Chem. Corp. v. United States*, 415 F. Supp. 3d 1260, 1265–66 (Ct. Int'l Trade 2019) (Rule 60 applies to final orders); *NEXTEEL Co., Ltd. v. United States*, 389 F. Supp. 3d 1343, 1347–48 (Ct. Int'l Trade 2019) (Rule 59 does not apply when the court remands Commerce's determination because it is not a final judgment or order).

basis for reconsideration} may include a Court's failure to consider "controlling decisions or data{} that might reasonably be expected to alter the conclusion reached by the court." (internal quotation marks omitted)).  The movant carries the burden of proving that "some harm, legal or at least tangible," would accompany a denial of the motion.  *Cobell*, 355 F. Supp. 2d at 540.

Justice requires reconsideration of the decision to vacate the *Finding* during the pendency of the administrative proceedings, and for the duration of this case because the decision to vacate the *Finding* was based on both a mistake of fact and a mistake in the law.  As set forth below, consideration of these factors dictates that the *Finding* remain in place.

## II.    The Court Should Reconsider Its Decision To Vacate The *Finding* Of Forced Labor

This Court should reconsider its decision to vacate CBP's *Finding* of forced labor during the pendency of this case.  The deficiency found in the agency's determination was a procedural one – a failure to publicly explain the factual basis for the *Finding* – where the confidential record, which Kingtom and its counsel can access, provides ample and probative evidence to support the *Finding*.  And, with respect to the facts identified in the Court's order, the Court appeared to conflate the verification proceedings with the forced labor investigation, erroneously noting that the findings of the forced labor investigation were based on the determination in the EAPA verification.  Moreover, the Court did not discuss or explain the standard set forth by the U.S. Court of Appeals for the Federal Circuit for determining whether vacatur should be ordered when an administrative decision is on remand.

Notably, CBP is working expeditiously to rectify any administrative error in its remand decision, providing a detailed public description of the reasons for the determination, while properly protecting the law enforcement sensitive information at issue.  Vacating the *Finding*

here, particularly given the evidence in support, will create severe disruption and allow the entry of prohibited goods contrary to the public policy codified in 19 U.S.C. § 1307.

A.       The Forced Labor Investigation Culminated In The Allegation Assessment

In its decision, the Court notes that "the {allegation} assessment describes the labor conditions at plaintiff's facility during the EAPA on-site verification" and that the "allegation assessment predates the forced labor investigation itself and does not allege specifically the existence of forced labor."  Decision at 12 (citing to PAR, Doc. No. 8.6 at 15-16).  This is not accurate.  The allegation assessment, dated July of 2024, was the culmination of the forced labor investigation, which began after the EAPA verification concluded in 2021.  C.R. CBP 000038-58.  While we agree that the allegation assessment referenced the EAPA verification, it resulted from a separate investigation and the conclusions reached relied heavily on then-current and former employee interviews, conducted in 2022, which recount, in detail, significant evidence of forced labor.  The assessment identifies facts which track the indicators or factors identifying forced labor set forth by the ILO.  *Id.*; C.R. CBP 000221-226; C.R. CBP 000258-264; C.R. CBP 000265-267; C.R. CBP 000268-271; C.R. CBP 000272-277; C.R. CBP 000278-283; C.R. CBP 000284-289; *see also* interview transcripts listed at footnote 3.

The ILO has identified eleven such indicators: abuse of vulnerability; deception; restriction of movement; isolation; physical and sexual violence; intimidation and threats; retention of identity documents; withholding of wages; debt bondage; abusive working and living conditions; and excessive overtime.  These indicators are internationally accepted and considered when evaluating allegations of forced labor.  As noted previously, they were developed based on the definition of forced labor specified in the ILO Forced Labour Convention, 1930 (No. 29) which substantially appears in section 1307: "all work or service

which is exacted from any person under the menace of any penalty and for which the said person has not offered himself voluntarily."  Because the ILO's definition of forced labor is consistent with that of Congress, the ILO indicators serve as useful means in evaluating evidence to determine the presence of forced labor.  *See* 19 U.S.C. § 1307.

Therefore, contrary to the Court's conclusion, the allegation assessment *does* "allege specifically the existence of forced labor," both from the time of the EAPA investigation and continuing after and throughout the forced labor investigation.  Decision at 12.  These factual errors appeared significant to the Court's analysis and warrant reconsideration of its decision.

### B.     Application Of The Legal Standard Demonstrates That The *Finding* Should Remain In Force During Remand Proceedings And Throughout The Case

In addition to the factual oversight, the Court did not consider the two-prong test set forth by the Federal Circuit to determine whether vacatur is the proper remedy when an administrative decision is on remand.  Whether a court vacates an agency decision or rule during the pendency of remand proceedings depends upon the circumstances of the case, and the circumstances here do not warrant vacatur.  Instead, courts have discretion to remand for further explanation without vacating a rule where vacatur would unduly disturb settled expectations and cause chaos.  *See A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1492 (D.C. Cir. 1995).

