# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L.,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA;<br>DEPARTMENT OF HOMELAND SECURITY;<br>U.S. CUSTOMS AND BORDER<br>PROTECTION;<br>KRISTI NOEM, Secretary,<br>U.S. Department of Homeland Security;<br>RODNEY S. SCOTT, Commissioner, U.S.<br>Customs and Border Protection,<br><br>    Defendants<br><br>  and<br><br>ALUMINUM EXTRUDERS COUNCIL;<br>UNITED STEEL, PAPER AND FORESTRY,<br>RUBBER, AND MANUFACTURING AND<br>SERVICE WORKERS INTERNATIONAL<br>UNION,<br><br>    Defendant-Intervenors. | Court No. 24-00264 |

## ORDER

Upon consideration of Defendant's Motion for Reconsideration, *Kingtom Aluminio S.R.L. v. United States*, No. 24-cv-00264-TMR (Oct. 23, 2025), ECF No. 67, and Plaintiff Kingtom Aluminio S.R.L.'s Opposition to Defendant's Motion for Reconsideration, it is hereby:

**ORDERED** that Defendant's motion is denied;

**SO ORDERED.**

Dated: _____, 2025
      New York, NY

Timothy M. Reif, Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA; <br> DEPARTMENT OF HOMELAND SECURITY; <br> U.S. CUSTOMS AND BORDER PROTECTION; <br> KRISTI NOEM, Secretary, <br> U.S. Department of Homeland Security; <br> RODNEY S. SCOTT, Commissioner, U.S. Customs and Border Protection, <br><br> Defendants <br><br> and <br><br> ALUMINUM EXTRUDERS COUNCIL; <br> UNITED STEEL, PAPER AND FORESTRY, RUBBER, AND MANUFACTURING AND SERVICE WORKERS INTERNATIONAL UNION, <br><br> Defendant-Intervenors. | Court No. 24-00264 |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR RECONSIDERATION**

Plaintiff Kingtom Aluminio S.R.L. ("Kingtom" or "Plaintiff") hereby responds to Defendant's Motion for Reconsideration, *Kingtom Aluminio S.R.L. v. United States*, No. 24-cv-00264-TMR (Oct. 23, 2025), ECF No. 67 ("Motion"). For the foregoing reasons, Kingtom opposes the Motion and respectfully requests that the Court deny it.

I.      **BACKGROUND**

On May 5, 2025, Kingtom moved for judgment on the agency record pursuant to U.S. Court of International Trade ("USCIT") Rule 56.1, and requested that the Court set aside (*i.e.*, vacate) the finding by U.S. Customs and Border Protection ("CBP" or "Customs") that Kingtom produced merchandise with forced labor. *See Kingtom Aluminio S.R.L. v. United States*, No. 24-cv-00264-TMR (May 5, 2025), ECF No. 46 ("Rule 56.1 Brief") at 31; *Notice of Finding That Aluminum Extrusions and Profile Products and Derivatives Produced or Manufactured Wholly or in Part by Kingtom Aluminio S.R.L. With the Use of Convict, Forced or Indentured Labor Are Being, or Are Likely To Be, Imported Into the United States*, 89 Fed. Reg. 96,265 (Dec. 4, 2024) ("*Finding*"). On June 9, 2025, Defendant responded to Kingtom's motion for judgment on the agency record and argued that the *Finding* was consistent with 19 U.S.C. § 1307 and otherwise not arbitrary and capricious. *Kingtom Aluminio S.R.L. v. United States*, No. 24-cv-00264-TMR (June 9, 2025), ECF No. 48 ("Rule 56.1 Response Brief."). Defendant did not challenge Kingtom's request for vacatur or otherwise argue that this default remedy was not warranted. *See id.* On September 23, 2025, the Court granted Kingtom's motion for judgment on the agency record in part and, consistent with the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2), vacated the *Finding*. *Kingtom Aluminio S.R.L. v. United States*, No. 24-cv-00264-TMR, Slip Op. 25-125, 2025 WL 2709428 (Sept. 23, 2025), ECF No. 50 ("Slip Op.").

