**FINAL REMAND REDETERMINATION**
*Kingtom Aluminio S. R. L. v. United States, et. al.*
**U.S. Court of International Trade, Court No. 24-00264**

## I.    SUMMARY

U.S. Customs and Border Protection (CBP) has prepared this remand redetermination pursuant to Slip Opinion No. 25-125 in *Kingtom Aluminio S.R.L. v. United States*, Court No. 24-00264 (Ct. Int'l Trade September 23, 2025) (hereinafter, Remand Order). This remand concerns CBP's finding that aluminum extrusions and profile products and derivatives are produced or manufactured wholly or in part by Kingtom Aluminio S.R.L. (Kingtom) with the use of forced labor, and that such products are being, or are likely to be, imported into the United States in violation of 19 U.S.C. § 1307. *See* Notice of Finding That Aluminum Extrusions and Profile Products and Derivatives Produced or Manufactured Wholly or in Part by Kingtom Aluminio S.R.L. With the Use of Convict, Forced or Indentured Labor Are Being, or Are Likely To Be, Imported Into the United States (the "Finding"), 89 Fed. Reg. 96,265 (Dec. 4, 2024). On September 23, 2025, the Court vacated the Finding and remanded the matter to CBP "for further explanation or reconsideration consistent with th[e] opinion." *See* Remand Order, at 3. As explained further below, after reconsidering the information on the administrative record[1] CBP continues to determine that there is sufficient evidence to support a finding that Kingtom is using forced labor in the Dominican Republic (DR) to produce or manufacture in whole or in part aluminum extrusions and profile products and derivatives, and such products are being, or are likely to be, imported into the United States in violation of 19 U.S.C. § 1307.

---

[1] Public and confidential versions of the administrative record were filed with the Court on March 7, 2025. "C.R." indicates a citation to the confidential version of the administrative record found at ECF No. 34. "P.R." indicates a citation to the public version of the administrative record found at ECF No. 33. In addition, "Doc." references the documents as listed in CBP's Administrative Record Index.

## II.    DISCUSSION

### A.  Legal Framework

Section 1307 of Title 19, United States Code, provides that "[a]ll goods, wares, articles, and merchandise mined, produced or manufactured wholly or in part in any foreign country by convict labor or/and forced labor or/and indentured labor under penal sanctions shall not be entitled to entry at any of the ports of the United States, and the importation thereof is hereby prohibited[.]"

Under the regulations promulgated pursuant to section 1307, CBP may self-initiate an investigation into forced labor where it has reason to believe that merchandise is being, or is likely to be, imported into the United States in violation of section 1307 by communicating that belief to the Commissioner of CBP.  19 C.F.R. § 12.42(a)-(b).  If the Commissioner finds that information available "reasonably but not conclusively indicates that merchandise within the purview of section 1307 is being, or is likely to be, imported," the Commissioner will promptly advise port directors to "withhold release of any such merchandise." *Id.* § 12.42(e).  If the Commissioner determines on the basis of the information available that merchandise is subject to the provisions of section 1307, with the approval of the Secretary of the U.S. Department of Homeland Security,[2] he will publish "a finding to that effect" in the Customs Bulletin and Federal Register.  19 C.F.R. § 12.42(f).

---

[2] Pursuant to the Homeland Security Act of 2003, the functions and authorities of the U.S. Customs Service were transferred to the U.S. Department of Homeland Security ("DHS").  Although the term "Secretary" in Title 19 originally referred to the Secretary of the Treasury, when Congress created DHS and transferred organizational units to DHS, Congress provided that, "[w]ith respect to any function transferred by or under this chapter …  reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department to which such function is so transferred."  6 U.S.C. § 557.

Section 1307 defines forced labor as "all work or service which is exacted from any person under the menace of any penalty for its nonperformance and for which the worker does not offer himself voluntarily."  The International Labour Organization (ILO) sets forth a definition of forced labor identical to section 1307, and CBP relies on ILO guidance to aid with the interpretation of the statute.  ILO also provides additional definition of "menace and penalty" to mean "a wide range of penalties or threatened penalties used to compel someone to work."[3] ILO defines "offered voluntarily" as "free and informed consent of a worker to take a job and his or her freedom to leave at any time.  This is not the case, for example, when an employer or recruiter makes false promises so that a worker take[s] a job he or she would not otherwise have accepted."[4]  To determine whether labor is offered involuntarily and under the menace of penalty, FLD looks to ILO's 11 forced labor indicators as a guide: Abuse of vulnerability; deception; restriction of movement; isolation; physical and sexual violence; intimidation and threats; retention of identity documents; withholding of wages; debt bondage; abusive working and living conditions; and excessive overtime.[5]

### B.  Background and Overview of Record

On September 27, 2021, FLD initiated an investigation into Kingtom pursuant to 19 C.F.R. § 12.42(a) following a referral by CBP, Office of Trade, Trade Remedies Law Enforcement Directorate (TRLED), Enforcement Operations Division (EOD).[6]  The forced labor

---

[3] International Labour Organization, What is Forced Labour?, available at:  https://www.ilo.org/topics/forced-labour-modern-slavery-and-trafficking-persons/what-forced-labour.

[4] *Id.*

[5] International Labour Organization, Forced Labour Indicator Booklet, available at:  https://www.ilo.org/publications/forced-labour-indicator-booklet (last accessed October 29, 2025).

[6] *See* Forced Labor Allegation by U.S. Customs and Border Protection, Enforce and Protect Act (EAPA) Verification Team, September 27, 2021, Doc. No. 8.2, C.R. CBP 000066 – CBP 000070, P.R. CBP 000067 – CBP 000071 (EAPA Referral).

Enforce and Protect Act (EAPA) Referral was based on the facts collected and observations made by U.S. Government (USG) officials while conducting a site visit to Kingtom's Dominican Republic facility for an EAPA investigation.[7]  Specifically, the forced labor EAPA Referral described that Kingtom workers clandestinely passed notes to USG officials, suggesting possible forced labor practices at Kingtom's factory, and provided pictures of payroll documents to substantiate their claims.[8]  For example, one note stated: "We cannot [take] anymore of the abuses from the Chinese.  We work 7 days without rest.  They make us pay for the uniforms and everything in the company Kingtom [*sic*]."[9]  The forced labor EAPA Referral reported that Kingtom workers told USG officials that Chinese nationals own and operate the factory and hire Dominican workers only in non-supervisory roles.[10]  In addition, the forced labor EAPA referral stated that the USG officials witnessed factory employees terminated immediately after speaking with USG officials.[11]

FLD determined the referral containing these labor abuse claims contained sufficient information to warrant initiating an investigation to determine whether Kingtom was manufacturing products using forced labor as defined by 19 U.S.C. § 1307 and importing the merchandise into the United States and therefore initiated the investigation pursuant to 19 C.F.R. § 12.42(a).

