UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KINGTOM ALUMINIO S.R.L.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; RODNEY SCOTT, Commissioner, U.S. Customs and Border Protection,<br><br>Defendants,<br><br>and<br><br>ALUMINUM EXTRUDERS COUNCIL; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION,<br><br>Defendant-Intervenors. | Court No. 24-00264 |

**DEFENDANTS' SUPPLEMENTAL SUBMISSION**

Pursuant to the Court's November 5, 2026 order, ECF No. 124, and the emails from Mr. Jason Chien of November 5 and 6, 2026, defendants (the Government) provide the following supplemental submission in support of the Government's response to plaintiff's comments on the remand redetermination.

During oral argument, which took place on November 5, the Court asked the parties to discuss the relevance of a certain case from the U.S. Court of Appeals for the Second Circuit. When the Court first posed the question, we believed that the Court was asking about *INS v. Cardoza Fonseca*, 480 U.S. 421 (1987), a case with which counsel for the Government was not familiar. Mr. Chien, in an email dated November 6, 2026, clarified that the case the Court was referencing was *Velez v. Sanchez*, 693 F.3d 308, 320 (2d Cir. 2012). This case was addressed at oral argument and in the Government's written submission. ECF Nos. ECF No. 48, 49, 100, 101. We include a short discussion here as to the relevance of this case.

The *Velez* case, as well as certain other cases cited by plaintiff, such as *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1013-14 (S.D. Ind. 2007), are not directly on point because they discuss the application of the Alien Tort Statute (ATS), a vastly different statute with a different purpose. The ATS is a statute that provides federal court jurisdiction over a tort claim brought by a foreign national where actions are "committed in violation of the law of nations or a treaty of the United States." *See Velez*, 693 F.3d at 316 (quoting 28 U.S.C. § 1350); *Aragon v. Che Ku*, 277 F. Supp. 3d 1055 (D. Minn. 2017) (applying ATS). Courts have determined that one of the international norms covered by the ATS is forced labor. *Velez*, 693 F.3d at 320-22. 19 U.S.C. § 1307 requires defendants to directly consider whether there is a sufficient basis to believe that merchandise is made in whole or in part with "forced labor" such that it should not be permitted entry into the United States. Since the ATS case law utilizes the International Labour Organization (ILO) Convention's Article 29 as a benchmark for what constitutes forced labor under international law and ILO Article 29 defines forced labor identically to 19 U.S.C. § 1307, these cases provide the Court with insight into how forced labor may be interpreted under § 1307. In addition, the ATS cases identify factual scenarios that may reasonably meet the definition of forced labor.

In *Velez,* for example, the Second Circuit referenced the 2005 ILO Report, and ILO guidance as a starting point in evaluating forced labor. *Id.*, 693 F.3d at 320. The *Velez* Court noted specifically that menace of any penalty, as used in the ILO's definition of forced labor and in 19 U.S.C. § 1307 "does not necessarily need to be a physical penalty but can include credible threats of financial penalties, denunciation to immigration authorities and deportation." 693 F.3d at 321 (citing 2005 ILO Report). And, with respect to whether labor is "forced," the *Velez* Court further notes that labor can be "'forced' if it takes place in a 'climate of fear' in which consent is impossible, even if the victim is not threatened directly with any penalty." *Id.; see also Aragon*, 277 F. Supp. 3d 1068-69 (relying on the Federal Circuit's decision in *Velez*, which held that "menace of penalty . . . can include credible threats of financial penalties, denunciation to immigration authorities and deportation" and further held that "forced labor can occur in a 'climate of fear' without any express threat of penalty.")

The decision in *Bridgestone* is similarly helpful in analyzing forced labor and similarly references the same 2005 ILO Report, to identify facts that often indicate lack of consent (or lack of voluntariness) and when work is being performed under "menace of penalty." Specifically, as the Court noted, facts that often indicate a lack of consent include physical confinement in the work location, "psychological compulsion, *i.e.* an order to work backed up by a credible threat of a penalty for non-compliance," deception or false promises regarding types and terms of work, withholding of wages and retention of identity documents. *Bridgestone,* 492 F. Supp. 2d at 1013 (citing 2005 ILO Report). Moreover, the Court referenced the ILO Report to identify some facts that indicate that work was being performed under "menace of any penalty," such as when it is performed under threat of the following: physical violence against a worker, physical confinement, denunciation to authorities and deportation, dismissal from current employment, removal of rights or privileges and deprivation of food, shelter, etc. *Id.* at 1014.

In addition to providing context in analyzing forced labor, the cases provide guidance in identifying a forced labor situation. In *Aragon*, for example, defendant's motion to dismiss was denied where plaintiffs alleged that they were subject to physical violence, periodic physical restraint and threats of deportation, which prevented them from leaving their employment. *Id.* at 1068. Those allegations are very similar to the facts here, and distinct from slavery or conscript labor, which, Kingtom incorrectly asserts, are coterminous with forced labor in section 1307. Kingtom Comments at 7. That other fact patterns are more severe, *i.e., Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674 (S.D. Tx. 2009), and *Deutsch v. Turner Corp.*, 324 F.3d 692, does not indicate that only the most severe are violative of section 1307 (or the ATS).

Moreover, it bears noting that unlike a claim under the ATS, which is reviewed on the evidence developed in the case before the Court, when an agency decision is challenged under section 1307, the Court reviews the decision with deference to the determination of the agency. *See Islamic Am. Relief Agency (IARA-USA) v. Gonzales*, 477 F.3d 728, 733 (2007) (The scope of judicial review for actions commenced under 28 U.S.C. § 1581(i) is found in 28 U.S.C. § 2640(e), which directs the Court to 5 U.S.C. § 706, and is "highly deferential" to the agency, here CBP.). That is, the burden on the individual parties differs depending on the statute applied.

Therefore, while not directly on point, consideration of *Velez* and the cases discussed above supports the Government's analysis and application of the statutory requirements for a finding of forced labor.

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

By: JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ AIMEE LEE
AIMEE LEE
Assistant Director

/s/ Monica P. Triana
MONICA P. TRIANA
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9240 or 9230
*Attorneys for Defendants*

Dated: November 12, 2026