**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **KINGTOM ALUMINIO S.R.L.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA; U.S. CUSTOMS AND BORDER PROTECTION; U.S. DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO N. MAYORKAS, Secretary, U.S. Department of Homeland Security; TROY A MILLER, Acting Commissioner, U.S. Customs and Border Protection,**<br><br>**Defendants,**<br><br>**and**<br><br>**ALUMINUM EXTRUDERS COUNCIL; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION,**<br><br>**Defendant-Intervenors.** | **Before: Hon. Timothy M. Reif, Judge**<br><br>**Court No. 24-00264** |

**DEFENDANT-INTERVENORS' SUPPLEMENTAL BRIEF**

**Robert E. DeFrancesco, III, Esq.**
**Alan H. Price, Esq.**
**Laura El-Sabaawi, Esq.**
**Elizabeth S. Lee, Esq.**
**Paul A. Devamithran, Esq.**

**WILEY REIN LLP**
**2050 M Street, NW**
**Washington, DC 20036**
**(202) 719-7000**

***Counsel for Defendant-Intervenors***

**Dated: November 12, 2026**

**Ct. No. 24-00264**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aragon v. Che Ku*,
277 F. Supp. 3d 1055 (D. Minn. 2017) ........ 2, 3

*John Roe I v. Bridgestone Corp.*,
492 F. Supp. 2d 988 (S.D. Ind. 2007) ........ 2, 3

*Manliguez v. Joseph*,
226 F. Supp. 2d 377 (E.D.N.Y. 2002) ........ 3

*Velez v. Sanchez*,
693 F.3d 308 (2d Cir. 2012) ........ 1, 2, 3, 4

**Statutes**

19 U.S.C. § 1307 ........ 1, 4

On behalf of Defendant-Intervenors Aluminum Extruders Council and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("Defendant-Intervenors"), we respectfully submit the following Supplemental Brief pursuant to the Court's November 5, 2026 paperless order. *See* Paperless Order (Nov. 5, 2026), ECF No. 124. Specifically, during oral argument the Court inquired about the persuasive value of the 2nd Circuit's decision in *Velez v. Sanchez* as well as other Alien Tort Statute ("ATS") cases. *Velez v. Sanchez*, 693 F.3d 308 (2d Cir. 2012). This supplemental brief focuses on these ATS cases which are useful in at least two respects. First, the ATS cases construe the same International Labor Organization ("ILO") Convention No. 29 text that Congress copied into 19 U.S.C. § 1307, and they endorse the same ILO forced labor framework that Customs and Border Protection ("CBP") used as a guide when assessing the statutory criteria on remand. Second, the ATS cases contain discussions of facts relevant to findings of forced labor; and the facts found necessary and/or sufficient to plead forced labor in those cases are the facts in this record.

**A. <u>The ATS Cases Apply the ILO Framework Just as Customs Did</u>**

The ATS cases expressly used the ILO framework when assessing evidence of forced labor, frustrating Kingtom's "substitution" argument, *i.e.*, that CBP impermissibly "substituted" the ILO factors for its statutory analysis. *See* Pl.'s Cmts. Opposing Remand Redetermination at 10-12 (Feb. 23, 2026), ECF No. 90 ("Pl.'s Cmts."). Each of the ATS cases the Court inquired about at oral argument – including *Velez* – demonstrate that the ILO provides a useful framework for assessing whether the statutory criteria of "menace of . . . penalty" and "not {} voluntarily" (hereafter, "involuntariness") are met. 19 U.S.C. § 1307.

For example, in *Velez* the 2nd Circuit noted that the ILO's definition of forced labor does not cover mere "'low wages or poor working conditions'" but also that, according to the ILO,

"{t}he 'menace of any penalty' element does not necessarily need to be a physical penalty but can include credible threats of financial penalties, denunciation to immigration authorities, and deportation." *Velez*, 693 F.3d at 321 (internal citations omitted). The court explained that "{l}abor can also be 'forced' if it takes place in a 'climate of fear' in which consent is impossible, even if the victim was not threatened directly with any penalty." *Id.* (internal citations omitted). *Aragon* expressly applied the exact same ILO framework. *Aragon v. Che Ku*, 277 F. Supp. 3d 1055, 1068 (D. Minn. 2017) at 1068–69.

Similarly, in *Bridgestone*, the court drew on the ILO's 2005 report, *A Global Alliance Against Forced Labour*, to identify ILO indicators of lack of consent, including physical confinement, an order to work backed by a credible threat of penalty, deception or false promises, withholding of wages, and retention of identity documents. *See John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1012 (S.D. Ind. 2007) at 1013. The court likewise identified indicators of "'menace of a penalty'", including physical violence, confinement, denunciation to authorities and deportation, and removal of rights or privileges. *Id.* at 1014. While the *Bridgestone* court ultimately dismissed the case because the plaintiffs did not allege any of those indicators, *id.* at 1013–14, that they used the ILO indicators to assess the forced labor criteria is the crucial point.

CBP did exactly what these courts did. CBP reasonably and permissibly utilized the ILO forced labor factors "as a guide to analyze the evidence on the record." Final Remand Redetermination at 8 (Dec. 22, 2025), ECF No. 81. It borrowed the ILO indicators to assess the statutory criteria of "menace of penalty" and "involuntariness" – which were also borrowed from the ILO. Plaintiffs have already conceded that the use of the ILO indicators "as a tool" in not proscribed by law. Pl.'s Reply Brief in Support of Its Mot. For J. On The Agency R. at 6–7, ECF No. 53; Pl.'s Cmts. at 12. The persuasive weight of these ATS cases confirms the same.

