**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE**

KINGTOM ALUMINIO S.R.L.,
Plaintiff,
v.
UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; RODNEY S. SCOTT, Commissioner, U.S. Customs and Border Protection,
Defendants,
and
ALUMINUM EXTRUDERS COUNCIL; UNITED STEEL, PAPER AND FORESTRY, RUBBER, AND MANUFACTURING and SERVICE WORKERS INTERNATIONAL UNION,
Defendant-Intervenors.

**NON-CONFIDENTIAL VERSION**

Proprietary Information Redacted from Page 5

No. 24-cv-00264-TMR

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS COMMENTS IN OPPOSITION TO THE REMAND REDETERMINATION**

Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey

TAFT STETTINIUS & HOLLISTER LLP
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
Email: bmills@taftlaw.com
Telephone: 202.216.4116

*Counsel to Plaintiff*

November 12, 2026

## TABLE OF CONTENTS

Table Of Authorities ..... ii
Introduction ..... 1
Argument ..... 1
Certificate Of Compliance ..... 6
Certificate of Service ..... 7

# TABLE OF AUTHORITIES

**Case(s)** **Page(s)**

*Aragon v. Che Ku*,
277 F. Supp. 3d 1055 (D. Minn. 2017) ....................4

*John Roe I v. Bridgestone Corp.*,
492 F. Supp. 2d 988 (S.D. Ind. 2007) ....................5

*United States v. Calimlim*,
538 F.3d 706, 713 (2008) ....................3

*Velez v. Sanchez*,
693 F.3d 308 (2nd Cir. 2012) .................... *passim*

**Statute(s)**

19 U.S.C. § 1307 .................... *passim*

**Other Authority**

71 Cong. Reg. 4,478 (1929) ....................4

ILO, *A Global Alliance Against Forced Labor* (2005) ....................3

ILO Indicators of Forced Labor (Jan. 1, 2013) .................... 3-4

## INTRODUCTION

Pursuant to the Court's November 5, 2026 Order, Plaintiff Kingtom Aluminio S.R.L. ("Plaintiff" or "Kingtom") hereby supplements its comments in opposition to the remand redetermination. Final Remand Redetermination, ECF No. 81 ("Redetermination").

## ARGUMENT

At oral argument, Defendants argued that Kingtom's employees were the subject of a "climate of fear" such that they were "psychologically" forced to work for Kingtom and that its Haitian workers feared Kingtom would report them to immigration authorities, even though Customs had not made any determination as to psychological force or threats about immigration authorities. The Court in turn asked Plaintiff to respond to a quote from *Velez v. Sanchez*:

> The "menace of any penalty" element does not necessarily need to be a physical penalty but can include credible threats of financial penalties, denunciation to immigration authorities, and deportation. Labor can also be "forced" if it takes place in a "climate of fear" in which consent is impossible, even if the victim was not threatened directly with any penalty.

*Velez v. Sanchez*, 693 F.3d 308, 321 (2nd Cir. 2012) (internal citation omitted).

As an initial matter, Kingtom has not, and does not, argue that menace of penalty cannot include threat of financial penalties, denunciation to immigration authorities, or deportation. *See generally*, Plaintiff's Comments Opposing Remand Redetermination, ECF No. 89. Having said that, in Plaintiff's view, the quoted language from *Velez* does not support the Redetermination, or Defendants' argument. To the contrary, the quoted language supports that forced labor does not exist in this case. Kingtom has emphasized throughout this case that the freedom or ability to *consent* is key to whether forced labor exists and that, here, U.S. Customs and Border Protection ("Customs") has not determined, nor shown with record evidence, that workers were deprived of their ability to consent to work for Kingtom. That requirement comes from section 307 of the Tariff Act of 1930, which defines "forced labor" to be work or service that is "*exacted* from any

person under the menace of penalty for its *nonperformance* and for which the worker does not offer himself *voluntarily*." 19 U.S.C. § 1307 (emphasis added). The Redetermination does not provide any evidence of threats of denunciation to immigration authorities or deportation. And it does not demonstrate that the threats or intimidation by Kingtom—psychological or otherwise—"exacted" work that would not otherwise have been performed. But even if it had, Customs fails to demonstrate that any worker had not offered himself "voluntarily."

Turning to the *Velez* decision, the Second Circuit rejected that work had been exacted through the menace of penalty because the worker had the free will to voluntarily decide whether to work or quit employment. The worker had alleged that she was afraid of violence, which culminated in a physical altercation with her employer; was "not paid her promised weekly salary;" was underage and socially isolated in a foreign country without language skills; and was subject to disparaging representations from her employer who threatened to send her back to her home country, Ecuador, and told her that they "owned her and controlled her." *Velez*, 693 F.3d at 315, 322. Despite these harsh conditions, the court found that the conduct had not amounted to forced labor because the menace of penalty had not "compelled" her to work as evidenced by the fact that she "left the Sanchez household very shortly after {the} incidents at issue." *Id*. The court further emphasized this point: "she was never locked in the Sanchez house and had access to her passport," "she was allowed to leave the house to visit friends, attend social outings, and participate in classes without supervision," and she "never said the purported eavesdropping" by her employer "compelled her to continue working in the Sanchez home." *Id.* The court also found that the employer's statements that they "owned her and controlled her" were "insufficient to constitute the type of psychological *compulsion* that is indicative of forced labor." *Id.* (emphasis added). *Velez* accordingly stands for the proposition that, while the menace of penalty can be psychological and includes

situations in which there is a "climate of fear," forced labor does not exist where the menace does not overcome the worker's free will such that the ability to consent to work is "impossible," which Customs has not demonstrated to be the case here.