Courts may – and will – remand agency action without vacatur when circumstances warrant.  *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.* (*NOVA*), 260 F.3d 1365, 1380 (Fed. Cir. 2001); *Ninestar Corp. v. United States*, 687 F. Supp. 3d 1308, 1337 n.25 (Ct. Int'l Trade 2024).  Remand without vacatur is appropriate if vacating would "at least temporarily defeat" the values and purpose covered by the *Finding*.  *North Carolina v. EPA*,

550 F.3d 1176, 1178 (D.C. Cir. 2008) (Remanding without vacatur, if vacating "would at least

temporarily defeat . . . the enhanced protection of the environmental values covered by {the

EPA rule at issue}.").

As the *Ninestar* court recognized, vacatur of the administrative determination at issue in

that case, which is similar in substance to the *Finding* here, would "risk severe disruption of

Congress's forced labor priorities." *Ninestar*, 687 F. Supp. 3d at 1337 n.25. Where forced

labor is concerned, the *Ninestar* court noted, "{r}emand without vacatur may indeed be well

suited to preserve, rather than disrupt, Congress's weighty humanitarian, economic, and foreign

policy concerns." *Id*. The same would be true here.

In determining whether vacatur is appropriate, the reviewing court should consider two

factors: (1) "the seriousness of the order's deficiencies", and (2) "the disruptive consequences of

an interim change that may itself be changed." *NOVA*, 260 F.3d at 1380 (quoting *A.L. Pharma,

Inc.,* 62 F.3d at 1492). Those factors weigh in favor of keeping the *Finding* in place.

**1.  There Is Ample And Probative Evidence On The Record To Support the
   *Finding***

As to the first factor, there is ample evidence in the confidential and public record that

forced labor is used in the production of Kingtom's imported merchandise, which formed the

basis for the *Finding*. The deficiency in the *Finding* was, as the Court noted, a failure to

adequately explain the factual basis for that decision in any portion of the public record,

Decision at 11-12, a procedural error unrelated to the strength of the evidence in the confidential

record that supports the determination. The Court compared the information in the public

administrative record to that available in the public record in *Ninestar,* 687 F. Supp. 3d at 1330,

another forced labor matter challenging a listing decision under the Uyghur Forced Labor

Protection Act (UFLPA), *see* P.L. 117-78, 135 Stat. 1325 (Dec. 23, 2021). Decision at 10-11. This Court, in finding the *Ninestar* explanation adequate in comparison to the *Finding* here, noted that the agency decision included a "brief description of the specific facts on which the forced labor allegations were based." Decision at 12. Here, a recitation of the facts largely originating from the 2022 interviews conducted during the forced labor investigation – which was more than the "brief description" provided in *Ninestar* – was included in the July 12, 2024 Allegation Assessment. C.R. CBP 000038-58. Although we acknowledge that this evidence was not described publicly, CBP will be summarizing the evidence already identified in the confidential record in the remand decision.

We recounted the evidence in support of the original *Finding* above. As noted in our response to Kingtom's motion for judgment on the agency record, CBP uses the ILO indicators of forced labor as guidance for determining the existence of forced labor when evaluating an allegation in conjunction with evidence obtained during an investigation. As set forth in the confidential record, and summarized above, the majority of those indicators were identified during interviews with 16 then-present and former Kingtom workers that took place during the forced labor investigation: abuse of vulnerability, deception, excessive overtime, physical and sexual violence, restriction of movement, threats and intimidation, and withholding of wages. The interviews obtained by FLD described, in detail, the living and working conditions for employees at the Kingtom facility. This evidence, along with a closure of the Kingtom facility in 2022 over labor concerns, confirmed a continuation of the labor violations first identified during the EAPA verification (which concluded in 2021).

Moreover, public news articles documented the closure of the Kingtom facility for the second time by the Dominican government in 2024 over multiple infractions, including many

labor violations.  This information supports CBP's conclusion that Kingtom failed to remediate the documented forced labor of its employees.  P.R. CBP 004274-4281; P.R. CBP 004282-4294.

CBP's remand decision will summarize, among other things, the following:

- facts showing physical abuse;

- facts showing abuse of the vulnerable population;

- facts showing a withholding of wages and excessive overtime;

- facts showing that the workers were deceived;

- facts showing that workers were both intimidated and threatened;

- facts showing that workers had their movements restricted.

The primary sources of those facts were first-hand accounts from then-current and former employees of Kingtom.  Moreover, the publicly available information related to the closure of Kingtom's facility obtained after those interviews were conducted evidenced a continuation of the labor concerns identified.

Therefore, the substance of the *Finding* was sound, and CBP is working diligently in order to comply with the Court's order to provide a public explanation of that *Finding*.  To vacate the *Finding*, which is well-supported by the evidence in the record, would permit the admittance of forced-labor-made goods contrary to law.