On October 3, 2025, Defendant moved to stay the litigation because, according to Defendant, U.S. Department of Justice attorneys and employees of the Defendant are prohibited from working except in limited circumstances during the current lapse in appropriations. *See Kingtom Aluminio S.R.L. v. United States*, No. 24-cv-00264-TMR (Oct. 3, 2025), ECF No. 63 ("Stay Motion"). Defendant also explained that, although this matter is currently on remand before the agency, a stay was also warranted because the government intended to move for a stay

of the vacatur. *Id.* Kingtom opposed the Stay Motion. *Kingtom Aluminio S.R.L. v. United States*, No. 24-cv-00264-TMR (Oct. 5, 2025), ECF No. 65. On October 6, 2025, the Court granted the Stay Motion but held that the vacatur of the *Finding* was undisturbed by the stay. *Kingtom Aluminio S.R.L. v. United States*, No. 24-cv-00264-TMR (Oct. 6, 2025), ECF No. 66. Defendant filed its Motion for Reconsideration just over two weeks later, on October 23, 2025.

Defendant spends five pages of its Motion repeating its version of the facts that it claims supports the *Finding*. *See* Motion at 3-7. These facts were already largely presented to the Court in Defendant's response brief and are based primarily on the confidential administrative record. *See* Rule 56.1 Response Brief at 9-12. These facts are not relevant to reconsideration under USCIT Rule 54(b), nor are they curative of the infirmities in the *Finding* as found by the Court since they are derived almost exclusively from the confidential record. Those infirmities can only be cured in the remand determination based on the public record. As such, and in the interest of judicial economy and to avoid repetition, Kingtom does not respond to Defendant's version of the facts in the confidential record and instead refers the Court to Kingtom's opening and reply briefs. As discussed therein, the record is devoid of evidence showing that the labor Kingtom received from its workers was in any way involuntary or forced as required by 19 U.S.C. § 1307.

**II.     ARGUMENT**

USCIT Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." USCIT Rule 54(b). The Court may reconsider a non-final order pursuant to Rule 54(b) "as justice requires" or when the Court determines that it is "necessary under the relevant circumstances." *Keystone Automotive Operations Inc. v. United States*,

3

781 F. Supp. 3d 1362, 1366 (Ct. Int'l Trade 2025) (quoting *Irwin Indus. Tool Co. v. United States*, 269 F. Supp. 3d 1294, 1300-01 (Ct. Int'l Trade 2017)). "The grounds for reconsideration include 'an intervening change in the controlling law, the availability of new evidence, the need to correct clear factual or legal error, or the need to prevent manifest injustice.'" *Id.* (quoting *Ford Motor Co. v. United States*, 30 CIT 1587, 1588 (2006). "A motion for reconsideration is not an opportunity for the losing party 'to re-litigate the case or present arguments it previously raised.'" *NEXTEEL Co., Ltd. v. United States*, 389 F. Supp. 3d 1343, 1348 (Ct. Int'l Trade 2019) (quoting *Totes-Isotoner Corp. v. United States*, 32 CIT 1172, 1173, 580 F. Supp. 2d 1371, 1374 (2008)). As established below, Defendant has not met this high standard and its Motion should therefore be denied.

  **A.**  **Defendant Has Not Demonstrated That Reconsideration Is Warranted**

As support for its Motion, Defendant argues that "{j}ustice requires reconsideration of the decision to vacate the *Finding* during the pendency of the administrative proceedings, and for the duration of this case because the decision to vacate the *Finding* was based on both a mistake of fact and a mistake of law." Motion at 9. In all respects, Defendant is wrong.