---

[7] USG officials were at Kingtom conducting an EAPA verification site for an investigation resulting from allegations pursuant to EAPA of evasion of the antidumping duty orders on aluminum extrusions from China.  *See* U.S. Customs and Border Protection, Office of Trade On-Site Verification Report, EAPA Case No. 7550, October 28, 2021, Doc. No. 8.6, C.R. CBP 000095 – CBP 000132; P.R. CBP 000096 – CBP 000133 (EAPA Verification Report).

[8] *See* EAPA Referral at C.R. CBP 000067 – CBP 000068, P.R. CBP 000068 – CBP 000069.

[9] *Id*. at C.R. CBP 000068, P.R. CBP 000069.

[10]  C.R. CBP 000066, P.R. CBP 000067 (EAPA Referral, Doc. No. 8.2, at 1).

[11]  EAPA Referral at C.R. CBP 000070, P.R. CBP 000071.

The EAPA verification team's October 28, 2021 verification report, compiled following the on-site verification, also supported the allegations made in the forced labor EAPA referral. The verification report accounted that over 50 Kingtom workers approached USG officials during the EAPA verification to communicate orally and through written notes, claiming mistreatment, and all expressed fear of speaking in front of Kingtom's officials for fear of retribution.[12] The EAPA verification report also described that Kingtom officials appeared to be acting as minders to prevent communications between Kingtom workers and the USG officials.[13] During the EAPA verification visit, USG officials also observed a penalties board outlining fees for infractions such as listening to music during work or being in the bathroom for too long.[14]

In addition, a member of the EAPA verification team who had shared their phone number with Kingtom workers received numerous WhatsApp text messages alleging abuse by Kingtom and asking for help after the verification visit.[15] Such abuse claims included: working seven days a week without rest, withholding of wages, and claims of disparate treatment of Dominican workers compared to Chinese workers.[16] These statements were supported by documentation obtained during the verification, including payroll documents.[17]

On March 3, 2022, the Aluminum Extruders Council ("AEC") and the United Steelworkers ("USW") submitted a forced labor allegation pursuant to 19 C.F.R. § 12.42(b)

---

[12] EAPA Verification Report at C.R. CBP 000110, P.R. CBP 000111.

[13] *Id.*

[14] *Id.*; EAPA verification Report at CBP 000132; P.R. CBP 000133.

[15] Screenshots of WhatsApp Messages by Kingtom Workers, C.R. CBP 000071 – CBP 000084, P.R. CBP P000072 – CBP 000085, Doc. 8.3; FLD Explanation of WhatsApp Messages, C.R. CBP 000086, P.R. CBP 000087, Doc, 8.4.

[16] *Id.*

[17] *See, e.g.*, EAPA Verification Report, C.R. CBP 000129 – CBP 000132, P.R. CBP 000130 – CBP 000133.

against Kingtom.[18]  This submission detailed forced labor practices prevalent in the Dominican Republic, alleged forced labor at Kingtom, and based on the information discovered through the EAPA verification, highlighted the presence of six ILO forced labor indicators.

To corroborate the allegations and gather primary evidence, DHS personnel traveled to the Dominican Republic during the week of May 16-19, 2022.  During this visit, DHS personnel interviewed 16 current and former Kingtom employees.  The worker audio recordings, video recordings, and interview transcripts are included in the administrative record, and catalog Kingtom's forced labor abuses.[19]

In addition to the worker interviews, DHS personnel gathered photographic evidence and documentation that collectively demonstrated the presence of forced labor.[20]  DHS personnel collected further evidence, including information from a confidential informant who was at the

---

[18] Aluminum Extruders Council, United Steelworkers, Petition to Exclude Aluminum Extrusions Manufactured "Wholly or in Part" by Forced Labor in the Dominican Republic by Kingtom Aluminio, March 3, 2022, Doc. 8.10, C.R. CBP 000153 – CBP 000165, P.R. CBP 000154 – CBP 000166 (AEC and USW Petition).

[19]  *See* Forced Labor Division, Allegation Assessment, July 12, 2024, Doc No. 8, at C.R. CBP 000041, P.R. CBP 000042 (Allegation Assessment); *see also* Interview Transcripts, Audio and Video Recordings, Doc. Nos. No. 8.37 – 8.100, C.R. CBP 000290 – CBP 002067; P.R. CBP 000291 – CBP 000268.

[20] C.R. CBP 000477, P.R. CBP 000478 (Doc. 8.41 - Worker 10 Injury Picture); C.R. CBP 000611, P.R. CBP 000612 (Doc. 8.45 - Worker 11 Injury Picture #1); C.R. CBP 000613; P.R. CBP 000614 (Doc. 8.46 - Worker 11 Injury Picture #2); C.R. CBP 000617 – CBP 000618, P.R.CBP 000618 – CBP 000619 (Doc. 8.48 - Worker 11 Statement, Interviews Conducted by USG May 16-19, 2022); C.R. CBP 001110, P.R. CBP 001111 (Doc. 8.64 - Worker 16 Envelope Picture); C.R. CBP 001112, P.R. CBP 001113 (Doc. 8.65 - Worker 16 IDs Picture); C.R. CBP 001123 – CBP 001126, P.R. CBP 001124 – CBP 001127 (Doc. 8.66 - Worker 16 Injuries Picture); C.R. CBP 001130 – CBP 001135, P.R. CBP 001131 – CBP 001136 (Doc. 8.68 - Worker 16 Involuntary Resignation Documents); C.R. CBP 001253, P.R. CBP 001261 (Doc. 8.72 - Worker 16 Uniform Picture); C.R. CBP 001255 – CBP 001260, P.R. CBP 001256 – CBP 001261( Doc. 8.73 - Worker 16 Workplace Pictures); C.R. CBP 001413, P.R. CBP 001414 (Doc. 8.78 - Worker 3 Injury Picture); C.R. CBP 001638, P.R. CBP 001639 (Doc. 8.85 - Worker 5 Friend Injury Picture #1); C.R. CBP 001640, P.R. CBP 001641 (Doc. 8.86 - Worker 5 Friend Injury Picture #2); C.R. CBP 002086, P.R. CBP 002087 (Doc. 8.103 - Picture of Kingtom Closure Notice); C.R. CBP 002088, P.R. CBP 002089 (Doc. 8.104 - Picture of Side of Building); C.R. CBP 002090; P.R. CBP 002091 (Doc. 8.105 - Worker Identification Badge Picture); C.R. CBP 004255, P.R. CBP 004256 (Doc. 8.112 - USG Email to FLD, October 17, 2024).

time employed by Kingtom.[21]  The photos depicted workplace injuries such as a severed finger, as well as other hazardous work conditions.[22]

On May 20, 2022, the AEC and the USW supplemented their March 3, 2022 forced labor allegation with additional information on Kingtom, including open-source information regarding Dominican Republic Ministry of Labor (DRMOL)'s inspections of Kingtom's facilities and the closure of Kingtom in 2022.[23]  The supplemental submission also included trade data related to Kingtom's imports into the United States.[24]  The supplemental submission did not provide any entirely new information but reinforced the evidence CBP had already gathered, further supporting the forced labor investigation.