### B. <u>The Record Contains Evidence of Facts Indicative of Forced Labor Identified in Each of the ATS Cases</u>

Using ILO guidance, the ATS cases identified fact patterns indicative of forced labor. *Velez* cited forced labor findings based on "'coercive conduct through threats, physical beatings, sexual battery, fraud and unlawful substandard working conditions.'" Aragon, 277 F. Supp. 3d at 106 (citing *Manliguez v. Joseph*, 226 F. Supp. 2d 377, 381-82 (E.D.N.Y. 2002)). *Aragon* sustained a forced labor claim based on "physical violence, periodic physical restraint and confinement, and threats including . . . deportation" that kept the plaintiffs from leaving their employment. *Id.* *Bridgestone* distinguished between mere low wages and the "use of force or coercion to keep workers on the job," citing the latter as evidence of forced labor. *Bridgestone*, 492 F. Supp. 2d at 1013–14, 1016–17. Each of these elements identified as indicative of forced labor is present here.

The undisputed record demonstrates that Kingtom managers hit, kicked, and beat workers, including with metal profiles and a hot iron. Final Remand Redetermination at 13–15. One worker explained that if a manager strikes you, "{y}ou can't defend yourself; you have to let them hit you," or you are fired. *Id.* at 18. Armed guards stood at the doors, workers needed a permit to leave, and leaving without approval meant excessive fines or termination. *Id.* at 13. Workers described being "locked in" behind a padlocked door, with security who would "hit them with a stick, crack their head" when workers tried to go home. Restriction of Movement, Worker Interviews (May 16, 2022), P.R.R. 8.34 (CBP 000273-000278). Indeed, "Kingtom routinely physically abused to coerce workers into working hard or complying with specific demands." Final Remand Redetermination at 17. During the COVID-19 period, workers were physically barred from leaving the factory for between two and a half and seven and a half months. Final Remand Redetermination at 12. Most of the Haitian workers interviewed were undocumented, which made them easier to control, because they depended on the job to avoid deportation. *Id.* at 9–10, 17.

The record also shows the "climate of fear" that *Velez* recognized. *Velez*, 693 F.3d at 321. U.S. officials observed this firsthand. During the 2021 site visit, more than 50 workers approached CBP, all fearful of speaking in front of Kingtom officials "for fear of retribution"; Kingtom staff acted as minders; and an armed guard with a long gun appeared alongside a supervisor, prompting CBP to end the visit. CBP, OT, EAPA Division, EAPA On-Site Verification Report Case 7550 (Oct. 28, 2021), P.R. 8.6 (CBP 000111, 000114–15). The *Velez* category of "credible threats of financial penalties" is likewise satisfied: a posted penalties board, fines that exceeded a day's earnings for a missed day, and terminations that forfeited workers' severance. CBP, OT, EAPA Division, EAPA On-Site Verification Report Case 7550 (Oct. 28, 2021), P.R. 8.6 (CBP 000110–11); Final Remand Redetermination at 15–17. The record demonstrates threats, retaliation, physical and sexual abuse, etc., and not just the "poor working conditions" observed in *Velez*.

Plaintiff seeks to downplay these serious human rights violations by arguing, in essence, that because workers were (sometimes) commuting from home and could theoretically quit, nothing that happened to them while at work could be considered involuntary or under the menace of penalty. Pl.'s Cmts. at 14, 17. This is a tortured reading of the statute. 19 U.S.C. § 1307 does not prohibit goods made only with *slave* labor, nor does the statute require that workers be *perpetually* in a state of involuntary work. (Notably, had Congress wanted to legislate the importation of goods made with *slave* labor, they could have. Instead they adopted the ILO's approach and legislated the importation of goods made with *forced* labor – a lower threshold).

Even just by the plain meaning of the statute, when the doors are locked and/or physically barred by armed security guards and workers are forced to man their workstations, the resulting labor is plainly "involuntary" such that workers lack any capacity to choose not to work in those instances. Final Remand Redetermination at 12 n.48, 13, 22. That some workers are coerced or

manipulated into returning to that environment does not change the fact that the labor itself, which occurs under the aforementioned conditions, is involuntary and extracted under the menace of penalty. *Id.* at 9. To argue otherwise is akin to arguing that returning to an abuser negates the abuse, ignoring the many reasons why someone may be forced or coerced into returning to an abusive environment. Furthermore, the Final Remand Redetermination demonstrates that "during the COVID-19 pandemic, Kingtom leadership required workers to live and work at the Kingtom facility 24 hours a day, seven days a week. During this time, which was reported to have lasted between two and a half months to seven and a half months, workers were physically barred from leaving the factory." *Id.* at 12. Plaintiff argues that some of these labor conditions were observed in 2022, so they are not relevant to conditions in 2024. Pl's Cmts. at 25. But the Court cannot simply assume that conditions have changed. Indeed, the Dominican Government shut down Kingtom's facilities again in July 2024 for labor law violations. Acento, Company Closed Down for Dangerous Work (July 26, 2024), P.R. 11 (CBP 004282-004294). CBP reasonably concluded that remediation did not occur, lending further support to the Government's forced labor finding.

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court sustain CBP's remand determination.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*

Robert E. DeFrancesco, III, Esq.
Paul A. Devamithran, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Defendant-Intervenors*

Dated: November 12, 2026