The Second Circuit contrasted the situation in *Velez* with the situation in *United States v. Calimlim*, "where evidence showed that defendants 'intentionally manipulated' an immigrant domestic worker by convincing her that *leaving their employ* would be illegal and result in deportation." *Velez*, 693 F.3d at 322 (quoting 538 F.3d 706, 713 (2008)) (emphasis added). Thus, despite the Second Circuit's acknowledgement that the "menace of penalty" did not need to be a "physical penalty" and can include "financial penalties" or a "climate of fear," the court concluded that "the harm that {Velez} would have suffered…does not amount to a 'menace of penalty' sufficient to consider her continued labor as 'forced'" because, "once the threats {at issue} were made," she quit her job. *Velez*, 693 F.3d at 322. Put another way, the term "menace of penalty" can encompass a broad array of conduct that employers could use to compel work as the Court noted at oral argument, but such conduct does not constitute forced labor unless it actually *compels*, or "exacts," work that would not have been performed *but for* the menace of penalty. That principle is consistent across all of the forced labor cases brought pursuant to the Alien Tort Statute ("ATS") and the standards expressed by the ILO itself. *See id.* at 321 ("Forced labor must involve a 'severe violation of human rights and restriction of human freedom.'") (quoting the ILO, *A Global Alliance Against Forced Labor* (2005)); ILO Indicators of Forced Labor (Jan. 1, 2013), ECF No. 47-1 ("When wages are systematically and deliberately withheld as a means to compel the worker to remain, and deny him or her of the opportunity to change employer, this points to forced labor.").

Such is required by section 307, which provides that Customs must demonstrate that workers did not offer themselves "voluntarily" in addition to showing that work was exacted through

the menace of penalty. 19 U.S.C. § 1307; 71 Cong. Reg. 4,478, 4,490-91 (1929) ("I can readily say for myself that the definition of forced labor…ought to be acceptable to anyone, because it is really convict labor or slave labor, inasmuch as the worker does not offer himself voluntarily."). In each of the ATS cases where a colorable allegation of forced labor was found, the labor was involuntary and with penalty for nonperformance in the sense that the workers could not just quit and leave employment. *See*, *Aragon v. Che Ku*, 277 F. Supp. 3d 1055, 1068 (D. Minn. 2017) (permitting a claim of forced labor where workers were "prevented from leaving employment for many years"). Customs has not determined that the purported "climate of fear" at Kingtom created an environment in which consent to work was "impossible" or that workers had not offered themselves voluntarily. To the contrary, workers expressed that they chose to work because they need the employment given the dire circumstances in the Dominican Republic.

In this case, Customs critically has not determined that Kingtom compelled employment itself or created a situation "in which consent was impossible." For example, Customs determines that workers would be fined for missing a day of work or for menial reasons; but it does not explain that the withheld wages or threats were a means to compel workers to remain in Kingtom's employ or deprive workers of the opportunity to change employer. Redetermination at 15-16. The closest reference in the Redetermination to the language in *Velez* quoted by the Court appears to be that certain workers had to keep their jobs "to avoid deportation," but the record material that Customs cites for that statement consists merely of summary excerpts of worker interviews that do not purport to claim deportation or denouncement to immigration authorities. Redetermination at 17 (citing CBP000221-26). Most of the summaries merely indicate that workers were afraid of losing their jobs, which is insufficient to constitute forced labor. *See John Roe I v. Bridgestone Corp.*,

492 F. Supp. 2d 988, 1014 (S.D. Ind. 2007) ("{E}xpressed fear of losing one's current employment is a clear indicator that the employment is not forced labor.").

As in *Velez*, workers can quit Kingtom and seek employment elsewhere. *E.g.*, CBP000383 ([ ]). Workers are permitted to leave Kingtom after their shifts and thus can *choose* whether to return to work. CBP001299 ([ ]; CBP001349 ([ ]). In fact, the record demonstrates that workers actually did choose to work for Kingtom as opposed to being unemployed. CBP001396 ([ ]); CBP000554 ([ ]). Thus, the circumstances of this case are similar to those in *Velez* where work had not been compelled, or "exacted" by the alleged menaces of penalty. Even if they were, Customs has not demonstrated that Kingtom's workers did not offer themselves "voluntarily" as required by section 307 because the workers are free to quit employment and choose to work despite the harsh conditions.

Respectfully Submitted,
/s/ Brady W. Mills
Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey

TAFT STETTINIUS & HOLLISTER LLP

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing submission complies with the Court's order in that it is no more than five double-spaced pages.

/s/ Brady W. Mills
Brady W. Mills
Dated: November 12, 2026

## CERTIFICATE OF SERVICE

Pursuant to Rule 5 of the Rules of the U.S. Court of International Trade and Administrative Order 25-01, I, Brady W. Mills, hereby certify that I served the confidential version of the foregoing submission on the following individuals. If the recipient agreed to accept service of the confidential version by electronic service, such service is being effected through secure electronic means. If no agreement for electronic service has been reached, the confidential version is being served by hardcopy mail. The public version is being served through the court's electronic filing system.

On behalf of the United States
Monica Perrette Triana
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza
New York, NY 10278
Email: monica.p.triana@usdoj.gov

On Behalf of the Aluminum Extruders
Council and the United Steel, Paper and
Forestry, Rubber, and Manufacturing and
Service Workers International Union
Robert Edward DeFrancesco, III
Wiley Rein, LLP
2050 M Street, NW.
Washington, DC 20036
Email: rdefrancesco@wiley.law

/s/ Brady W. Mills
Brady W. Mills
Dated: November 12, 2026