### 2.  The Finding Should Remain In Place To Uphold Forced Labor Priorities And Avoid Irreversible Consequences Associated With The Import Of Goods Made With Forced Labor

Analysis of the second factor, the "disruptive consequences" associated with vacating the *Finding*, leads to the conclusion that the *Finding* should not be disturbed.  *See NOVA*, 260 F.3d at 1380.  Again, as the *Ninestar* court recognized, vacatur of the administrative determination would "risk severe disruption of Congress's forced labor priorities."  *Ninestar,*

687 F. Supp. 3d at 1337 n.25.

Congress in implementing 19 U.S.C. § 1307, explicitly prohibited the importation of goods made with forced labor. CBP is directed to carry out the purpose and enforcement of the statute to prevent the importation of forced-labor-made goods. Should the vacatur stand, CBP would be prohibited from detaining Kingtom's goods based on the forced labor concerns identified in the *Finding*. That is, without the *Finding* in place, Kingtom's forced-labor-made merchandise would enter the stream of commerce, entirely bypassing section 1307.

Once Kingtom's goods make entry, it will be extremely difficult, if not impossible, to have those forced-labor-made goods recalled or redelivered. Redelivery is even more difficult given the products at issue – aluminum extrusions which could be used for the building and construction markets. P.R. CBP 000157; P.R. CBP 004285. Kingtom's products, once imported and used or installed in permanent projects, will be irretrievable.

Moreover, Kingtom will likely seek to import as much as possible while the Court considers the reasonableness of the re-issued *Finding*. In fact, Kingtom has indicated that it is eager to import its goods given the vacatur.[10] If, however, the *Finding* were to remain in place until the conclusion of this case, the status quo will be preserved, and, importantly, CBP will be able to uphold the directive of the statute and its enforcement mandate. Notably, Kingtom may enter its goods while the *Finding* remains in place, as long as it is able to provide evidence that goods in a particular shipment are free from forced labor. 19 C.F.R. § 12.43.

Accordingly, the "disruptive consequences" of a vacatur in this case, circumstances which may again change before the final judgment is issued in this case, indicates that the

---

[10] Kingtom has filed petitions seeking release of its previously seized goods on the basis of the Court's opinion.

*Finding* should remain in effect.  *See, e.g.*, *NOVA*, 260 F.3d at 1380 (remanding without vacatur a regulation governing veteran benefit eligibility due to "disruptive consequences"); *North Carolina,* 550 F.3d at 1178 (remanding without vacatur where there were "fundamental flaws" requiring remand but allowing the EPA's rule to remain in effect to "at least temporarily preserve the environmental values covered by" the rule).  Maintaining the *Finding* would preserve our stringent policy against forced labor encompassed by section 1307 to prevent goods made with forced labor from entering into the United States without any restriction.

Therefore, both factors are satisfied and support reconsideration of the portion of the Court's opinion requiring that the *Finding* be vacated.

## **CONCLUSION**

For the reasons discussed above, this Court should grant Defendants' motion for reconsideration.

<div style="margin-left: 40%">

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Monica P. Triana
MONICA P. TRIANA
Senior Trial Counsel
U.S. Dept. of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(212) 264-9240
*Attorneys for Defendants*

</div>

Dated: October 23, 2025

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L., | |
| Plaintiff, | |
| v. | Court No. 24-00264 |
| UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; RODNEY SCOTT, Commissioner, U.S. Customs and Border Protection, | |
| Defendants, | |
| and | |
| ALUMINUM EXTRUDERS COUNCIL; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, | |
| Defendant-Intervenors. | |

CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT
STANDARD CHAMBER PROCEDURE 2(B)

I, Monica P. Triana, senior trial counsel in the Office of the Assistant Attorney General,

Civil Division, Commercial Litigation Branch, International Trade Field Office, who is

responsible for the foregoing brief, relying upon the Microsoft Word count feature of the word

processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 4,408 words.

/s/ Monica P. Triana

## <u>CERTIFICATE OF SERVICE</u>

I, Monica P. Triana, certify that I am an attorney in the office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, with offices located at 26 Federal Plaza, New York, NY 10278, and that on October 23, 2025 on behalf of the United States, defendant herein, I caused the annexed Confidential Motion For Reconsideration to be served upon:

> Brady Mills
> Morris, Manning & Martin, LLP
> 133 New Hampshire Avenue, NW, Suite 800
> Washington, DC 20036
> Bmills@mmmlaw.com
> 202-216-4116
> Attorneys for Plaintiff
>
> Robert DeFrancesco
> Wiley Rein, LLP
> 2050 M Street, NW.
> Washington, DC 20036
> (202) 719-7473
> rdefrancesco@wiley.law
> Attorney for Defendant-Intervenors

the attorney(s) for the plaintiff and defendant-intervenor herein, by Federal Express, as above indicated.

<div align="right">

/s/ Monica P. Triana

</div>