First, Defendant's claim that the Court's vacatur was based on a mistake of fact is not accurate. Specifically, Defendant points to the Court's statement on page 12 of its opinion that "'the {allegation} assessment describes the labor conditions at plaintiff's facility during the EAPA on-site verification' and that the 'allegation assessment predates the forced labor investigation itself and does not allege specifically the existence of forced labor.'" Motion at 10 (*quoting* Slip Op. at 12) (alteration in original). Defendant argues that this part of the opinion is not accurate (a mistake of fact) because the allegation assessment did not predate the forced labor investigation. *Id.* However, to the extent this can be characterized as a mistake, it is only

4

with respect to the Court appearing to have inadvertently referenced the verification report in one of the Enforce and Protect Act ("EAPA") investigations as being the allegation assessment in this passage of its opinion. This is plain from the Court's citation to Public Administrative Record ("PAR") Document No. 8.6 at the conclusion of these sentences, which is the EAPA verification report. *See* Slip Op. at 12. This indicates that the Court was intending to reference the EAPA verification report and not the allegation assessment. Had the Court intended to refer to the allegation assessment, it would have referenced Confidential Record Document Number 8 (CBP 000038-58).

This reading of the opinion is further confirmed by the fact that the basis for the Court's holding that the *Finding* was arbitrary and capricious and the resulting vacatur of the *Finding* was that "Customs in the PAR {public administrative record} and the *Finding* failed to 'articulate a satisfactory explanation for its action' based on a 'rational connection between the facts found and the choice made.'" Slip Op. at 12 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Since the allegation assessment is <u>not</u> part of the PAR there would have been no reason for the Court to discuss it as a document that was relevant to the Court's finding that the published *Finding* was arbitrary and capricious. That determination was based on the lack of evidence in the PAR. Conversely, the EAPA verification report <u>is</u> part of the PAR and thus the Court appears to have been referencing it and concluding that it did not provide support for the *Finding*. Again, this is confirmed by the Court's citation to the EAPA verification report as support for this sentence of its opinion. Accordingly, this inadvertent reference to the allegation assessment instead of the EAPA verification report in the text of its opinion is not a mistake of fact that supports reconsideration of its vacatur of the *Finding*. Instead, it is harmless error. *See Ergeli Demir Ve Celik*

*Fabrikalari T.A.S. v. United States International Trade Commission*, 639 F. Supp. 3d 1245, 1252 (Ct. Int'l Trade 2023) ("A motion for reconsideration should not be granted in circumstances in which an error is found to be harmless.").

Second, Defendant argues that the Court did not consider the test employed by the U.S. Court of Appeals for the Federal Circuit in *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 260 F.3d 1365 (Fed. Cir. 2001) ("*NOVA*") to determine whether vacatur is appropriate while the agency reconsiders a determination on remand in an APA case. Motion at 11 (citing *NOVA*, 260 F.3d at 1380); *see also NOVA*, 260 F.3d at 1367-68. This is not a mistake of law as Defendant claims. Vacatur is the default statutory remedy under the APA, and thus the Court had no reason or obligation to consider whether vacatur was appropriate under the *NOVA* decision. *See* 5 U.S.C. § 706(2); *Ninestar Corp. v. United States*, 687 F. Supp. 3d 1308, 1337 n.25 (Ct. Int'l Trade 2024) (stating that remand with vacatur is "the default remedy for unlawful agency action" under the APA). Instead, the burden was on Defendant to argue against application of the default remedy in its response to Kingtom's 56.1 motion. After all, the relief requested by Kingtom in its Rule 56.1 motion, proposed order, and supporting brief was that the *Finding* be set aside. *See, e.g.*, Rule 56.1 Brief at 12, 31. Defendant was thus on notice from 5 U.S.C. § 706(2) that the default remedy was vacatur, and this was confirmed by Kingtom's Rule 56.1 papers where vacatur was requested. Yet Defendant raised no objections and did not argue in its Rule 56.1 Response Brief that any remand ordered should be *without* vacatur. *See Ninestar Corp.*, 687 F. Supp. 3d at 1337 n.25 (citing *Env't Def. Fund v. FERC*, 2 F.4th 953, 976 (D.C. Cir. 2021) (noting that "remand without vacatur remains a rare remedy.").