FLD supplemented the above-referenced evidence with open-source research on Kingtom and its labor practices, reporting from DRMOL inspections, decisions from Dominican Republic Courts, and media reports on Kingtom.[25]  FLD also received updates from U.S. Embassy

---

[21] USG Report of Investigation, Doc. 8.16, C.R. CBP 000179 – CBP 000182, P.R. CBP 000180 – CBP.

[22] C.R. CBP 004638, P.R. CBP 01639 (Doc. 8.85 - Worker 5 Friend Injury Picture #1); C.R. CBP 001640 P.R., CBP 001641 (Doc. 8.86 - Worker 5 Friend Injury Picture #2.)

[23] Aluminum Extruders Council and United Steelworkers, Supplement to Petition to Exclude Aluminum Extrusions Manufactured "Wholly or in Part" by Forced Labor in the Dominican Republic by Kingtom Aluminio S.R.L., May 20, 2022, Doc. No. 8.101, C.R. CBP 002068 – CBP 002079, P.R. CBP 002073 – CBP 002075 (Supplemental Allegation).

[24] *See id.* at C.R. CBP 002072 – CBP 002074, P.R. CBP 002073 – CBP 002075.

[25] Eldia.com.do, Chinese Company Closed After Confirming Abusive Practices Against Employees, May 6, 2022, C.R. CBP 000001 – CBP 000007, P. R. CBP 000001 – CBP 000008; Acento.com.do, Chinese Aluminum Company Closed Due to Dangerousness and Abuses Against Dominicans, May 6, 2022, C.R. CBP 000008 – CBP 000010, P.R. CBP 000011; elDinero.com, Ministry of Labor Closes Company After Confirming Abusive Practices Towards Workers, May 10, 2022, C.R. CBP 000011 – CBP 000014, P.R. CBP 000012 – CBP 000015; elCaribe.com, Luis Miguel De Camps: Reform of the Code Must Address Pending Issues for Decades, May 11, 2022, C.R. CBP 000015 – CBP 000026, P.R. CBP 000016 – CBP 000027; La Radio es Ahora, Chinese Aluminum Company Closed, May 30, 2022, C.R. CBP 000027 – 000031, P.R. CBP 000028 – 000032; Arthur & Castillo Lawyers Dominican Republic, Dominican Free Zones Minimum Wage 2022, May 4, 2023, C.R. CBP 000032 – CBP 000035, P.R. CBP 000033 – 000036; Suprema Corte de Justicia, Boletin Judicial, October 2021, No, 1333, Year 112, at 4375-4386 Appeal No. 6, C.R. CBP 000087 –CBP 000094, P.R. CBP 000088 – CBP 000095; Suprema Corte de Justicia, Boletin Judicial, December 2021, No. 1331, Year 112, at 6320-6325 Appeal No. 83 C.R. CBP 000133 – CBP 000148, P.R. CBP 000134 – CBP 000149;  Ministry of Labor, National Wage Committee Increases the Wages of Workers in the Free Industrial Zone Sector by 21%, December 8, 2021, Doc. No. 8.8, C.R. CBP 000149 – CBP 000152, P.R. CBP 000150 – CBP 000153; Kingtomaluminio.com, accessed on January 24, 2022, Doc. No. 8.9, C.R. CBP 000166 –

officials in the Dominican Republic regarding the government's actions regarding company closure and additional information on Kingtom.[26]

### C. Analysis

Based on the information collected during the investigation, and as described further below, FLD found that Kingtom subjected past and current workers to forced labor within the meaning of 19 U.S.C. § 1307. Specifically, FLD determined that the evidence collected in its investigation supported the forced labor elements of "involuntariness" and "menace of penalty."

To determine whether labor amounts to forced labor—i.e., the work was performed involuntarily and under the menace of penalty—FLD utilized the 11 ILO indicators of forced labor as a guide to analyze the evidence on the record. FLD identified the following seven of the ILO's forced labor indicators at Kingtom's factory: abuse of vulnerability, deception, restriction of movement, physical and sexual violence, withholding of wages, intimidation and threats, and excessive overtime.[27] The evidence supporting each indicator is described in detail below.

<u>Abuse of Vulnerability</u>: The ILO defines Abuse of Vulnerability as " when an employer takes advantage of a worker's vulnerable position, for example, to impose excessive working hours or to withhold wages, that a forced labour situation may arise."[28] Worker accounts

---

CBP 000168, P.R. CBP 000167 – CBP 000169; Ministry of Labor, Mnistry of Labor Sanctions the Closure of the Company After Confirming Abusive Practices and Endangering the Lives of Workers, May 6, 2022, Doc. No. 8.20, C.R. CBP 000217 – CBP 000220, P.R. CBP 000218 – CBP 000221; Diario Libre, Ministry of Labor Paralyzes 11 Companies Due to "Imminent Danger" for Workers, July 25, 2024, Doc. 10, C.R. CBP 004273 – CBP 004280, P.R. CBP 004274 – CBP 004281; Accent, A Chinese Company Closed for Dangerous Work and Labor Violations Had Been Closed in 2022, July 26, 2024, Doc. 11, C.R. CBP 004281 – CBP 004293, P.R. CBP 004282 – CBP 004294.

[26] PA Officer in DR Email Update to CBP Attaché, June 20, 2024, Doc. 7, C.R. CBP 000037, P.R. CBP 000038; Email Chain Between FLD and CBP DR Attaché Re: KT Closure, April 2, 2023, Doc. No. 8.106, C.R. CBP 002091 – CBP 002096, P.R. CBP 002092 – CBP 002097; FLD and CBP DR Attaché Email Chain, Previous WRO and Kingtom Closure, April 4, 2023, Doc. 8.110, C.R. CBP 004247 – CBP 004250, P.R. CBP 004248 – CBP 004251.

[27] *See* Office of Trade, Issuance of Finding to Prohibit Aluminum Extrusions and Profiles Produced in the Dominican Republic by Kingtom Aluminio S.R.L. from Entry into the United States; 19 U.S.C. § 1307; 19 C.F.R. § 12.42, November 27, 2024, C.R. CBP 004308 – CBP 004309, P.R. CBP 004309 – CBP 004310.

[28] International Labour Organization, Forced Labour Indicator Booklet, at 5, available at: https://www.ilo.org/publications/forced-labour-indicator-booklet (last accessed October 29, 2025).

indicated that Kingtom leadership took advantage of workers' vulnerabilities by exploiting poverty, illegal immigration status, language barriers, and desperation for employment.[29] As a result, Dominican and Haitian workers accepted the abusive conditions imposed by Kingtom's leadership.[30]

Nine of the sixteen workers interviewed were of Haitian descent. Of these nine, seven workers admitted to being illegally present in the Dominican Republic or working without a visa while employed at Kingtom.[31] Moreover, both Haitian and Dominican workers reported that Kingtom leadership reviewed or made copies of workers' identity documents and thus was aware of their immigration status.[32]

Evidence also suggests that Kingtom's leadership exploited Haitian workers' illegal status and those workers' dependence on Kingtom. For example, Haitian workers reported they were treated much worse than their Dominican co-workers because of their illegal status, nationality, or lack of resources in country.[33] In addition, some workers reported physical abuse based on

---

[29] *See* Summary of Worker Interviews, Doc. 8.21, C.R. CBP 000221 – CBP 000226, P.R. CBP 000222 – CBP 000227.