Having slept on its rights, Defendant cannot now use USCIT Rule 54(b) as the mechanism to cure its failure to argue against application of the statutory default remedy. The

Federal Circuit has explained that, "as a general principle," courts "do not consider issues that were not clearly raised" in the relevant proceeding. *Massachusetts Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1369 (Fed. Cir. 2015) (citing *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)). Arguments are waived where a court is not put on notice of the substance of the issue. *See Google Inc. v. SimpleAir Inc.*, 682 Fed. Appx 900, 904 (Fed. Cir. 2017). For Defendant to now claim that it was the Court that made a mistake of law by not specifically justifying the remedy of vacatur under the *NOVA* standard seeks to assign fault to the wrong participant. There was no mistake of law here.

  Finally, Defendant's invocation of "justice" as part of its plea for reconsideration cannot go without response from Kingtom. Motion at 9. This case involves CBP publishing a finding declaring Kingtom "guilty" of engaging in forced labor practices pursuant to 19 U.S.C. § 1307 without providing Kingtom (i) any prior notice that it was even under investigation, (ii) any opportunity to review the evidence against it, (iii) any opportunity to defend itself, or (iv) even an explanation with citations to any evidence that supports the declaration that Kingtom was engaged in forced labor practices. In its rush to judgment, CBP also skipped over the normal regulatory progression that begins with a withhold release finding as per 19 C.F.R. § 12.42(c) and then progresses to a conclusive finding under 19 C.F.R. § 12.42(f). Instead, CBP just published a conclusive *Finding*. Even after the *Finding* was made and an embargo on its imports into the United States was imposed, Kingtom was forced to file this appeal to gain access to the administrative record and understand what evidence CBP had relied upon to support the *Finding*. The result of this black box investigation and resulting embargo is that Kingtom has been forced to shutter its operations. Its very survival is in jeopardy. This Court is the only forum where Kingtom has any chance to defend itself and remove the stigma that has been attached to its

name by the *Finding*. For Defendant to assert that "justice" now requires that the Court reconsider its vacatur of the *Finding* shows a total lack of perspective regarding CBP's conduct in this investigation.

The Court got it right and should maintain its vacatur of the *Finding*.

### B. Even If Reconsideration Were Warranted, Defendant Has Not Demonstrated That The Statutory Default Remedy Of Vacatur Should Not Be Applied

Although Defendant has not demonstrated that reconsideration is warranted, even if it had Defendant has not established that the Court's application of the default statutory remedy of vacatur should not be applied in this case. In *NOVA*, the Federal Circuit explained that it may "decide whether to vacate an agency's decision" on remand depending on the (1) "the seriousness of the order's deficiencies" and (2) "the disruptive consequences of an interim change that may itself be changed," and concluded that exceptional circumstances existed in that case. *NOVA*, 260 F.3d at 1380. Neither element warrants an exception in this case.

#### 1. The Finding's Deficiencies Are Not Merely Procedural

To try and minimize the seriousness of the deficiencies in the *Finding*, Defendant characterizes the deficiencies as merely "procedural" and claims that these deficiencies can be easily cured by CBP publicly explaining the "well-supported" confidential record. *See* Motion at 13-14. Defendant's argument is unpersuasive as the deficiencies are not merely procedural. Furthermore, whether or not the record supports the *Finding* is still very much in question as the Court has not yet addressed those issues. Defendant cannot simply assert and presume the correctness of the *Finding* based on its own subjective interpretation of the confidential record.