[30] *See* id; *see also* Transcript of Interview with Worker 12, Doc. No. 8.53, C.R. CBP 000763, CBP 000765 – CBP 000766, P.R. CBP 000764, CBP 000766 – CBP 000767; Transcript of Interview with Worker 11, Doc. 8.49, C.R. CBP 000664, P.R. CBP 000665; Transcript of Interview with Worker 9, Doc. 8.99, C.R. CBP 001995 – CBP 001997, P.R. CBP 001996 – CBP 001998; Transcript of Interview with Worker 7, Doc. 8.94, C.R. CBP 001919, P.R. CBP 001920; Transcript of Interview with Worker 5, Doc. 8.89, C.R. CBP 001725 – CBP 001728, P.R. CBP 001726 – CBP 001729; Transcript of Interview with Worker 4, Doc. 8.84, C.R. CBP 001581; P.R. CBP 001582; Transcript of Interview with Worker 13, Doc. 8.55, C.R. CBP 000911 – CBP 000914, P.R. CBP 000912 – CBP 000916.

[31] HSI, Email to FLD, October 17, 2024, Doc. 8.112, C.R. CBP 004255, P.R. CBP 004256. *See generally* Summary of Worker Interviews, Doc. 8.21, C.R. CBP 000222 – CBP 000223, CBP 000224 – CBP 000226, P.R. CBP 000223 – CBP 000224, CBP 000225 – CBP 000227 (Worker 2, Worker 3, Worker 11, Worker 12, Worker 15).

[32] *See* Summary of Worker Interviews, Doc. 8.21, C.R. CBP 000222, CBP 000224 – CBP 000226, P.R. CBP 000223, CBP 000225 – CBP 000227 (Worker 2, Worker 7, Worker 9, Worker 11, Worker 13).

[33] *See id.* at C.R. CBP 000222-226, P.R. CBP 000223 – CBP 000227 (Worker 4, Worker 2, Worker 3, Worker 4, Worker 9, Worker 10, Worker 12, Worker 15, Worker 16).

their nationality and legal status.[34] The interviewed workers also claimed that Kingtom leadership targeted Haitians because they would not retaliate given their lack of understanding of the Dominican law.[35] One worker stated that Kingtom preferred to hire undocumented Haitians over Dominicans, due to Haitian workers' fear of company management, which enabled the entity to control them.[36] For example, during a certain period, Kingtom leadership made Haitians pay for food but gave Dominicans free food.[37] Workers interviewed also indicated that Kingtom regularly paid for medical care for Dominicans who suffered work place injuries and gave them health insurance, but did not do the same for Haitian workers.[38]

Worker accounts further indicated that even the Dominican workers at Kingtom were also vulnerable because of their impoverished socioeconomic status and fear of unemployment. Dominican workers reported unfair treatment by Kingtom leadership.[39] Workers reported that Kingtom took advantage of workers' fear of unemployment in the Dominican Republic and that Kingtom imposed fines or terminated workers if they did not meet unreasonable demands of employment (such as working seven days a week or bathroom breaks for longer than one to two

---

[34] *See id.* at C.R. CBP 000222, CBP 000224, P.R. CBP 000223, CBP 000225 (Worker 1 (describing hitting of Haitian but not Dominican workers), Worker 9 (describing physical assault from Kingtom leadership based on nationality)).

[35] *See id.* at C.R. CBP 000223, CBP 000226, P.R. CBP 000222, CBP 000227 (Worker 4, Worker 16)).

[36] Transcript of Interview with Worker 14, Doc. 858, at C.R. CBP 000960 – CBP 000963, P.R. CBP 000961 – CBP 000964, C.R. CBP 000998 – CBP 000999, P.R. CBP 000999 – CBP 001000.

[37] *See* Summary of Worker Interviews, Doc. 8.21, C.R. CBP 000221, CBP 000224 – CBP 000226, P.R. CBP 000222, CBP 000225 – CBP 000227 (Worker 1, Worker 2, Worker 10, Worker 12, Worker 13, Worker 15); Transcript of Interview with Worker 15 Part 1, Doc. 8.61, at C.R. CBP 001030 – CBP 001033, P.R. 001031-1034; Transcript of Interview with Worker 15 Part 2, Doc. 8.63, at C.R. CBP 001082, P.R. 001083; Transcript of Interview with Worker 1, Part 2, Doc. 8.40, at C.R. CBP 000397 – CBP 000401, P.R. CBP 000398 – CBP 000402.

[38] *See* Summary of Worker Interviews, Doc. 8.21, at C.R. CBP 000221, CBP 000224, CBP 00022, P.R. CBP 000222, CBP 000225, CBP 000227 (Worker 1, Worker 2, Worker 10, Worker 15, Worker 16).

[39] Transcript of Interview with Worker 15, Doc. No. 8.61, at C.R. CBP 001030, P.R. CBP 001031; Transcript of Interview with Worker 15, Part 2, Doc. No. 8.63, at C.R. CBP 001082-CBP 001084, P.R. CBP 001083 – CBP 001085, and C.R. CBP 001091 – CBP 001093, P.R. CBP 001092 – CBP 001093; Transcript of Interview with Worker 11, Doc. 8.49, at C.R. CBP 000690 – CBP 000693, P.R. CBP 000691 – CBP 000694; Transcript of Interview with Worker 12, Doc. 8.53, at C.R. CBP 000789 – CBP 000790, P.R. CBP 000789 – CBP 000790.

minutes).[40]  Kingtom workers interviewed by DHS accepted any conditions imposed by Kingtom because they needed employment.[41]  Thus, as outlined above, the evidence establishes the presence of the ILO indicator of "abuse of vulnerability."

Deception:  The ILO defines the indicator of "deception" as "failure to deliver what has been promised to the worker, either verbally or in writing.[42]  Workers reported that Kingtom leadership made promises to workers about payment of wages, when they would be paid, the work they would need to perform, work conditions, rules, fines, contracts, employment documentation, time off, vacation days, bonuses, and/or healthcare but these promises were not fulfilled.[43]  Workers reported that:

- Workers did not receive the salary they were originally offered or agreed to.
- Kingtom offered pay progressions or pay raises in exchange for longer employment but failed to pay them.
- Workers were fined but these fines were not set out in contracts.
- Kingtom leadership told workers they would receive vacation leave based on company policy but did not allow them to take vacation leave.
- Workers received wage deductions for healthcare that Kingtom did not provide.
- Kingtom either did not pay or underpaid their workers for entitled settlements, liquidations, or severances.[44]

---

[40] *See* Summary of Worker Interviews, Doc. 8.21, at C.R. CBP 000223, P.R. CBP 000224 Worker 3, Worker 4).