Defendant's characterization of the deficiencies in the *Finding* as merely "procedural" is a *non-sequitur* and ignores that the Court found that the *Finding* was in violation of the APA. Specifically, the Court explained that the *Finding* does not cite to documents in the public

8

administrative record nor does it describe the investigation in any detail other than a "barebones" recitation of the statute and regulations. Slip Op. at 10. The Court held that "the *Finding* is arbitrary and capricious. Customs in the PAR and the *Finding* failed to 'articulate a satisfactory explanation for its action' based on a 'rational connection between the facts found and the choice made.'" Slip Op. at 12 (quoting *State Farm*, 463 U.S. at 43). While the APA deals with procedural aspects of agency decision-making, to characterize the Court's finding of an APA violation as merely procedural minimizes the substantive consequences of an APA violation.

As to Defendant's assertion that the record contains ample and probative evidence that supports the *Finding*, that issue is very much still in dispute. Notably, the Court has not addressed whether the confidential record, which CBP plans to publicly summarize on remand, is as "well-supported" as Defendant claims. Motion at 14. To the contrary, the Court held that the *Finding* was arbitrary and capricious pursuant to the standard of review because the agency failed to provide rational connection between the facts found and choice made, and vacatur is therefore warranted as the default remedy. Slip Op. at 12-13. CBP's assertion that it will be able to provide that missing link on remand is no reason for the arbitrary and capricious *Finding* to stand in the meantime. CBP failed to comply with the APA in issuing its *Finding*, and that failure has consequences that cannot be glossed over by promises about how it intends to cure the APA violation on remand and assurances about the strength of the evidence in the confidential record that it claims support the *Finding*. CBP needed to support the *Finding* by linking it to information in the PAR and failed to do so.

Defendant also seeks to bolster its claim that the underlying defects in the *Finding* can be easily cured by pointing out that the record contains public news articles regarding the closure of Kingtom's facility in 2022 and again in 2024 for labor violations. Motion at 13-14. However,

9

neither article provides evidence that Kingtom "forced" laborers to work "involuntarily" pursuant to the statutory standard of 19 U.S.C. § 1307.  *See* PAR CBP004274-94.  As Kingtom argued in its brief, 19 U.S.C. § 1307 only prohibits merchandise produced "under menace of penalty for its non-performance and for which the worker does not offer himself voluntarily," which is a standard that has not been met here on the public or the confidential agency record.  *See* Rule 56.1 Brief at 14-17; 19 U.S.C. § 1307.  Those labor violations discussed in the news articles are unrelated to the involuntariness of the workers involved.  *See* PAR CBP004274-94.  Therefore, the alleged labor violations described in the news articles do not provide the rational connection between the facts found and choice made that the Court concluded was necessary.  *See* Rule 56.1 Brief at 29-30.

### 2. Any Asserted Disruptive Consequences From The Vacatur Do Not Support Reversing The Court's Decision To Vacate The Finding

Defendant has not established that any asserted disruptive consequences from the vacatur support reversing the Court's decision to vacate the *Finding*.  Defendant's reliance on *Ninestar*, where the Court stated that vacatur of a forced labor finding under the Uyghur Forced Labor Prevention Act ("ULFPA") could "risk severe disruption of Congress's forced labor priorities," Motion at 14-15 (quoting *Ninestar*, 687 F. Supp. 3d at 1337 n.25), is misplaced.  The Court made that statement in the context of addressing one of several arguments made to demonstrate likelihood of success on the merits for a preliminary injunction.  *See Ninestar*, 687 F. Supp. 3d at 1327-37.  Although finding no likelihood of success on the merits, the Court addressed in a footnote the Government's argument that, even if Ninestar's challenges had merit, any remand should be without vacatur.  *Id.* at 1337 n.25.  The Court stated that vacatur in that case could disrupt Congress's forced labor policies.  *Id.*  However, this is dicta as it was not necessary to the

10

Court's denial of the preliminary injunction.  Furthermore, the Court was not addressing the propriety of vacatur in a case where, as here, a violation of the APA was found.