[41] *See id.* at C.R. CBP 000222 – CBP 000224, P.R. CBP 000223 – CBP 000225 (Worker 2, Worker 3, Worker 4, Worker 5, Worker 7, Worker, 9, Worker 10).

[42] International Labour Organization, Forced Labour Indicator Booklet, at 7, available at: https://www.ilo.org/publications/forced-labour-indicator-booklet (last accessed October 29, 2025).

[43] Transcript of Interview with Worker 4, Doc. 8.84, at C.R. CBP 001552 – CBP 001555, CBP 002009 - CBP 002012, CBP 002035 –CBP 002036, P.R. CBP 001553 – CBP 001556, CBP 002010 - CBP 002013, CBP 002036 – CBP 002037;  Transcript of Interview with Worker 5, Doc. 8.89, at C.R. CBP 001711 – CBP 001713, P.R. CBP 001712 – CBP 001714; Transcript of Interview with Worker 14, Doc. 8.58 at C.R. CBP 000970, CBP 000978 – CBP 000981, P.R. CBP 000971, CBO000979 – CBP 000982; Transcript of Interview with Worker 15, Doc. 8.61, at C.R. CBP 001024 – CBP 001025, CBP 001034 – CBP 001035, P.R. CBP 001025 – CBP 001026, CBP 001035 – CBP 001036; Transcript of Interview with Worker 13, Doc. 8.55 at C.R. CBP 000848 – CBP 000849, P.R. CBP 000849 – CBP 0000850; Transcript of Interview with Worker 1, Doc. 8.38, at C.R. CBP 000303 – CBP 000305, P.R. CBP 000304 – CBP 000306;  Transcript of Interview with Worker 7, Doc. 8.94, at C.R. CBP 001945 – CBP 001946, P.R. CBP 001946 – CBP 001947; Transcript of Interview with Worker 9, Doc. 8.99, C.R. CBP 002053 – CBP 002054, P.R. CBP 002054 – CBP 002055; *See generally* Summary of Worker Interviews, Doc. 8.31, C.R. CBP 000258 – CBP 000264, P.R. CBP 000259 – CBP 000265.

[44] *Id.* According to the DRMOL, after completion of three months of employment, workers are entitled to receive a settlement, liquidation, or severance upon termination or resignation.

Additionally, workers widely reported that Kingtom leadership deceived them during the COVID-19 pandemic.  Workers reported that for a time during the COVID-19 pandemic, Kingtom leadership required workers to live and work at the Kingtom factory 24 hours a day, seven days a week.  During this time, which was reported to have lasted between two and a half months to seven and a half months, workers were physically barred from leaving the factory.[45]  While personal accounts of duration, abuse, and conditions varied among workers, their accounts of improper working conditions were consistent.  To convince workers into living and working at the facility, Kingtom offered bonuses or additional days off; however, Kingtom did not pay bonuses and did not allow workers to take the time off. [46]  Thus, evidence establishes the presence of the ILO indicator of "Deception."

Restriction of Movement:  According to the ILO, when "workers are not free to enter and exit the work premises, subject to certain restrictions which are considered reasonable, this represents a strong indicator of forced labour."[47]  Workers at Kingtom reported they experienced or observed restricted movement while employed at Kingtom.[48]  Workers traveled from their homes to work in the Kingtom factory daily.  During the workday, workers were not allowed to

---

[45] *See id.*

[46] *Id*.

[47] International Labour Organization, Forced Labour Indicator Booklet, at 9, available at:  https://www.ilo.org/publications/forced-labour-indicator-booklet (last accessed October 29, 2025).

[48] *See generally* Summary of Worker Interviews, Doc. 34, C.R. CBP 000271 – CBP 000277, P.R. CBP 000273 – CBP 000278.  *See also* Transcript of Interview with Worker 2, Doc. 8.75, at C.R. CBP 001345 – CBP 001349. P.R. CBP 001346 – CBP 001350; Transcript of Interview with Worker 10, Doc. 8.44, at C.R. CBP 000598 – CBP 000600, P.R. CBP 000599 – CBP 000601; Transcript of Interview with Worker 3, Doc. 8.81, at C.R. CBP 001497 – CBP 001504, P.R. CBP 001498 – CBP 001505; Transcript of Interview with Worker 13, Doc. 8.55, at C.R. CBP 000919 – CBP 000921, P.R. CBP 000920 – CBP 000922 (explaining that the doors were locked while the workers were in the facility); Transcript of Interview with Worker 5, Doc. 8.89, at  Transcript, at C.R. CBP 001736 – CBP 001738, P.R. CBP 0001737 – CBP 001839; Transcript of Interview with Worker 7, Doc. 8.94, at C.R. CBP 001950 – CBP 001954, P.R. CBP 001951 – CBP 001955 (describing that there were armed guards at the factory who would not allow the workers to leave).

leave the Kingtom premises without punishment.  Kingtom leadership prohibited workers from leaving work posts, going out to lunch, or going to the bathroom.[49]  Specifically, the workers reported the following:

- Fines related to leaving a work post without supervisor permission.
- Termination for physically leaving the factory without approval.
- Fines ranging from $800 to $1,000 Dominican Pesos (DOP) for physically leaving the factory without approval.
- A prohibition against going outside of the factory to purchase or receive lunch.[50]

Additionally, Kingtom employed armed security guards at its doors to physically bar workers from leaving the factory during work hours and workers need to receive a permit by Kingtom's leadership to leave.[51]  Thus, the above evidence establishes the ILO indicator of "Restriction of Movement."

Physical and Sexual Violence: According to the ILO, "as violence is not acceptable as a disciplinary measure under any circumstances, it is a very strong indicator of forced labor."[52] Workers reported consistent physical violence and occasional accounts of sexual violence at

---

[49] *See* Summary of Worker Interviews, Doc. 34, C.R. CBP 000271 – CBP 000277, P.R. CBP 000273 – CBP 000278

[50] *See id.*

[51] *Id.*

[52] International Labour Organization, Forced Labour Indicator Booklet, at 13, available at:   https://www.ilo.org/publications/forced-labour-indicator-booklet (last accessed October 29, 2025).