Additionally, while the forced labor at issue in this case and the forced labor in *Ninestar* under the ULFPA are both tied to the prohibition against forced labor under 19 U.S.C. § 1307, they do not operate the same way.  The UFLPA requires that, once the Forced Labor Enforcement Task Force determines that an entity worked with or is in the Xinjiang Uyghur Autonomous Region, a rebuttal presumption is applied to prohibit the entity's merchandise from importation into the United States.  *See Ninestar*, 687 F. Supp. at 1314-15, 1317-18.  No such rebuttable presumption applies to the forced labor at issue in this case.  Instead, Kingtom contends that CBP applied a novel interpretation of 19 U.S.C. § 1307 in a way that Congress did not contemplate in the statutory text or in the statute's legislative history.  *See* Rule 56.1 Brief at 16.  In this way, the alleged disruptive consequences of the Court's vacatur of the *Finding* are not the same as those addressed by the *Ninestar* Court in dicta.

Kingtom agrees that the prevention of goods produced with forced labor from entering the stream of commerce in the United States is important, but just because this case involves forced labor does not render the default statutory remedy of vacatur inapplicable when the Court has found CBP's forced labor finding to be arbitrary and capricious.  There is a strong public interest in the enforcement of all U.S. laws and when an agency acts in violation there are consequences, one of which is the presumptive vacatur of the agency action unless and until it is cured.  Here, CBP ignored the requirements of the APA and simply branded Kingtom guilty of using forced labor based on a "barebones recitation of the statute and Customs' regulations thereunder."  Slip Op. at 10.  The fact that this was done in the context of a forced labor case

does not provide some automatic escape from the statutory default remedy of vacatur that flows from CBP's failure to follow the law.

Having fixed the statutory default remedy as vacatur, Congress was aware that if any agency action is set aside there may be a period of time when the relevant regulation, rule, or decision will not apply. In most cases, the impacted agency will surely feel that vacatur has "disruptive consequences" in the sense that the agency cannot wield its authority in that area unless and until the APA violation is remedied. Defendant's "parade of horribles" that it claims will flow from maintenance of the Court's vacatur of the *Finding* are thus unremarkable. While Kingtom may temporarily resume imports into the United States to try and stay in business if the vacatur is maintained, Defendant's claim that "Kingtom will likely seek to import as much as possible while the Court considers the reasonableness of the re-issued Finding" is rank speculation. Motion at 15. At present, Kingtom's operations have been shuttered, and the majority of its workers have been laid off because of the embargo. Kingtom cannot just flip a switch and quickly resume exports to the United States.

The status quo that Defendant claims it wants to maintain only further imperils Kingtom's ability to stay in business. It has taken Kingtom almost one year to receive judicial recognition of the merits of its appeal, and the vacatur is the first and only tangible benefit it has received for its efforts. Defendant has felt no impact from its unlawful agency action until now, and a temporary pause in the status quo does not bite Defendant the same way reversing the Court's vacatur would bite Kingtom. Defendant asserts that Kingtom may enter goods pursuant to 19 C.F.R. § 12.43 while the *Finding* remains in place" if it provides "evidence that goods in a particular shipment are free from forced labor," Motion at 15, but this is disingenuous. As Defendant acknowledges, Kingtom has petitioned CBP for relief from seizure of merchandise

that Customs seized pursuant to the *Finding* but fails to mention that CBP has yet to release the merchandise or otherwise act on its petitions despite the Court's vacatur of the *Finding*. *See* Motion at 15 n.10. For Defendant to now suggest that Kingtom could enter merchandise despite the *Finding* when its petitions against the detention and seizure of already-shipped merchandise have fallen on deaf ears strains credulity.

### III.  CONCLUSION

For the foregoing reasons, Kingtom respectfully requests that the Court deny Defendant's Motion for Reconsideration and reaffirm that the vacatur of the *Finding* remains effective.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Jordan L. Fleischer
Nicholas C. Duffey

**MORRIS, MANNING & MARTIN, LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Plaintiff Kingtom Aluminio S.R.L.*

October 31, 2025

*Certificate Of Compliance*

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 3,866 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ Brady W. Mills
Brady W. Mills

Dated:  October 31, 2025