Kingtom.[53]  Workers described that Kingtom management hit, kick, and beat them.[54]  They also

reported being struck with metal objects by Kingtom management.[55]  Moreover, two workers

reported that Kingtom management perpetrated sexual violence.[56]  The following was reported

by the workers interviewed:

- Worker 1 stated, "They also kick them [workers].  They hit them with their feet.
  They hit them with helmets."[57]
- Worker 1 stated that "a Chinese man [Kingtom leadership] put a hot iron on him [a
  worker] pressed."[58]

---

[53] Summary of Worker Interviews, Doc. 8.21, C.R. CBP 000221 – CBP 000226, P.R. CBP 000222 – CBP 000227; *See* Summary of Worker Interviews, Doc. 8.33, C.R. CBP 000268 – CBP 000271, P.R. CBP 000269 – CBP 000272. *See* Transcript of Interview with Worker 1, Doc. 8.38, at C.R. CBP 000340 – CBP 000344, P.R. CBP 000341 – CBP 000345; Transcript of Interview with Worker 1, Part 2, Doc. 8.40 at C.R. CBP 000410 – CBP 000412, CBP 000438 – CBP 000444, P.R. CBP 000411 – CBP 000413, CBP 000439 – CBP 000445; Transcript of Interview with Worker 2, Part 1, Doc. 8.75, at C.R. CBP 001333, CBP 001349 – CBP 001356, P.R. CBP 001334, CBP 001350 – CBP 001357; Transcript of Interview with Worker 3, Doc. 8.81, at C.R. CBP 001458 – CBP 001467, CBP 001508 – CBP 001510, P.R. CBP 001459 – CBP 001468, CBP 001509 – CBP 001511;  Transcript of Interview with Worker 4, Doc.8.84, at C.R. CBP 001556 – CBP 001558, CBP 001587 – CBP 001589, CBP 001622 – CBP 001628, P.R. CBP 001588 – CBP 001590, CBP 001623 – CBP 001628; Transcript of Interview with Worker 5, Doc. 8.89, at C.R. CBP 001715 –CBP 001724, P.R. CBP 001716 – CBP 001725; Transcript of Interview with Worker 6, Doc. 8.91, at C.R. CBP 001814 – CBP 001818, CBP 001845 – CBP 001847, P.R. CBP 001815 – CBP 001819, CBP 001846 – CBP 001848;  Transcript of Interview with Worker 7, Doc. 8.94 at C.R. CBP 001926 – CBP 001938, CBP 001950 – CBP 001955, P.R. CBP 001927 – CBP 001939, CBP 001951 – CBP 001956. Transcript of Interview with Worker 9, Doc. 8.99 at C.R. CBP 002032 – CBP 002045, P.R. CBP 002033 – CBP 002046;  Transcript of Interview with Worker 10, Doc. 8.44 at C.R. CBP 000515 – CBP 000517, P.R. CBP 000516 – CBP 000518;  Transcript of Interview with Worker 11, Doc. 8.49, at C.R. CBP 000649 – CBP 000653, P.R. CBP 000650 – CBP 000654; Transcript of Interview with Worker 12, Doc. 8.53, at C.R. CBP 000794 – CBP 000795, CBP 000814 – CBP 000816, P.R. CBP 000795 – CBP 000796, CBP 000815 – CBP 000817; Transcript of Interview with Worker 13, Doc. 8.55, at C.R. CBP 000899 – CBP 000904, P.R. CBP 000900 – CBP 000905; Transcript of Interview with Worker 14, Doc. 8.58 at C.R. CBP 000973 – CBP 000976, P.R. CBP 000974 – CBP 000975; Transcript of Interview with Worker 15, Doc. 8.61, at C.R. CBP 001023 – CBP 001024, P.R. CBP 001024 – CBP 001025.

[54] *See* Summary of Worker Interviews, Doc. 8.33, C.R. CBP 000268 – CBP 000271, P.R. CBP 000269 – CBP 000272.

[55] *See id.*; Transcript of Interview with Worker 4, Doc. 8.84, C.R. CBP 001588 – CBP 001589, P.R. CBP 001589 – CBP 001590; Transcript of Interview with Worker 9, Doc. 8.99, C.R. CBP 002033 – CBP 002035, P.R. CBP 002034 – CBP 002036.

[56] Summary of Worker Interviews, Doc. 21, C.R. CBP 000221 – CBP 000226, P.R. CBP 000222 – CBP 000227; Transcript of Interview with Worker 12, Doc. 8.53, C.R. CBP 000814 – CBP 000816, P.R. CBP 000815 – CBP 000817;

[57] Summary of Worker Interviews, Doc. 8.21, C.R. CBP 000221 – CBP 000226, P.R. CBP 000222 – CBP 000227; Transcript of Interview with Worker 1, Part 1, Doc. 8.38, at C.R. CBP 000340 – CBP 000342, P.R. CBP 000341 – CBP 000343; Transcript of Interview with Worker 1, Part 2, at C.R. CBP 000438, P.R. CBP 000429.

[58] C.R. CBP 000341

- Worker 4 reported Kingtom leadership hitting workers with everything within their reach, including metal profiles.[59]
- Worker 6 stated, "If they send you to get that, that water bottle [and] you don't understand …they even hit you, as if you are a slave, if you don't understand."[60]
- Worker 12 reported that Kingtom leadership harassed, grabbed employees' buttocks all the time and pinched workers' nipples.  He personally endured this.  Other workers in his department experienced this abuse.[61]

Thus, above evidence establishes the existence of ILO indicator "Physical and Sexual Violence."

Withholding of Wages:  According to the ILO, "when wages are systematically and deliberately withheld as a means to compel the worker to remain, and deny him or her of the opportunity to change employer, this points to forced labour."[62] Workers widely reported that Kingtom consistently withheld wages during each pay period.[63]  Kingtom workers reported making less than the required Dominican minimum wage, particularly after fines and deductions.[64]  Workers would be fined for not coming to work during their mandated seven days a week, twelve hours a day, work week.[65]  Kingtom withheld wages by imposing fines and

---

[59] Transcript of Interview with Worker 4, Doc. 8.84, C.R. CBP 001588 – CBP 001589, P.R. CBP 001589 – CBP 001590; *See generally,* Summary of Worker Interviews, Doc. 8.33, C.R. CBP 000269 – CBP 000271, P.R. CBP 000270 – CBP 000272.

[60] Transcript of Interview with Worker 6, Doc. 8.91, C.R. CBP 001814, P.R. CBP 001815.

[61] Transcript of Interview with Worker 12. Doc. 8.53, at C.R. CBP 000814 – CBP 000816, P.R. CBP 000815 – CBP 000817.

[62] International Labour Organization, Forced Labour Indicator Booklet, at 19, available at: https://www.ilo.org/publications/forced-labour-indicator-booklet (last accessed October 29, 2025).

[63] *See generally*, Summary of Worker Interviews – Withholding of Wages, Doc. 8.36, C.R. CBP 000285 – CBP 000289, P.R. CBP 000286 – CBP 000290.

[64] Transcript of Interview with Worker 16, Doc. 8.71, C.R. CBP 0001244 – CBP 001245, P.R. CBP 001245 – CBP 001246. Transcript of Interview with Worker 4, Doc. 8.84, C.R. CBP 001603 – CBP 001605, P.R. CBP 001604 – CBP 001606.

[65] Transcript of Interview with Worker 7, Doc. 8.94, C.R. CBP 001899 – CBP 001900, P.R. CBP 001900 – CBP 001901; *see also*, Summary of Worker Interviews, Withholding of Wages, Doc. 8.36, C.R. CBP 000284 – CBP 000289, P.R. CBP 000285 – CBP 000290.

penalties for arbitrary reasons, including but not limited to going to the bathroom without permission, sitting down, and forgetting to clock in and out.[66]

Furthermore, in October and December of 2021, the Santo Domingo Labor Court ruled in favor of two former Kingtom workers who filed claims against Kingtom for lost wages.[67]  These judgments ordered worker reinstatement, and payment of lost wages and damages.[68]  In another case, the court in the Dominican Republic declared the "eviction" of the worker null and void, ordered the reinstatement of the worker, and ordered Kingtom to pay the amounts for wages not paid from the date of the eviction until the execution of the judgment and to pay reparation for damages.[69]  CBP is unaware whether Kingtom complied with these judgments.  Thus, CBP finds that conditions for ILO indicator "withholding of wages" exists.

Intimidation and Threats: According to ILO, in addition to threats of physical violence, other common threats used against workers include denunciation to the immigration authorities, loss of wages or access to housing or land, sacking of family members, further worsening of working conditions or withdrawal of "privileges" such as the right to leave the workplace.[70] Workers reported accounts of threats or intimidation from Kingtom leadership such as threats of terminating employment, withholding wages, or physical abuse (some of which were carried

---

[66]  Transcript of Interview with Worker 5, Doc. 8.89, C.R. CBP 001682 – CBP 001683, P.R. CBP 001683 – CBP 001684 (describing fines for being late).

[67] Dominican Republic, Supreme Court, Judicial Bulletin, No. 1333, Year 112, at 4375-4386, Doc. 8.5, C.R. CBP 000087 – CBP 000094, P.R. CBP 000088 – CBP 000095; Dominican Republic, Supreme Court, Judicial Bulletin, No. 1331, Year 112, at 6320-6325, Doc. 8.7, C.R. CBP 000133 – CBP 000148, P.R. CBP 000134 – CBP 000149.

[68] *Id.*

[69] *Id.*

[70] International Labour Organization, Forced Labour Indicator Booklet, at 15, available at: https://www.ilo.org/publications/forced-labour-indicator-booklet (last accessed October 29, 2025).

out).[71]  FLD finds that Kingtom leadership used threats and intimidation to coerce vulnerable workers into accepting unfavorable terms and conditions of employment.[72]

Interviewees reported that Kingtom management threatened to fire workers if they did not comply with orders from their supervisors, even unreasonable demands such as working uncompensated overtime, not speaking with DRMOL personnel, or not missing a single day of work.[73]  Workers depended on their income and employment at Kingtom to survive in the Dominican Republic, to provide food for their families, or to avoid deportation.[74]  For workers, termination also meant they might not receive their entitled settlements, liquidations, or severances required by Dominican law.[75]

Workers witnessed Kingtom leadership follow through on these threats.  Specifically, Kingtom leadership regularly threatened to take workers' wages away if they did not comply with orders, and there were many accounts in which Kingtom leadership fined employees and withheld their wages.[76]  Additionally, Kingtom routinely physically abused to coerce workers into working harder or complying with specific demands.[77]

Examples of threats and intimidation include, but are not limited to:

---

[71] *See* Summary of Worker Interviews, Threats and Intimidation, Doc. 8.35, C.R. CBP 000278 – CBP 000283, P.R. CBP 000279 – CBP 000284.

[72] *Id.*

[73] *Id.*

[74] *See* Summary of Worker Interviews, Abuse of Vulnerability, Doc. 8.21, C.R. CBP 000221 – CBP 000226, P.R. CBP 000222 – CBP 000227.

[75]  *See* Summary of Worker Interviews, Withholding of Wages, Doc. 8.37, at C.R. CBP 000287, P.R. CBP 000288. According to the DRMOL, after completion of three months of employment, workers are entitled to receive a settlement, liquidation, or severance upon termination or resignation.

[76] *Id.* at C.R. CBP 000285 – CBP 000287, P.R. CBP 000286 – CBP 000288.

[77] *See generally*, Summary of Worker Interviews, Physical and Sexual Violence, Doc. 8.33, C.R. CBP 000268 – CBP 000271, P.R. CBP 000269 – CBP 000272.

- Worker 1 reported that leadership had taken their money and wages away at payroll without any explanation.  Workers did not complain out of fear of termination.[78]  Worker 1 reported accounts of workers having to randomly give money to Kingtom leadership from their salary or face termination.  For example, if Kingtom leadership told a worker to give them RD$500 DOP or buy them a drink, the worker needed to comply.[79]
- Worker 4 was threatened with termination if he missed a day of work.  He considered gathering a group to complain to the Kingtom office, but he stated that "nobody wanted to [complain] because they were scared."[80]
- Worker 9 reported that "if he [Kingtom leadership] slaps you, you make a complaint about that Chinese person, you are fired.  Or if he throws a punch and you go like this [move in self-defense], you are fired.  You can't defend yourself; you have to let them hit you."[81]
- Worker 16 described multiple accounts of fines being threatened for various offenses.  The worker asserted that they do this to get workers to work "faster."[82]

Thus, CBP finds that conditions for ILO Indicator "Threats and Intimidation" exist at Kingtom's facility.

Excessive Overtime:  According to the ILO, "[a]s a rule of thumb, if employees have to work more overtime than is allowed under  national law, under some form of threat (e.g. of dismissal) or in order to earn at least the minimum wage, this amounts to forced labour."[83] Kingtom Workers report excessive overtime, in violation of Dominican Republic labor laws.[84] The evidence demonstrates that Kingtom workers were required to work every day of the week,

---

[78] Transcript of Interview with Worker 1, Part 2, Doc. 8.40, at C.R. CBP 000431 – CBP 000435, P.R. 000432 – CBP 000436.

[79] *Id*. at C.R. CBP 000395 – CBP 000397, P.R. CBP 000396 – CBP 000398.

[80] Transcript of Interview with Worker 4, Doc. 8.84, at C.R. CBP 001567 – CBP 0001573, P.R. CBP 001568 – CBP 001574.

[81] Transcript of Interview with Worker 9, Doc. 8.99, at C.R. CBP 002035 – CBP 002036, P.R. CBP 002035 – CBP 002036.

[82] Transcript of Interview with Worker 16, Doc. 8.71, C.R. CBP 001198 – CBP 001201, P.R. CBP 001199 – CBP 001202.

[83] International Labour Organization, Forced Labour Indicator Booklet, at 25, available at: https://www.ilo.org/publications/forced-labour-indicator-booklet (last accessed October 29, 2025).
[84] *See generally* Summary of Worker Interviews, Excessive Overtime, Doc. 8.32, C.R. CBP 000266 – CBP 000267, P.R. CBP 000267 – CBP 000268.

twelve hours a day, without any days off.[85]  Dominican Republic labor laws limit the workday to

eight hours and the workweek to 44 hours, with exceptions allowing additional hours to prevent

serious disruptions, provided overtime does not exceed 80 hours per trimester for extraordinary

workloads.[86]  Overtime pay must be at least 35% higher than regular hourly rates for hours

worked beyond the daily limit and up to 68 hours per week, and at least 100% higher for hours

exceeding 68 per week.[87]  Employers are required to display notices explaining the reasons for

extended workdays and outlining applicable overtime rates.[88]  Based on Dominican Republic

labor laws, workers at Kingtom were involuntarily working excessive overtime and not paid for

this overtime in accordance with local law.  Thus, CBP finds that conditions for ILO indicator

"Excessive Overtime" exists.

 As the above analysis of each indicator details, Kingtom submitted its employees to

situations that align with multiple ILO indicators of forced labor.  Existence of deception,

restriction of movement, and excessive overtime indicators suggest that the workers were not

rendering their labor voluntarily.  The evidence of physical and sexual violence, withholding of

wages, and intimidation and threats indicators demonstrate that the workers were performing

labor under the menace of penalty.

---

[85] *See* Transcript of Interview with Worker 1, Part 1, Doc. 8.38, at C.R. CBP 000316 – CBP 000328, CBP 000345, P.R. CBP 000317 – CBP 000329, CBP 000346; Transcript of Interview with Worker 2, Part 2, Doc. 8.77, at C.R. CBP 001395 – CBP 001397, P.R. CBP 001396 – CBP 001398;  Transcript of Interview with Worker 3, Doc. 8.81 at C.R. CBP 001455 – CBP 001459, CBP 001477, CBP 001487, P.R. CBP 001456 – CBP 001460, CBP 001478, CBP 001488;  Transcript of Interview with Worker 4, Doc. 8.84 at C.R. CBP 001542 – CBP 001544, P.R. CBP 001543 – CBP 001545;  Transcript of Interview with Worker 10, Doc. 8.44, at C.R. CBP 000500 – CBP 000502, CBP 000522, P.R. CBP 000501 – CBP 000503, CBP 000523;  Transcript of Interview with Worker 11, Doc. 8.49 C.R. CBP 000633 – CBP 000635, P.R. CBP 000634 – CBP 000636; Transcript of Interview with Worker 15, Part 2, Doc. 8.63, C.R. CBP 001061, P.R. CBP 001062.

[86] International Labour Organization, Travail Legal Databases, Dominican Republic, Working Time 2011, Doc. 8.107, C.R. CBP 002098 – CBP 0020103, P.R. CBP 002099 – CBP 002104.

[87] *Id*.

[88] *Id*.

### D. Analysis of Remediation

FLD looks for evidence of remediation during its investigations to ensure that the basis of CBP's decision is current factual information reflective of actual conditions at a company at the time the decision is made. Effective remediation means that a company has taken steps to identify, correct, and prevent conditions of forced labor with the active participation of workers. However, FLD has not found sufficient evidence, as outlined below, that Kingtom has taken any steps to identify, correct, or prevent conditions of forced labor.

Kingtom was sanctioned for closure twice by the DRMOL due to labor violations and unsafe working conditions.[89] The first closure occurred on May 6, 2022, following an inspection composed of several visits to the factory that revealed significant deficient work conditions, including practices that endangered the lives of workers.[90] DRMOL reported that "each time the company was inspected, it presented resistance, making it impossible to carry out the investigation," which ultimately "required the support of the public force."[91] The company reopened approximately two weeks later according to U.S. Embassy officials in the Dominican Republic.[92] FLD is not satisfied that two weeks is sufficient time to implement meaningful remediation of forced labor practices, because addressing such issues requires comprehensive

---

[89] PA Officer in DR Email Update to CBP Attaché, Inspections, June 20, 2024, Doc. 7, C.R. CBP 000037, P.R. CBP 000038; CBP Attaché, FLD and CBP DR Attaché Email Chain Re. Kingtom Closure, April 2, 2023, Doc. 8.106, C.R. CBP 002091 – CBP 002096, P.R. CBP 002092 - CBP 0020988; FLD and CBP DR Attaché Email Chain, previous WRO and Kingtom Closure, April 4, 2023, Doc. 8.110, C.R. CBP 004247 – CBP 004250, P.R. CBP 004248 – CBP 004251; Ministry of Labor, Ministry of Labor Sanctions the Closure of the Company After Confirming Abusive Practices and Endangering the Lives of Workers, May 6, 2022, Doc. 8.20, C.R. CBP 000217 – CBP 000220, P.R. CBP 000218 – CBP 000221.

[90] Ministry of Labor, Ministry of Labor Sanctions the Closure of the Company After Confirming Abusive Practices and Endangering the Lives of Workers, May 6, 2022, Doc. 8.20, C.R. CBP 000217 – CBP 000220, P.R. CBP 000218 – CBP 000221.

[91] *Id.*

[92] CBP Attaché, FLD and CBP DR Attaché Email Chain KT Closure, April 2, 2023, Doc. 8.106, C.R. CBP 002091, P.R. CBP 002092.

audits, systemic changes in employee policies and procedures, and the implementation of sustainable, long-term solutions to ensure compliance, including employee grievance mechanisms.

The second sanctioned closure of the factory was reported on July 25, 2024.[93] Inspectors found ongoing issues such as violations of the Dominican Republic labor code related to minimum wages, overtime, absence of a safety and health committee, weekly rest, non-payment of vacation, lack of vacation time, and excessive working hours.[94]   The Ministry's findings led to the suspension of Kingtom's activities, citing "imminent danger" to the health and safety of its workers.[95]

It is evident that Kingtom has been on notice of improper work conditions for years but continues to be the subject of DRMOL scrutiny.  These local authority investigations and even legal cases brought by workers appear to not have changed the overall conditions at Kingtom.

### III.    IMPORTS

Kingtom has a direct supply chain from the Dominican Republic to the United States.[96] FLD analyzed Automated Targeting System – Cargo Trend Analysis data and identified that Kingtom aluminum extrusions or profile products import into the United States.[97]

---

[93] Diario Libre, Ministry of Labor Paralyzes 11 Companies Due to "Imminent Danger" for Workers, July 25, 2024, C.R. CBP 004273 – CBP 004280, P.R. CBP 004274 – CBP 004281.

[94] C.R. CBP 004273 – CBP 004280, P.R. CBP 004274 – CBP 004281 (DiarioLibre, Ministry Paralyzes 11 Companies "Imminent Danger" Kingtom Closed, July 25, 2024 (Doc. 10)).

[95] Id.

[96] Allegation Assessment at C.R. CBP 000042 – CBP 000046, P.R. CBP 000043 – CBP 000047.

[97] Id.

## IV.    CONCLUSION

Upon review of the evidence on the administrative record, CBP finds that there is sufficient evidence that work at Kingtom was involuntary and done under the menace of penalty, meeting the definition of forced labor under 19 U.S.C. § 1307 and warranting a finding under 19 C.F.R. 12.42(f) and that the aluminum extrusions produced by forced labor at Kingtom's facilities are being or likely to be imported into the United States.

/s/ _____

Brian M. Hoxie
Director, Forced Labor Division
Trade Remedy Law Enforcement Directorate
Office of Trade
U.S. Customs and Border Protection

December 19, 2025